KIRAN S. LOPEZ (SBN 252467)
TESLA, INC.
901 Page Avenue
Fremont, California 94538
Telephone: (510) 239-1413
kirlopez@tesla.com

Attorneys for Defendants
TESLA, INC. and SUZIE HATZIS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAYMON FRANK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a corporation; SUZIE HATZIS, an individual; and DOES 1 through 49, inclusive,<br><br>Defendants. | Case No. 2:22-cv-01590-MEMF(AGRx)<br><br>**DECLARATION OF KIRAN S. LOEPZ IN SUPPORT OF DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:      May 12, 2022<br>Time:      10:00 a.m.<br>Location: United States Courthouse<br>            350 West 1st Street<br>            Courtroom 8B, 8th Floor<br>            Los Angeles, CA 90012<br><br>**[Filed concurrently with Defendant Tesla, Inc.'s Notice of Motion and Motion to Compel Arbitration and Stay Proceedings; Defendant Tesla, Inc.'s Memorandum of Points and Authorities; Defendant Tesla, Inc.'s Request for Judicial Notice; Declaration of Ben Flesch; and (Proposed) Order]**<br><br>*Complaint Filed: 1/14/2022*<br>*First Amended Complaint Filed: 2/15/2022*<br>*Trial Date: None.* |

- 1 -

# DECLARATION

I, Kiran S. Lopez, hereby declare and state as follows:

1.  I am an attorney at law, duly licensed to practice in this Court and before all Courts in the State of California. I am in-house counsel for Defendant Tesla, Inc. ("Tesla") in connection with the above-captioned matter. In my capacity as in-house counsel for Tesla I also represent Defendant Suzie Hatzis ("Hatzis") in this matter. I am over the age of 18 and make this Declaration based on my personal knowledge and review of documents maintained in the usual course of business.

2.  On January 14, 2022, Plaintiff Naymon Frank ("Plaintiff") filed the instant Complaint in the Superior Court of California for the County of Los Angeles (the "Complaint"). The Complaint named only Tesla as a Defendant. Attached hereto as **Exhibit 1** is a true and correct copy of the Complaint.

3.  On or about February 11, 2022, I spoke on the telephone with Plaintiff's counsel and advised that I had received the Complaint, and asked if Plaintiff would agree to stipulate to arbitration so that motion practice would not be necessary. Plaintiff's counsel declined to so stipulate.

4.  On February 15, 2022, Plaintiff filed the instant First Amended Complaint in the Superior Court of California for the County of Los Angeles. In the First Amended Complaint Plaintiff named Hatzis as a Defendant. Attached hereto as **Exhibit 2** is a true and correct copy of the First Amended Complaint.

5.  On March 9, 2022, Tesla removed this matter to the United States District Court for the Central District of California, based upon diversity jurisdiction.

6.  On March 18, 2022, I emailed counsel for Plaintiff and provided a copy of the Arbitration Agreement, asked if Plaintiff would submit his claims to arbitration, and offered to prepare a draft stipulation. Attached hereto as **Exhibit 3** is a true and correct copy of my March 18, 2022 email to Plaintiff's counsel with attachment.

7.  On March 21, 2022, Plaintiff's counsel responded to my email, and advised that Plaintiff would not stipulate to arbitration. On March 22, 2022, I responded via

email. Attached hereto as **Exhibit 4** is a true and correct copy of the March 18-22, 2022 email chain, with attachment.

8.  Attached hereto as **Exhibit 5** is a true and correct copy of JAMS Employment Rules, which are publicly accessible via JAMS' website: https://www.jamsadr.com/rules-employment-arbitration/english

9. Tesla has not in any manner attempted to take advantage of the Court's discovery procedures in this case. Tesla has not served any written discovery on Plaintiff, has not noticed Plaintiff's deposition, and has not filed any motions against Plaintiff (other than this Motion) or otherwise litigated this case. This matter has not been set for trial.

10. Hatzis does not oppose this Motion.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 31st day of March, 2022, in Alamo, California.

*/s/ Kiran S. Lopez*

Kiran S. Lopez

**DECLARATION OF KIRAN S. LOPEZ  IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# EXHIBIT

# 1

Electronically FILED by Superior Court of California, County of Los Angeles on 01/14/2022 02:23 PM Sherri R. Carter, Executive Officer/Clerk of Court, by Y. Tarasyuk,Deputy Clerk
22STCV01712

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Richard Fruin

1  BOHM WILDISH & MATSEN, LLP
   JAMES G. BOHM (SBN 132430)
2  JOANNE P. FREEMAN (SBN 140137)
   695 Town Center Drive, Suite 700
3  Costa Mesa, CA 92626
   Telephone Number: 714-384-6500
4  Facsimile Number: 714-384-6501   .

5
   Attorneys for Plaintiff NAYMON FRANK, an individual
6

7            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8            **COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION**

9

10  NAYMON FRANK, an individual,          ) CASE NO. 22STCV01712
                                          ) **COMPLAINT FOR:**
11              Plaintiffs,               ) **(1) CONSTRUCTIVE DISCHARGE;**
                                          ) **(2) HARASSMENT IN VIOLATION OF**
12          v.                            )    **FEHA, GOVERNMENT CODE SECTION**
                                          )    **12940 ET SEQ.;**
13  TESLA, INC., a corporation; and DOES 1 ) **(3) DISCRIMINATION IN VIOLATION OF**
14  through 50, inclusive                 )    **FEHA, GOVERNMENT CODE SECTION**
                                          )    **12940 ET SEQ.;**
15              Defendants                ) **(4) FAILURE TO REMEDY AND/OR**
                                          )    **PREVENT DISCRIMINATION AND**
16                                        )    **HARASSMENT UNDER FEHA,**
                                          )    **GOVERNMENT CODE SECTION 12940 ET**
17                                        )    **SEQ;**
                                          ) **(5) VIOLATION OF LABOR CODE**
18                                        )    **SECTION 1194 ET SEQ.**
                                          ) **(6) FRAUDULENT INDUCEMENT IN**
19                                        )    **VIOLATION OF LABOR CODE SECTION**
                                          )    **970;**
20                                        ) **(7) INTENTIONAL INFLICTION OF**
                                          )    **EMOTIONAL DISTRESS;**
21                                        ) **(8) FAILURE TO PROVIDE MEAL**
                                          )    **BREAKS;**
22                                        ) **(9) FAILURE TO PROVIDE REST**
                                          )    **BREAKS;**
23                                        ) **(10) WRONGFUL FAILURE TO**
                                          )    **PROMOTE IN VIOLATION OF FEHA,**
24                                        )    **GOVERNMENT CODE SECTION 12940 ET**
25                                        )    **SEQ.;**
                                          ) **(11) FRAUD – NEGLIGENT**
26                                        )    **MISREPRESENTATION;**
                                          ) **(12) FRAUD – CONCEALMENT**
27                                        ) **(13) PROMISSORY FRAUD**
                                          ) **(14) VIOLATION OF LABOR CODE 201**
28

                                          1

FOR HIS CLAIMS against Defendants TESLA, INC., (hereinafter "TESLA") and DOES 1 through 50, inclusive, Plaintiff NAYMON FRANK, an individual, alleges as follows:

## GENERAL ALLEGATIONS

1.     Plaintiff NAYMON FRANK (hereinafter referred to as "FRANK") was an individual working at various locations in California (including Los Angeles) at the time of the actions alleged herein.  FRANK is African-American.

2.     Defendant TESLA is a corporation with places of business in Los Angeles County, San Diego County, and Orange County, in California.

3.     Plaintiff is ignorant of the true names and capacities of DOES, Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of such Defendants when they have been ascertained.

4.     Plaintiff is informed and believes and thereon alleges that at all relevant times defendants sued as DOE 1 through 50 inclusive, whether individuals, corporations, partnerships or otherwise, and the Defendants named herein, were and/or now are the agents, servants, employees, representatives, and alter egos of each other, and they are liable to the Plaintiff because in doing the things hereinafter alleged they were acting within the course and scope of their agency and/or authority, and pursuant to the permission and consent of the remaining Defendants, and/or their acts were consented to and/or ratified.

5.     Plaintiff is informed and believes, and based thereon alleges, that defendant DOES, either some or all, are responsible in some manner for the events and happenings referred to herein and caused injury to Plaintiff as alleged herein. Plaintiff is informed and believes, and based thereon alleges, that some or all of the defendant DOES are and/or were agents and/or employees of Defendants and in doing the things hereinafter alleged, and at all times, were acting within the scope of their authority as such agents and/or employees, and at all times were acting within the scope of their authority as such agents and/or employees with the express, implied and/or ostensible authority of these Defendants.

6.     Plaintiff is informed and believes, and based thereon alleges, that Defendants, and all of the defendant DOES, ratified, authorized, and consented to all of the acts and/or conduct of each other as alleged herein.

7.     Venue is appropriate in the County of Los Angeles because the Plaintiff was employed and the relevant acts and omissions occurred within the County of Los Angeles, as well as San Diego and Orange counties.

## SUMMARY OF FACTS

8.     FRANK began his employment with TESLA on or about August 15, 2016, in sales, with the title of Owner Advisor in Newport Beach, California.

9.     Recruiter Vincent Duran specifically targeted and recruited FRANK to work for TESLA. One of the incentives to accept the job was TESLA's promise of stock options. However, as set forth in more detail, *below*, FRANK lost a significant amount of money in stock benefits (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock options fully vested at four years of employment with TESLA.)  TESLA appears to intentionally terminate employment before employees can receive vested stock benefits.

10.     While working as an Owner Advisor in Newport Beach, California, FRANK also was a Regional Trainer, training employees at the Buena Park, Brea, and Costa Mesa locations, among other locations.

11.     During the time that FRANK was a non-exempt employee at TESLA (i.e. from on or about August 15, 2016, until he became an Assistant Store Manager on or about November 1, 2018), FRANK consistently worked an average of 80 hours a week, ***without overtime compensation, meal breaks, or rest breaks.***

12.     On or about November 1, 2018, FRANK relocated to the UTC (University Town Center) TESLA location in San Diego; FRANK's title changed to that of Assistant Store Manager. Although TESLA told FRANK that his relocation costs would be paid, FRANK was never reimbursed and ended up paying the costs of relocating to San Diego himself.  FRANK became a salaried employee when he became an Assistant Store Manager (prior to that time, FRANK was an hourly employee.)

13.     FRANK accepted the new position of Assistant Store Manager (although the pay – without the bonuses FRANK received as an Owner Advisor - was lower than the position of Owner Advisor), because he had been informed by TESLA that the way to move up in the TESLA corporation was to get into management.  FRANK had the expectation that he would be eligible for promotions in management once he accepted the Assistant Store Manager position.

14.     However, despite the fact that during FRANK's employment with TESLA at the Newport Beach and San Diego locations, the TESLA Newport Beach location was ranked first in sales, and the TESLA San Diego location was ranked second in sales, FRANK was never promoted above the title of Assistant Store Manager. FRANK estimates that he was passed over for a promotion at least four times while at TESLA. For example, FRANK trained employee Chris Bisson, and then Bisson was promoted to Store Manager at the San Diego UTC location (while FRANK remained Assistant Store Manager at the same location.)

15.     Prior to working at TESLA, FRANK was a professional football player for the Green Bay Packers, an Oregon state police officer, a part-time professional model and actor, and worked in store management at Iniqlo.

16.     On December 13, 2019, FRANK received word that he had been selected for an Audi commercial for the Audi e-tron (to be shown during Super Bowl 2020.) Although FRANK had never been told of and had never received from TESLA any policy prohibiting him from working as an actor while employed at TESLA (or specifically appearing in a car commercial), out of over-abundance of caution, FRANK asked his boss Kristina Holt (Store Manager) whether it would be okay if he appeared in the Audi e-tron commercial, which would air during the 2020 Super Bowl. More specifically, FRANK told Holt on December 14, 2019, that he had been selected to appear in the Audi commercial, and Holt told FRANK that she had cleared FRANK's appearing in the Audi e-tron commercial with Suzie Hatzis (Regional Manager) the same day. Holt specifically gave FRANK the days off that FRANK needed to shoot the Audi e-tron commercial (i.e. December 21 and December 22, 2019.) Not only was FRANK given the days off for the commercial shoot, but Hatzis announced to the entire leadership team at the Carlsbad, California TESLA Location that FRANK would be appearing in the Audi e-tron commercial and "wasn't that cool." No one said anything to FRANK about a potential conflict of interest in appearing in a commercial for a competitor.  FRANK was never hired by or compensated by Audi. Rather, FRANK's agents communicated with 72 and Sunny (an advertising agency) to cast FRANK in the Audi e-tron commercial.

17.    The Audi e-tron commercial aired during the Super Bowl on January 31, 2020. On February 1, 2020, which was FRANK's first day on the job as Assistant Store Manager in Santa Monica, Isabella Merrick called FRANK and told him that Suzie Hatzis had been fired and that she (Merrick) was offering FRANK the opportunity to resign (which would allow for the possibility of being re-hired); if FRANK didn't resign by the end of the call with Merrick, Merrick told FRANK he would be fired. Not having any other option than to be fired (with no chance of being re-hired), FRANK resigned (i.e. he was constructively terminated.) The pre-textual reason for asking FRANK to resign or be terminated was that FRANK's appearing in an Audi e-tron commercial was a conflict of interest. Merrick, at the time, knew that FRANK had requested and was given permission by TESLA management to appear in the Audi e-tron commercial.

18.    FRANK lost a significant amount of money in in stock benefits (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock options fully vested at four years of employment with TESLA.) FRANK's TESLA stock would have vested in June of 2020; a five-way stock split occurred in March of 2020, which greatly increased the value of TESLA stock. In addition, FRANK also lost his Performance Bonus (which were typically awarded the month following the end of the Q4 deliveries in January/February. Performance bonuses were tied to annual reviews. FRANK had not yet received his 2019 annual review.) FRANK is informed and believes that TESLA makes a pattern out of terminating employees shortly before their RSU's vest under various pretexts.

19.    FRANK later learned that Elon Musk had made the decision to terminate FRANK (i.e. to give him the option of resigning or to be terminated.) Elon Musk knew who FRANK was because the first year that FRANK worked at TESLA, an auto-pilot Tesla car that FRANK was in crashed. The other people that were in the car went to the media with the story; FRANK did not talk to the media.

20.    FRANK experienced a hostile work environment during his employment with TESLA, including but not limited to:

- Being harassed because of his race—African-American.

- Not being promoted at least four times because of his race.

- During FRANK's employment at TESLA, every African-American salesperson at the UTC San Diego TESLA location was fired.

- To FRANK's knowledge he was the *only* African-American manager at TESLA during the time he was employed, *throughout the entire company*.

- FRANK was told by manager Suzie Hatzis during a performance review that he looked "intimidating." When FRANK asked Hatzis to provide clarification, Hatzis told FRANK (an African-American man) that he "can be a scary-looking guy." FRANK said that this was not a fair statement, and asked Holt to remove these comments from his performance review. FRANK also called and made a written complaint to Human Resources.

- Although FRANK followed all TESA policies, FRANK was told by manager Suzie Hatzis that he "doesn't follow our rules", and "doesn't play ball."

- Suzy Hatzis also tried to write-up FRANK for taking a test-drive car from the Vegas Hub to the call center, while FRANK was working at the Las Vegas TESLA location, when his use of the car was authorized.

21.     FRANK also experienced wage and hour violations:  1) While an hourly employee, FRANK was forced to clock out for lunch but required to continue working; 2) FRANK's timecards were altered without his consent to give the appearance of no wage and hour meal violations; 3) FRANK did not receive overtime while a salaried employee; 4) As of February 1, 2020, FRANK had not yet received his 2019 annual review, and did not receive a Performance Bonus, to which he was entitled.

22.     Prior to filing this Complaint, Plaintiff fulfilled any legal requirement or exhausted any administrative remedy imposed on him by having filed the substance of claims alleged herein with the California Department of Fair Employment and Housing (hereinafter "DFEH") and has received Right to Sue Letters from the DFEH. (**Exhibit A**) Plaintiff has therefore substantially complied with all requirements for the filing of this Complaint and has exhausted his administrative remedies prior to filing, commencing, and serving the within action.

**FIRST CAUSE OF ACTION**

**CONSTRUCTIVE DISCHARGE**

**(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)**

23.    Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

24.    Defendant Tesla (through its officers, directors, managing agents, or supervisory employees), intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Plaintiff's position would have no reasonable alternative except to resign. Plaintiff resigned because of these working conditions, including, but not limited to:    Racial harassment and discrimination (including failure to promote) and TESLA telling FRANK that he needed to resign (or be fired), after FRANK appeared in a commercial *that he had specifically been given permission by his supervisor to appear in.*

25.    At all times herein relevant, there was an employer/employee, agency, or other qualified relationship between Plaintiff and Defendants. *California Government Code* § 12940 et seq.

26.    Plaintiff's constructive termination was wrongful because he was forced to quit in part because of racial discrimination and harassment in violation of *California Government Code* § 12940 et. seq. and the administrative regulations of the Fair Employment and Housing Act.

27.    Defendants' conduct above described is in violation of various statues and the decisional law of this state and country, including but not limited to the FEHA, *California Government Code* § 12940 et. seq.; *Title VII Civil Rights Act of 1964*; *Scott v. Pacific Gas and Elec. Co.* (1995) 11 Cal. 4th 454, 464; *Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal. App. 3d 1394, 1399-1401; California Constitution Article I, Section 8.

28.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff has suffered extreme and severe anguish, humiliation, anger, tension, anxiety, depression, lowered self-esteem, sleeplessness and severe emotional distress.

29.    As a further direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer loss of income, loss of stock benefits, loss of earning capacity, loss

1    of job opportunity and other losses.

2        30.    Defendants' conduct described above was willful, despicable, knowing, and

3    intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in

4    an amount according to proof.

5        31.    Plaintiff also seeks attorneys' fees in an amount according to proof.

6

7                        **SECOND CAUSE OF ACTION**

8                     **HARASSMENT IN VIOLATION OF FEHA,**

9                  **GOVERNMENT CODE SECTION 12940 ET SEQ.**

10           **(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)**

11       32.    Plaintiff incorporates by this reference as though set forth in full the allegations of

12   the preceding paragraphs of this Complaint.

13       33.    FRANK was subjected to a workplace permeated with discriminatory intimidation,

14   ridicule and insult that was sufficiently severe or pervasive to alter the conditions of his employment

15   and to create an abusive working environment.

16       34.    Defendants blatantly encouraged an environment for harassment.  During the relevant

17   periods of this Complaint, Defendants and each of them harassed and intimidated the Plaintiff by

18   creating and maintaining a hostile work environment through pervasive and continuous harassment

19   and discrimination against FRANK that was so offensive and severe that it substantially detrimentally

20   altered the terms and conditions of Plaintiff's employment.  The aforementioned acts and omissions

21   constitute harassment and a hostile work environment under *Government Code* §12940(j) et. seq.

22       35.    As a result of Defendants' conduct during their employment, Plaintiff has suffered

23   and continues to suffer embarrassment, humiliation, emotional distress and mental anguish, all of

24   which contributes to his damages in an amount according to proof in excess of the jurisdictional

25   minimums of this Court.  Moreover, Plaintiff was forced to employ attorneys to prosecute this

26   action and Plaintiff is entitled to attorney's fees and costs in accordance with case and statutory

27   authority.

28

36.     Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive damages and exemplary damages in an amount according to proof.

37.     Plaintiff is informed and believes and based thereon alleges that in doing the acts or failing to take action as herein alleged, TESLA, and DOES 1 through 10 have acted and are acting with full knowledge of the consequences and harm being caused to Plaintiff.  Such conduct is fraudulent, willful, oppressive and malicious such that Plaintiff is entitled to punitive and exemplary damages against TESLA in accordance with Civil Code § 3294.

//

## THIRD CAUSE OF ACTION

## DISCRIMINATION IN VIOLATION OF FEHA,

## GOVERNMENT CODE SECTION 12940 ET SEQ.

## (Plaintiff FRANK against Defendant TESLA

## and DOES 1 through 10 )

38.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

39.     FRANK was subjected to a workplace permeated with discriminatory intimidation, ridicule and insult that sufficiently severe or pervasive to alter the conditions of his employment and to create a discriminatory and abusive working environment.  Throughout his employment with Defendants, FRANK was subjected to racial discrimination, including but not limited to, being passed over for promotion at least four times and racially based comments and insults.

40.     Defendants blatantly encouraged an environment for racial harassment and discrimination. During the relevant periods of this Complaint, Defendants and each of them harassed intimidated, and discriminated against Plaintiff by creating and maintaining a hostile work environment through pervasive and continuous harassment and discrimination against FRANK that was so offensive and severe that it substantially detrimentally altered the terms and conditions of

Plaintiff's employment.   The aforementioned acts and omissions constitute discrimination, harassment and a hostile work environment under *Government Code* §12940 et. seq.

41.     As a result of Defendants' conduct during their employment of Plaintiff, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress and mental anguish, all of which contributes to her damages in an amount according to proof in excess of the jurisdictional minimums of this Court.   Moreover, Plaintiff was forced to employ attorneys to prosecute this action and Plaintiff is entitled to attorney's fees and costs in accordance with case and statutory authority.

42.     Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in an amount according to proof.   Plaintiff is informed and believes and based thereon alleges that in doing the acts or failing to take action as herein alleged, TESLA, and DOES 1 through 9 have acted and are acting with full knowledge of the consequences and harm being caused to Plaintiff.   Such conduct is fraudulent, willful, oppressive and malicious such that Plaintiff is entitled to punitive and exemplary damages against TESLA in accordance with Civil Code §3294.

## **FOURTH CAUSE OF ACTION**

## **FAILURE TO REMEDY AND/OR PREVENT**

## **DISCRIMINATION AND HARASSMENT IN**

## **VIOLATION OF FEHA, GOVERNMENT CODE SECTION 12940 ET SEQ.**

### **(Plaintiff FRANK against Defendant TESLA and DOES 1 through 10)**

43.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

44.     FRANK was subjected to a workplace permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment.  Throughout his employment with the Defendants, FRANK was subjected to harassment by Suzie Hatzis; and others employed by Defendant Tesla.

45.     Defendants knew of the harassment and/or reasonably should have known of the harassment as Defendants had received multiple complaints from employees about Suzie Hatzis and failed to conduct an investigation in good faith or act to prevent and/or remedy against the harassment in violation of *Government Code* §12940(j)(1).  Further, Defendants failed to take all reasonable measures to prevent harassment from occurring in violation of *Government Code* §12940(k).  Plaintiff filed a timely charge of discrimination and harassment with the California Department of Fair Employment and Housing and received a Right to Sue Letter.

46.     As a result of Defendants' conduct during their employment of Plaintiff, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress and mental anguish, all of which contributes to her damages in an amount according to proof in excess of the jurisdictional minimums of this Court.  Moreover, Plaintiff was forced to employ attorneys to prosecute this action and Plaintiff is entitled to attorney's fees and costs in accordance with case and statutory authority.

47.     Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in an amount according to proof.

## FIFTH CAUSE OF ACTION

## VIOLATION OF LABOR CODE SECTION 1194 ET. SEQ.

### (Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)

48.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

49.     Plaintiff performed work for Defendant Tesla, including overtime work.

50.     Defendant Tesla knew or should have known that Plaintiff worked overtime hours.

51.     Plaintiff was not paid for overtime work by Defendant Tesla.

52.     Plaintiff is entitled to overtime wages, interest thereon, attorney's fees, and costs of suit, in addition to waiting time penalties.

53.     Waiting time penalties are for Defendant failing to timely pay all overtime wages with Plaintiff's final paycheck. The waiting time penalty is Plaintiff's average daily wage, for 30 days.

### SIXTH CAUSE OF ACTION

### FRAUDULENT INDUCEMENT IN VIOLATION OF LABOR CODE SECTION 970

### (Plaintiff FRANK against Defendant TESLA, and DOES

### 1 through 10)

54.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

55.     Labor Code Section 970 provides as follows:

*No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside*, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:

**(a)** The kind, character, or existence of such work;

**(b)** *The length of time such work will last, or the compensation therefor*;

**(c)** The sanitary or housing conditions relating to or surrounding the work;

**(d)** The existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employer and the persons then or last engaged in the performance of the labor for which the employee is sought. (Emphasis Added.)

56.     Recruiter Vincent Duran specifically targeted and recruited FRANK to work for

TESLA. One of the incentives to accept the job was TESLA's promise of stock options. However, as set forth in more detail, *below*, FRANK lost a significant amount of money in stock benefits (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock options fully vested at four years of employment with TESLA.)  TESLA appears to intentionally terminate employment before employees can receive vested stock benefits.

57.     FRANK also seeks damages for the costs of uprooting from Orange County, California to San Diego, California, expenses incurred in relocation, and the loss of security and income associated with this employment. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 648-649 (1996).

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff FRANK against Defendant TESLA, and DOES

### 1 through 10)

58.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

59.     Defendants' conduct caused Plaintiff to suffer severe emotional distress (including, but not limited to: stress, anxiety, depression, headaches, sleep problems)

60.     As a result of Defendants' conduct, Plaintiff suffered severe emotional distress, as indicated above.

61.     As a result of Defendants' conduct, Plaintiff was harmed, and Defendants' behavior was a substantial factor in causing Plaintiff harm.

62.     As a direct and proximate result of said tortuous acts, omissions or conduct of Defendants, as herein alleged, Plaintiff has sustained and incurred injuries and damages (both general and special) and is certain in the future to sustain and incur losses (both incidental and consequential).

63.     The acts of Defendants were done with malice in that Defendants' conduct was intended by the Defendants to cause injury to Plaintiff or was despicable conduct which was carried

on by Defendants with a willful and conscious disregard of the rights of Plaintiff.  In addition, Defendants' actions were oppressive in that Defendants' conduct was despicable and subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights. Therefore, an award of punitive damages is sought.

## EIGHTH CAUSE OF ACTION

## FAILURE TO PROVIDE MEAL BREAKS

### (Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)

64.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

65.     California Industrial Welfare Commission ("IWC") Wage order No. 4-2001 mandates that employees are entitled to an off-duty meal break of not less than 30 minutes for every five-hour period worked and a second meal break of not less than 30 minutes for every 10 hour period worked.  The meal break must be for an uninterrupted 30 minutes, during which employees must be relieved of all duties.  California Labor Code Section 512 codifies this requirement.  In addition, California Labor Code Section 226.7 states that "if an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

66.     While Plaintiff was an hourly employee, Plaintiff was consistently required by Defendants to work without being provided the required thirty (30) minute uninterrupted meal breaks.

67.     Plaintiff is entitled to recover an amount equal to one hour of wages per missed meal break, in addition to interest, applicable penalties, attorneys' fees and costs.

68.     Pursuant to California Labor Code Section 558, any employer who violates any provision of an IWC order is subject to a civil penalty of fifty dollars ($50) for an initial violation and one hundred ($100) for each subsequent violation per pay period.  These civil penalties are recoverable by Plaintiff.

**NINTH CAUSE OF ACTION**

**FAILURE TO PROVIDE REST BREAKS**

**(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)**

69.    Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

70.    California Industrial Welfare Commission ("IWC") Wage order No. 4-2001 mandates that employees are entitled to a paid, off-duty 10-minute rest break for every approximately four-hour period worked.  California Labor Code Section 226.7 states that "if an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Plaintiff consistently worked with no rest breaks.

71.    Throughout Plaintiff's employment while he was an hourly employee, Defendants prohibited Plaintiff from taking a 10-minute rest break for every period of approximately four hours worked.

72.    Plaintiff is entitled to recover an amount equal to one hour of wages per missed rest break, in addition to interest, applicable penalties, attorneys' fees and costs.

73.    Pursuant to California Labor Code Section 558, any employer who violates any provision of an IWC order is subject to a civil penalty of fifty dollars ($50) for an initial violation and one hundred ($100) for each subsequent violation per pay period.  These civil penalties are recoverable by Plaintiff.

**TENTH CAUSE OF ACTION**

**WRONGFUL FAILURE TO PROMOTE IN VIOLATION OF FEHA,**

**GOVERNMENT CODE SECTION 12940 ET SEQ.**

**(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)**

74. Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

75. Plaintiff believes and thereon alleges that his race/national origin/ancestry was a factor in Defendants' wrongful denials of promotion, as stated, above, and incorporated herein. More specifically: FRANK was not promoted at least four times because of his race; During FRANK's employment at TESLA, every African-American salesperson at the UTC San Diego TESLA location was fired; To FRANK's knowledge he was the *only* African-American manager at TESLA during the time he was employed, *throughout the entire company*.

76. At all times herein relevant, there was an employer/employee, agency, or other qualified relationship between Plaintiff and Defendants. *California Government Code* § 12940 et seq.

77. Plaintiff's denials of promotion were wrongful because he was denied promotions because of his race/national origin/ancestry in violation of *California Government Code* § 12940 et. seq.

78. Defendants' conduct above described is in violation of various statues and the decisional law of this state and country, including but not limited to the FEHA, *California Government Code* § 12940 et. seq.; *Title VII Civil Rights Act of 1964*; *Scott v. Pacific Gas and Elec. Co.* (1995) 11 Cal. 4th 454, 464; *Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal. App. 3d 1394, 1399-1401; California Constitution Article I, Section 8.

79. As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff has suffered extreme and severe anguish, humiliation, anger, tension, anxiety, depression, lowered self-esteem, sleeplessness and severe emotional distress.

80. As a further direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer loss of income, loss of earning capacity, loss of job opportunity and other losses.

81. Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in an amount according to proof.

82. Plaintiff also seeks attorneys' fees in an amount according to proof.

**ELEVENTH CAUSE OF ACTION**

**FRAUD – NEGLIGENT MISREPRESENTATION**

**(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)**

83.     Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, and further alleges:

84.     Plaintiff was harmed because Defendants negligently misrepresented facts.

85.     Defendants represented to Plaintiff that certain facts were true, including, but not limited to, that Plaintiff had permission to and could appear in a commercial for the Audi e-tron (to be shown during Super Bowl 2020), and specifically gave Plaintiff the days off from work to shoot the commercial for the Audi e-tron.

86.     Defendants' representation was *not* true. Defendants' statements were representations of fact because Defendants had special knowledge about the subject matter that Plaintiff did not have.

87.     Defendants made representations, not as a casual expression of belief, but in a way that declared the matter to be true as Plaintiff's employer.

88.     Defendants had a relationship of trust and confidence with Plaintiff as Plaintiff's employer, and as such, Defendants had reason to expect that Plaintiff would rely on their opinion.

89.     Even if Defendants believed that these representations were true, Defendants had no reasonable grounds for believing these representations were true when they made the representations since they did not clear Plaintiff's appearing in a commercial for the Audi e-tron with Elon Musk (who later directed that Plaintiff resign or be fired in part for appearing in the commercial.)

90.     Defendants intended that Plaintiff rely on these representations.

91.     Plaintiff reasonably relied on Defendants' representations.

92.     Plaintiff was harmed as a result of Defendants' false representations.  Plaintiff's reliance on Defendants' representations was a substantial factor in causing his harm.

93.     As a direct and proximate result of said tortuous acts, omissions or conduct of Defendants, as herein alleged, Plaintiff has sustained and incurred injuries and damages (both general and special) and is certain in the future to sustain and incur losses (both incidental and consequential).

94.     The actions of Defendants were done with malice in that Defendants' conduct was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff.

95.     Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences.  In addition, Defendants' actions were oppressive in that Defendants' conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of Plaintiff.

96.     Defendants' actions were also fraudulent in that Defendants negligently misrepresented and concealed material facts known to the Defendants with an intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury.  Therefore, an award of punitive damages is sought.

## TWELFTH CAUSE OF ACTION

## FRAUD – CONCEALMENT

## (Plaintiff FRANK against Defendant TESLA, and DOES

## 1 through 10)

97.     Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, and further alleges:

98.     Plaintiff was harmed because Defendants concealed certain information.

99.     Plaintiff was in a fiduciary relationship with Defendants because they were his employer.

100.     Defendants intentionally failed to disclose certain facts to Plaintiff; disclosed some facts to Plaintiff but intentionally failed to disclose other facts, making the disclosure deceptive; and intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered.

101.     Plaintiff did not know of the concealed facts.

102.     Defendants intended to deceive Plaintiff by concealing the facts.

103.     Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently.

104.     Plaintiff was harmed as a result of this failure to disclose material information by his employer.

105.     Defendants' concealment was a substantial factor in causing Plaintiff's harm.

106.     As a direct and proximate result of said tortuous acts, omissions or conduct of Defendant, as herein alleged, Plaintiff has sustained and incurred injuries and damages (both general and special), and is certain in the future to sustain and incur losses (both incidental and consequential).

107.     The actions of Defendants were done with malice in that Defendants' conduct was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff.

108.     Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences.  In addition, Defendants' actions were oppressive in that Defendants' conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of Plaintiff.

109.     Defendants' actions were also fraudulent in that Defendants negligently misrepresented and concealed material facts known to the Defendants with an intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury.  Therefore, an award of punitive damages is sought.

**THIRTEENTH CAUSE OF ACTION**

**PROMISSORY FRAUD**

**(Plaintiff FRANK against Defendant TESLA, and DOES**

**1 through 10)**

110.    Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

111.    A promise was made to Plaintiff regarding a material fact (i.e. that Plaintiff would be paid for relocation expenses for moving from Orange County, California to San Diego, California.)

112.    At the time of making this promise, Defendants did not intent to pay Plaintiff for relocation expense.

113.    Defendants' promise to pay Plaintiff for relocation expenses was made with the intent to deceive and the intent to induce Plaintiff to relocate to San Diego and to pay for his own relocation expenses.

114.    Plaintiff relied on Defendants' promise and relocated to San Diego.

115.    Defendants did not pay for Plaintiff's relocation expenses as promised.

116.    Plaintiff seeks damages for the costs of uprooting from Orange County, California to San Diego, California, expenses incurred in relocation, and the loss of security and income associated with this employment. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 648-649 (1996).

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF LABOR CODE SECTION 201**

**(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)**

117.    Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

118.    Defendants violated Labor Code Section 201 by failing to pay Plaintiff a Performance-based Bonus, as set forth in more detail, above.

119.  Labor Code Section 201(a) provides: If an Employer discharges an Employee, the wages earned and unpaid at the time of the discharge are due and payable immediately.

120.  Plaintiff is entitled to his unpaid Performance Bonus, interest thereon, and waiting time penalties. Performance-based bonuses are considered earned wages. Therefore, Defendant is liable for "waiting time penalties" in *addition to* unpaid Performance Bonus wages and interest thereon, for failing to timely pay out the Performance Bonus with Plaintiff's final paycheck. The waiting time penalty is Plaintiff's average daily wage, for 30 days.

## **PRAYER FOR RELIEF**

1.     For compensatory damages;

2.     For special damages;

3.     For consequential damages according to proof;

4.     For incidental damages according to proof;

5.     For prejudgment interest;

6.     For costs incurred, including reasonable attorneys' fees;

7.     For punitive damages as to Defendants; and

8.     For any other and further relief as the Court may deem proper.

Dated:  January 14, 2022                    BOHM WILDISH & MATSEN, LLP

By: _____

JAMES G. BOHM
JOANNE P. FREEMAN
Attorneys for Plaintiff
NAYMON FRANK

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to California *Code of Civil Procedure* §631.

Dated: January 14, 2022                          BOHM WILDISH & MATSEN, LLP

                                    By: _____
                                         JAMES G. BOHM
                                         JOANNE P. FREEMAN
                                         Attorneys for Plaintiff
                                         NAYMON FRANK

COMPLAINT

# Exhibit A

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency        GAVIN NEWSOM, GOVERNOR

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

January 14, 2022

Sherry Graybehl Dantony
695 Town Center Drive, 700
Costa Mesa, California 92626

RE:    **Notice to Complainant's Attorney**
       DFEH Matter Number: 202201-15856114
       Right to Sue: FRANK / TESLA, INC.

Dear Sherry Graybehl Dantony:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**      KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 14, 2022

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202201-15856114
      Right to Sue: FRANK / TESLA, INC.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code
section 12945.21, a small employer with 5 -19 employees, charged with violation
of the California Family Rights Act, Government Code section 12945.2, has the
right to participate in DFEH's free mediation program. Under this program both
the employee requesting an immediate right to sue and the employer charged
with the violation may request that all parties participate in DFEH's free
mediation program. The employee is required to contact the Department's
Dispute Resolution Division prior to filing a civil action and must also indicate
whether they are requesting mediation.  The employee is prohibited from filing a
civil action unless the Department does not initiate mediation within the time
period specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. You may
contact DFEH's Small Employer Family Leave Mediation Pilot Program by
emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter
number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                      GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 14, 2022

NAYMON FRANK
695 Town Center Dr., Suite 700
Costa Mesa, CA 92626

RE: **Notice of Case Closure and Right to Sue**
    DFEH Matter Number: 202201-15856114
    Right to Sue: FRANK / TESLA, INC.

Dear NAYMON FRANK:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 14, 2022 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact DFEH's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Department of Fair Employment and Housing

1
2
3

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

4

**In the Matter of the Complaint of**

5    NAYMON FRANK                                    DFEH No. 202201-15856114

6                                  Complainant,

7    vs.

8    TESLA, INC.
     10250 Santa Monica Blvd., Suite 1340
9    Los Angeles, CA 90067

10                                 Respondents

11   _____

12
13   **1.** Respondent **TESLA, INC.** is an **employer** subject to suit under the California Fair
     Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

14

15   **2.** Complainant **NAYMON FRANK**, resides in the City of **Costa Mesa,** State of **CA.**

16

17   **3.** Complainant alleges that on or about **February 1, 2020**, respondent took the
     following adverse actions:

18   **Complainant was harassed** because of complainant's race, color.

19   **Complainant was discriminated against** because of complainant's race, color and as a
20   result of the discrimination was terminated, forced to quit, denied hire or promotion.

21   **Complainant experienced retaliation** because complainant reported or resisted any form
     of discrimination or harassment and as a result was terminated, forced to quit.
22

23   **Additional Complaint Details:** NAYMON FRANK ("FRANK") began his employment with
     TESLA, INC. ("TESLA") on or about August 15, 2016, in sales, with the title of Owner
24   Advisor in Newport Beach, California.  One of the incentives to accept the job was TESLA's
     promise of stock options. However, FRANK lost a significant amount of money in stock
25

26                                        -1-
                              *Complaint – DFEH No. 202201-15856114*
27
     Date Filed: January 14, 2022
28

     Form 0T_157EAC345513 (Revised 12/21)                          DFEH-ENF 80 RS

benefits (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock options fully vested at four years of employment with TESLA.) TESLA appears to intentionally terminate employment before employees can receive vested stock benefits.

While working as an Owner Advisor in Newport Beach, California, FRANK also was a Regional Trainer, training employees at the Buena Park, Brea, and Costa Mesa locations, among other locations.

On or about November 1, 2018, FRANK relocated to the UTC (University Town Center) TESLA location in San Diego; FRANK's title changed to that of Assistant Store Manager. Although TESLA told FRANK that his relocation costs would be paid, FRANK was never reimbursed and ended up paying the costs of relocating to San Diego himself. FRANK became a salaried employee when he became an Assistant Store Manager (prior to that time, FRANK was an hourly employee.)

FRANK accepted the new position of Assistant Store Manager (although the pay – without the bonuses FRANK received as an Owner Advisor - was lower than the position of Owner Advisor), because he had been informed by TESLA that the way to move up in the TESLA corporation was to get into management. FRANK had the expectation that he would be eligible for promotions in management once he accepted the Assistant Store Manager position.

However, despite the fact that during FRANK's employment with TESLA at the Newport Beach and San Diego locations, the TESLA Newport Beach location was ranked first in sales, and the TESLA San Diego location was ranked second in sales, FRANK was never promoted above the title of Assistant Store Manager. FRANK estimates that he was passed over for a promotion at least four times while at TESLA. For example, FRANK trained employee Chris Bisson, and then Bisson was promoted to Store Manager at the San Diego UTC location (while FRANK remained Assistant Store Manager at the same location.)

On December 13, 2019, FRANK received word that he had been selected for an Audi commercial for the Audi e-tron (to be shown during Super Bowl 2020.) Although FRANK had never been told of and had never received from TESLA any policy prohibiting him from working as an actor while employed at TESLA (or specifically appearing in a car commercial), out of over-abundance of caution, FRANK asked his boss Kristina Holt (Store Manager) whether it would be okay if he appeared in the Audi e-tron commercial, which would air during the 2020 Super Bowl. More specifically, FRANK told Holt on December 14, 2019, that he had been selected to appear in the Audi commercial, and Holt told FRANK that she had cleared FRANK's appearing in the Audi e-tron commercial with Suzie Hatzis (Regional Manager) the same day. Holt specifically gave FRANK the days off that FRANK needed to shoot the Audi e-tron commercial (i.e. December 21 and December 22, 2019.) No one said anything to FRANK about a potential conflict of interest in appearing in a commercial for a competitor.

The Audi e-tron commercial aired during the Super Bowl on January 31, 2020. On February 1, 2020, which was FRANK's first day on the job as Assistant Store Manager in Santa Monica, Isabella Merrick called FRANK and told him that she (Merrick) was offering FRANK the opportunity to resign (which would allow for the possibility of being re-hired); if FRANK didn't resign by the end of the call with Merrick, Merrick told FRANK he would be fired. Not having any other option than to be fired (with no chance of being re-hired), FRANK

-2-

*Complaint – DFEH No. 202201-15856114*

Date Filed: January 14, 2022

1 resigned (i.e. he was constructively terminated.)  The pre-textual reason for asking FRANK
to resign or be terminated was that FRANK's appearing in an Audi e-tron commercial was a
2 conflict of interest.  Merrick, at the time, knew that FRANK had requested and was given
permission by TESLA management to appear in the Audi e-tron commercial.
3          FRANK experienced a hostile work environment during his employment with TESLA,
sufficiently severe or pervasive to alter the conditions of his employment and to create an
4 abusive working environment including but not limited to:
5 •          Being harassed because of his race—African-American.
   •          Not being promoted at least four times because of his race.
6 •          During FRANK's employment at TESLA, every African-American salesperson at the
UTC San Diego TESLA location was fired.
7 •          To FRANK's knowledge he was the only African-American manager at TESLA during
the time he was employed, throughout the entire company.
8 •          FRANK was told by manager Suzie Hatzis during a performance review that he
looked "intimidating."  When FRANK asked Hatzis to provide clarification, Hatzis told FRANK
9 (an African-American man) that he "can be a scary-looking guy." FRANK said that this was
not a fair statement, and asked Holt to remove these comments from his performance
10 review.  FRANK also called and made a written complaint to Human Resources.
   •          Although FRANK followed all TESA policies, FRANK was told by manager Suzie
11 Hatzis that he "doesn't follow our rules", and "doesn't play ball."
   •          Suzy Hatzis also tried to write-up FRANK for taking a test-drive car from the Vegas
12 Hub to the call center, while FRANK was working at the Las Vegas TESLA location, when
his use of the car was authorized.
13 FRANK's constructive termination was wrongful because he was forced to quit in part
because of racial discrimination and harassment.
14 FRANK was retaliated against because he did an Audi e-tron commercial after getting
permission to do so from TESLA.  FRANK was also retaliated against for being African-
15 American.

16

17

18

19

20

21

22

23

24

25

26                                             -3-
                      *Complaint – DFEH No. 202201-15856114*
27
   Date Filed: January 14, 2022
28

Form 0T_157EAC345513 (Revised 12/21)                                    DFEH-ENF 80 RS

VERIFICATION

I, **Sherry Graybehl D'Antony**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.   The matters alleged are based on information and belief, which I believe to be true.

On January 14, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Costa Mesa, CA**

-4-
*Complaint – DFEH No. 202201-15856114*

Date Filed: January 14, 2022

Form 0T_157EAC345513 (Revised 12/21)                                      DFEH-ENF 80 RS

# EXHIBIT

# 2

BOHM WILDISH & MATSEN, LLP
JAMES G. BOHM (SBN 132430)
JOANNE P. FREEMAN (SBN 140137)
695 Town Center Drive, Suite 700
Costa Mesa, CA  92626
Telephone Number:  714-384-6500
Facsimile Number:  714-384-6501

Attorneys for Plaintiff NAYMON FRANK, an individual

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION

NAYMON FRANK, an individual,

           Plaintiffs,

     v.

TESLA, INC., a corporation; SUZIE HATZIS, an individual; and DOES 1 through 49, inclusive

           Defendants

CASE NO. 22STCV01712
**FIRST AMENDED COMPLAINT FOR:**
**(1) CONSTRUCTIVE DISCHARGE;**
**(2) HARASSMENT IN VIOLATION OF FEHA, GOVERNMENT CODE SECTION 12940 ET SEQ.;**
**(3) DISCRIMINATION IN VIOLATION OF FEHA, GOVERNMENT CODE SECTION 12940 ET SEQ.;**
**(4) FAILURE TO REMEDY AND/OR PREVENT DISCRIMINATION AND HARASSMENT UNDER FEHA, GOVERNMENT CODE SECTION 12940 ET SEQ;**
**(5) VIOLATION OF LABOR CODE SECTION 1194 ET SEQ.**
**(6) FRAUDULENT INDUCEMENT IN VIOLATION OF LABOR CODE SECTION 970;**
**(7) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**
**(8) FAILURE TO PROVIDE MEAL BREAKS;**
**(9)  FAILURE TO PROVIDE REST BREAKS;**
**(10) WRONGFUL FAILURE TO PROMOTE IN VIOLATION OF FEHA, GOVERNMENT CODE SECTION 12940 ET SEQ.;**
**(11) FRAUD – NEGLIGENT MISREPRESENTATION;**
**(12)  FRAUD – CONCEALMENT**
**(13)  PROMISSORY FRAUD**
**(14) VIOLATION OF LABOR CODE 201**

1    FOR HIS CLAIMS against Defendants TESLA, INC., (hereinafter "TESLA"), SUZIE

2    HATZIS (hereinafter "HATZIS"), and DOES 1 through 49, inclusive, Plaintiff NAYMON FRANK,

3    an individual, alleges as follows:

4                               **GENERAL ALLEGATIONS**

5        1.    Plaintiff NAYMON FRANK (hereinafter referred to as "FRANK") was an individual

6    working at various locations in California (including Los Angeles) at the time of the actions alleged

7    herein.  FRANK is African-American.

8        2.    Defendant TESLA is a corporation with places of business in Los Angeles County,

9    San Diego County, and Orange County, in California. Defendant HATZIS is an individual living in

10   Orange County, in California.

11       3.    Plaintiff is ignorant of the true names and capacities of DOES, Defendants sued herein

12   as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names.

13   Plaintiff will seek leave to amend this complaint to allege the true names and capacities of such

14   Defendants when they have been ascertained.

15       4.    Plaintiff is informed and believes and thereon alleges that at all relevant times

16   defendants sued as DOE 1 through 50 inclusive, whether individuals, corporations, partnerships or

17   otherwise, and the Defendants named herein, were and/or now are the agents, servants, employees,

18   representatives, and alter egos of each other, and they are liable to the Plaintiff because in doing the

19   things hereinafter alleged they were acting within the course and scope of their agency and/or

20   authority, and pursuant to the permission and consent of the remaining Defendants, and/or their acts

21   were consented to and/or ratified.

22       5.    Plaintiff is informed and believes, and based thereon alleges, that defendant DOES,

23   either some or all, are responsible in some manner for the events and happenings referred to herein

24   and caused injury to Plaintiff as alleged herein. Plaintiff is informed and believes, and based thereon

25   alleges, that some or all of the defendant DOES are and/or were agents and/or employees of

26   Defendants and in doing the things hereinafter alleged, and at all times, were acting within the scope

27   of their authority as such agents and/or employees, and at all times were acting within the scope of

28   their authority as such agents and/or employees with the express, implied and/or ostensible authority

1  of these Defendants.

2      6.     Plaintiff is informed and believes, and based thereon alleges, that Defendants, and all

3  of the defendant DOES, ratified, authorized, and consented to all of the acts and/or conduct of each

4  other as alleged herein.

5      7.     Venue is appropriate in the County of Los Angeles because the Plaintiff was employed

6  and the relevant acts and omissions occurred within the County of Los Angeles, as well as San Diego

7  and Orange counties.

8  **SUMMARY OF FACTS**

9      8.     FRANK began his employment with TESLA on or about August 15, 2016, in sales,

10  with the title of Owner Advisor in Newport Beach, California.

11      9.     Recruiter Vincent Duran specifically targeted and recruited FRANK to work for

12  TESLA. One of the incentives to accept the job was TESLA's promise of stock options. However, as

13  set forth in more detail, *below*, FRANK lost a significant amount of money in stock benefits

14  (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full

15  vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock

16  options fully vested at four years of employment with TESLA.) TESLA appears to intentionally

17  terminate employment before employees can receive vested stock benefits.

18      10.    While working as an Owner Advisor in Newport Beach, California, FRANK also was

19  a Regional Trainer, training employees at the Buena Park, Brea, and Costa Mesa locations, among
other locations.

20      11.    During the time that FRANK was a non-exempt employee at TESLA (i.e. from on or

21  about August 15, 2016, until he became an Assistant Store Manager on or about November 1, 2018),

22  FRANK consistently worked an average of 80 hours a week, ***without overtime compensation, meal***

23  ***breaks, or rest breaks.***

24      12.    On or about November 1, 2018, FRANK relocated to the UTC (University Town

25  Center) TESLA location in San Diego; FRANK's title changed to that of Assistant Store Manager.

26  Although TESLA told FRANK that his relocation costs would be paid, FRANK was never reimbursed
and ended up paying the costs of relocating to San Diego himself. FRANK became a salaried

27  employee when he became an Assistant Store Manager (prior to that time, FRANK was an hourly

28  employee.)

3

FIRST AMENDED COMPLAINT

13.     FRANK accepted the new position of Assistant Store Manager (although the pay – without the bonuses FRANK received as an Owner Advisor - was lower than the position of Owner Advisor), because he had been informed by TESLA that the way to move up in the TESLA corporation was to get into management.  FRANK had the expectation that he would be eligible for promotions in management once he accepted the Assistant Store Manager position.

14.     However, despite the fact that during FRANK's employment with TESLA at the Newport Beach and San Diego locations, the TESLA Newport Beach location was ranked first in sales, and the TESLA San Diego location was ranked second in sales, FRANK was never promoted above the title of Assistant Store Manager. FRANK estimates that he was passed over for a promotion at least four times while at TESLA. For example, FRANK trained employee Chris Bisson, and then Bisson was promoted to Store Manager at the San Diego UTC location (while FRANK remained Assistant Store Manager at the same location.)

15.     Prior to working at TESLA, FRANK was a professional football player for the Green Bay Packers, an Oregon state police officer, a part-time professional model and actor, and worked in store management at Iniqlo.

16.     On December 13, 2019, FRANK received word that he had been selected for an Audi commercial for the Audi e-tron (to be shown during Super Bowl 2020.) Although FRANK had never been told of and had never received from TESLA any policy prohibiting him from working as an actor while employed at TESLA (or specifically appearing in a car commercial), out of over-abundance of caution, FRANK asked his boss Kristina Holt (Store Manager) whether it would be okay if he appeared in the Audi e-tron commercial, which would air during the 2020 Super Bowl. More specifically, FRANK told Holt on December 14, 2019, that he had been selected to appear in the Audi commercial, and Holt told FRANK that she had cleared FRANK's appearing in the Audi e-tron commercial with SUZIE HATZIS (Regional Manager) the same day. Holt specifically gave FRANK the days off that FRANK needed to shoot the Audi e-tron commercial (i.e. December 21 and December 22, 2019.) Not only was FRANK given the days off for the commercial shoot, but Hatzis announced to the entire leadership team at the Carlsbad, California TESLA Location that FRANK would be appearing in the Audi e-tron commercial and "wasn't that cool."  No one said anything to FRANK about a potential conflict of interest in appearing in a commercial for a competitor.  FRANK was never hired by or compensated by Audi. Rather, FRANK's agents communicated with 72 and Sunny (an advertising agency) to cast FRANK in the Audi e-tron commercial.

17.     The Audi e-tron commercial aired during the Super Bowl on January 31, 2020.  On February 1, 2020, which was FRANK's first day on the job as Assistant Store Manager in Santa Monica, Isabella Merrick called FRANK and told him that Suzie Hatzis had been fired and that she (Merrick) was offering FRANK the opportunity to resign (which would allow for the possibility of being re-hired); if FRANK didn't resign by the end of the call with Merrick, Merrick told FRANK he would be fired. Not having any other option than to be fired (with no chance of being re-hired), FRANK resigned (i.e. he was constructively terminated.)  The pre-textual reason for asking FRANK to resign or be terminated was that FRANK's appearing in an Audi e-tron commercial was a conflict of interest.  Merrick, at the time, knew that FRANK had requested and was given permission by TESLA management to appear in the Audi e-tron commercial.

18.     FRANK lost a significant amount of money in in stock benefits (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock options fully vested at four years of employment with TESLA.)  FRANK's TESLA stock would have vested in June of 2020; a five-way stock split occurred in March of 2020, which greatly increased the value of TESLA stock.  In addition, FRANK also lost his Performance Bonus (which were typically awarded the month following the end of the Q4 deliveries in January/February.  Performance bonuses were tied to annual reviews.  FRANK had not yet received his 2019 annual review.)  FRANK is informed and believes that TESLA makes a pattern out of terminating employees shortly before their RSU's vest under various pretexts.

19.     FRANK later learned that Elon Musk had made the decision to terminate FRANK (i.e. to give him the option of resigning or to be terminated.) Elon Musk knew who FRANK was because the first year that FRANK worked at TESLA, an auto-pilot Tesla car that FRANK was in crashed. The other people that were in the car went to the media with the story; FRANK did not talk to the media.

20.     FRANK experienced a hostile work environment during his employment with TESLA, including but not limited to:

- Being harassed because of his race—African-American.
- Not being promoted at least four times because of his race.
- During FRANK's employment at TESLA, every African-American salesperson at the UTC San Diego TESLA location was fired.

- To FRANK's knowledge he was the ***only*** African-American manager at TESLA during the time he was employed, ***throughout the entire company***.
- FRANK was told by manager Suzie Hatzis during a performance review that he looked "intimidating." When FRANK asked Hatzis to provide clarification, Hatzis told FRANK (an African-American man) that he "can be a scary-looking guy." FRANK said that this was not a fair statement, and asked Holt to remove these comments from his performance review. FRANK also called and made a written complaint to Human Resources.
- Although FRANK followed all TESA policies, FRANK was told by manager Suzie Hatzis that he "doesn't follow our rules", and "doesn't play ball."
- Suzy Hatzis also tried to write-up FRANK for taking a test-drive car from the Vegas Hub to the call center, while FRANK was working at the Las Vegas TESLA location, when his use of the car was authorized.

21.    FRANK also experienced wage and hour violations:  1) While an hourly employee, FRANK was forced to clock out for lunch but required to continue working; 2) FRANK's timecards were altered without his consent to give the appearance of no wage and hour meal violations; 3) FRANK did not receive overtime while a salaried employee; 4) As of February 1, 2020, FRANK had not yet received his 2019 annual review, and did not receive a Performance Bonus, to which he was entitled.

22.    Prior to filing this Complaint, Plaintiff fulfilled any legal requirement or exhausted any administrative remedy imposed on him by having filed the substance of claims alleged herein with the California Department of Fair Employment and Housing (hereinafter "DFEH") and has received Right to Sue Letters from the DFEH. (**Exhibit A**) Plaintiff has therefore substantially complied with all requirements for the filing of this Complaint and has exhausted his administrative remedies prior to filing, commencing, and serving the within action.

//
//
//
//
//

1
2
3

**FIRST CAUSE OF ACTION**

**CONSTRUCTIVE DISCHARGE**

(**Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10**)

4      23.     Plaintiff incorporates by this reference as though set forth in full the allegations of
5   the preceding paragraphs of this Complaint.

6      24.     Defendant Tesla (through its officers, directors, managing agents, or supervisory
7   employees), intentionally created or knowingly permitted working conditions to exist that were so
8   intolerable that a reasonable person in Plaintiff's position would have no reasonable alternative
9   except to resign. Plaintiff resigned because of these working conditions, including, but not limited
10  to:    Racial harassment and discrimination (including failure to promote) and TESLA telling
11  FRANK that he needed to resign (or be fired), after FRANK appeared in a commercial *that he had*
12  *specifically been given permission by his supervisor to appear in.*

13     25.     At all times herein relevant, there was an employer/employee, agency, or other
14  qualified relationship between Plaintiff and Defendants.  *California Government Code* § 12940 et
15  seq.

16     26.     Plaintiff's constructive termination was wrongful because he was forced to quit in
17  part because of racial discrimination and harassment in violation of *California Government Code* §
18  12940 et. seq. and the administrative regulations of the Fair  Employment and Housing Act.

19     27.     Defendants' conduct above described is in violation of various statues and the
20  decisional law of this state and country, including but not limited to the FEHA, *California*
21  *Government Code* § 12940 et. seq.; *Title VII Civil Rights Act of 1964*; *Scott v. Pacific Gas and Elec.*
22  *Co.* (1995) 11 Cal. 4th 454, 464; *Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199
23  Cal. App. 3d 1394, 1399-1401; California Constitution Article I, Section 8.

24     28.     As a direct and proximate result of Defendants' unlawful conduct as alleged herein,
25  Plaintiff has suffered extreme and severe anguish, humiliation, anger, tension, anxiety, depression,
26  lowered self-esteem, sleeplessness and severe emotional distress.

27     29.     As a further direct and proximate result of the unlawful conduct, Plaintiff has
28  suffered and continues to suffer loss of income, loss of stock benefits, loss of earning capacity, loss

1    of job opportunity and other losses.

2         30.    Defendants' conduct described above was willful, despicable, knowing, and

3    intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in

4    an amount according to proof.

5         31.    Plaintiff also seeks attorneys' fees in an amount according to proof.

6

7                          **SECOND CAUSE OF ACTION**

8                     **HARASSMENT IN VIOLATION OF FEHA,**

9                 **GOVERNMENT CODE SECTION 12940 ET SEQ.**

10        (**Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10**)

11        32.    Plaintiff incorporates by this reference as though set forth in full the allegations of

12   the preceding paragraphs of this Complaint.

13        33.    FRANK was subjected to a workplace permeated with discriminatory intimidation,

14   ridicule and insult that was sufficiently severe or pervasive to alter the conditions of his employment

15   and to create an abusive working environment.

16        34.    Defendants blatantly encouraged an environment for harassment.  During the relevant

17   periods of this Complaint, Defendants and each of them harassed and intimidated the Plaintiff by

18   creating and maintaining a hostile work environment through pervasive and continuous harassment

19   and discrimination against FRANK that was so offensive and severe that it substantially detrimentally

20   altered the terms and conditions of Plaintiff's employment.  The aforementioned acts and omissions

21   constitute harassment and a hostile work environment under *Government Code* §12940(j) et. seq.

22        35.    As a result of Defendants' conduct during their employment, Plaintiff has suffered

23   and continues to suffer embarrassment, humiliation, emotional distress and mental anguish, all of

24   which contributes to his damages in an amount according to proof in excess of the jurisdictional

25   minimums of this Court.  Moreover, Plaintiff was forced to employ attorneys to prosecute this

26   action and Plaintiff is entitled to attorney's fees and costs in accordance with case and statutory

27   authority.

28

36.     Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks an award of punitive damages and exemplary damages in an amount according to proof.

37.     Plaintiff is informed and believes and based thereon alleges that in doing the acts or failing to take action as herein alleged, TESLA, and DOES 1 through 10 have acted and are acting with full knowledge of the consequences and harm being caused to Plaintiff.  Such conduct is fraudulent, willful, oppressive and malicious such that Plaintiff is entitled to punitive and exemplary damages against TESLA in accordance with Civil Code § 3294.

**THIRD CAUSE OF ACTION**

**DISCRIMINATION IN VIOLATION OF FEHA,**

**GOVERNMENT CODE SECTION 12940 ET SEQ.**

**(Plaintiff FRANK against Defendant TESLA**

**and DOES 1 through 10 )**

38.      Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

39.     FRANK was subjected to a workplace permeated with discriminatory intimidation, ridicule and insult that sufficiently severe or pervasive to alter the conditions of his employment and to create a discriminatory and abusive working environment.  Throughout his employment with Defendants, FRANK was subjected to racial discrimination, including but not limited to, being passed over for promotion at least four times and racially based comments and insults.

40.     Defendants blatantly encouraged an environment for racial harassment and discrimination. During the relevant periods of this Complaint, Defendants and each of them harassed intimidated, and discriminated against Plaintiff by creating and maintaining a hostile work environment through pervasive and continuous harassment and discrimination against FRANK that was so offensive and severe that it substantially detrimentally altered the terms and conditions of

9

FIRST AMENDED COMPLAINT

Plaintiff's employment.   The aforementioned acts and omissions constitute discrimination, harassment and a hostile work environment under *Government Code* §12940 et. seq.

41.   As a result of Defendants' conduct during their employment of Plaintiff, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress and mental anguish, all of which contributes to her damages in an amount according to proof in excess of the jurisdictional minimums of this Court.   Moreover, Plaintiff was forced to employ attorneys to prosecute this action and Plaintiff is entitled to attorney's fees and costs in accordance with case and statutory authority.

42.   Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in an amount according to proof.   Plaintiff is informed and believes and based thereon alleges that in doing the acts or failing to take action as herein alleged, TESLA, and DOES 1 through 9 have acted and are acting with full knowledge of the consequences and harm being caused to Plaintiff.   Such conduct is fraudulent, willful, oppressive and malicious such that Plaintiff is entitled to punitive and exemplary damages against TESLA in accordance with Civil Code §3294.

**FOURTH CAUSE OF ACTION**

**FAILURE TO REMEDY AND/OR PREVENT**

**DISCRIMINATION AND HARASSMENT IN**

**VIOLATION OF FEHA, GOVERNMENT CODE SECTION 12940 ET SEQ.**

(**Plaintiff FRANK against Defendant TESLA and DOES 1 through 10**)

43.   Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

FIRST AMENDED COMPLAINT

44.     FRANK was subjected to a workplace permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment.   Throughout his employment with the Defendants, FRANK was subjected to harassment by Suzie Hatzis; and others employed by Defendant Tesla.

45.     Defendants knew of the harassment and/or reasonably should have known of the harassment as Defendants had received multiple complaints from employees about Suzie Hatzis and failed to conduct an investigation in good faith or act to prevent and/or remedy against the harassment in violation of *Government Code* §12940(j)(1).   Further, Defendants failed to take all reasonable measures to prevent harassment from occurring in violation of *Government Code* §12940(k).   Plaintiff filed a timely charge of discrimination and harassment with the California Department of Fair Employment and Housing and received a Right to Sue Letter.

46.     As a result of Defendants' conduct during their employment of Plaintiff, Plaintiff has suffered and continues to suffer embarrassment, humiliation, emotional distress and mental anguish, all of which contributes to her damages in an amount according to proof in excess of the jurisdictional minimums of this Court.   Moreover, Plaintiff was forced to employ attorneys to prosecute this action and Plaintiff is entitled to attorney's fees and costs in accordance with case and statutory authority.

47.     Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF LABOR CODE SECTION 1194 ET. SEQ.**

**(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)**

48.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

FIRST AMENDED COMPLAINT

49.    Plaintiff performed work for Defendant Tesla, including overtime work.

50.    Defendant Tesla knew or should have known that Plaintiff worked overtime hours.

51.    Plaintiff was not paid for overtime work by Defendant Tesla.

52.    Plaintiff is entitled to overtime wages, interest thereon, attorney's fees, and costs of suit, in addition to waiting time penalties.

53.    Waiting time penalties are for Defendant failing to timely pay all overtime wages with Plaintiff's final paycheck. The waiting time penalty is Plaintiff's average daily wage, for 30 days.

<u>**SIXTH CAUSE OF ACTION**</u>

<u>**FRAUDULENT INDUCEMENT IN VIOLATION OF LABOR CODE SECTION 970**</u>

(<u>**Plaintiff FRANK against Defendant TESLA, and DOES**</u>

<u>**1 through 10**</u>)

54.    Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

55.    Labor Code Section 970 provides as follows:

***No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside***, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:

**(a)** The kind, character, or existence of such work;

**(b)** ***The length of time such work will last, or the compensation therefor***;

**(c)** The sanitary or housing conditions relating to or surrounding the work;

**(d)** The existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employer and the persons then or last engaged in the performance of the labor for which the employee is sought. (Emphasis Added.)

56.    Recruiter Vincent Duran specifically targeted and recruited FRANK to work for

TESLA. One of the incentives to accept the job was TESLA's promise of stock options. However, as set forth in more detail, *below*, FRANK lost a significant amount of money in stock benefits (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock options fully vested at four years of employment with TESLA.)  TESLA appears to intentionally terminate employment before employees can receive vested stock benefits.

57.     FRANK also seeks damages for the costs of uprooting from Orange County, California to San Diego, California, expenses incurred in relocation, and the loss of security and income associated with this employment. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 648-649 (1996).

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff FRANK against Defendant TESLA, and DOES

### 1 through 10)

58.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

59.     Defendants' conduct caused Plaintiff to suffer severe emotional distress (including, but not limited to: stress, anxiety, depression, headaches, sleep problems)

60.     As a result of Defendants' conduct, Plaintiff suffered severe emotional distress, as indicated above.

61.     As a result of Defendants' conduct, Plaintiff was harmed, and Defendants' behavior was a substantial factor in causing Plaintiff harm.

62.     As a direct and proximate result of said tortuous acts, omissions or conduct of Defendants, as herein alleged, Plaintiff has sustained and incurred injuries and damages (both general and special) and is certain in the future to sustain and incur losses (both incidental and consequential).

63.     The acts of Defendants were done with malice in that Defendants' conduct was intended by the Defendants to cause injury to Plaintiff or was despicable conduct which was carried

1  on by Defendants with a willful and conscious disregard of the rights of Plaintiff.  In addition,

2  Defendants' actions were oppressive in that Defendants' conduct was despicable and subjected

3  Plaintiff to cruel and unjust hardship in conscious disregard of his rights. Therefore, an award of

4  punitive damages is sought.

5

6  **EIGHTH CAUSE OF ACTION**

7  **FAILURE TO PROVIDE MEAL BREAKS**

8  (**Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10**)

9      64.    Plaintiff incorporates by this reference as though set forth in full the allegations of

10  the preceding paragraphs of this Complaint.

11      65.    California Industrial Welfare Commission ("IWC") Wage order No. 4-2001 mandates

12  that employees are entitled to an off-duty meal break of not less than 30 minutes for every five-hour

13  period worked and a second meal break of not less than 30 minutes for every 10 hour period

14  worked.  The meal break must be for an uninterrupted 30 minutes, during which employees must be

15  relieved of all duties.  California Labor Code Section 512 codifies this requirement.  In addition,

16  California Labor Code Section 226.7 states that "if an employer fails to provide an employee a meal

17  period or rest period in accordance with an applicable order of the Industrial Welfare Commission,

18  the employer shall pay the employee one additional hour of pay at the employee's regular rate of

19  compensation for each work day that the meal or rest period is not provided."

20      66.    While Plaintiff was an hourly employee, Plaintiff was consistently required by

21  Defendants to work without being provided the required thirty (30) minute uninterrupted meal

22  breaks.

23      67.    Plaintiff is entitled to recover an amount equal to one hour of wages per missed meal

24  break, in addition to interest, applicable penalties, attorneys' fees and costs.

25      68.    Pursuant to California Labor Code Section 558, any employer who violates any

26  provision of an IWC order is subject to a civil penalty of fifty dollars ($50) for an initial violation

27  and one hundred ($100) for each subsequent violation per pay period.  These civil penalties are

28  recoverable by Plaintiff.

## NINTH CAUSE OF ACTION

## FAILURE TO PROVIDE REST BREAKS

### (Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)

69.     Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

70.     California Industrial Welfare Commission ("IWC") Wage order No. 4-2001 mandates that employees are entitled to a paid, off-duty 10-minute rest break for every approximately four-hour period worked.  California Labor Code Section 226.7 states that "if an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Plaintiff consistently worked with no rest breaks.

71.     Throughout Plaintiff's employment while he was an hourly employee, Defendants prohibited Plaintiff from taking a 10-minute rest break for every period of approximately four hours worked.

72.     Plaintiff is entitled to recover an amount equal to one hour of wages per missed rest break, in addition to interest, applicable penalties, attorneys' fees and costs.

73.     Pursuant to California Labor Code Section 558, any employer who violates any provision of an IWC order is subject to a civil penalty of fifty dollars ($50) for an initial violation and one hundred ($100) for each subsequent violation per pay period.  These civil penalties are recoverable by Plaintiff.

## TENTH CAUSE OF ACTION

## WRONGFUL FAILURE TO PROMOTE IN VIOLATION OF FEHA,

## GOVERNMENT CODE SECTION 12940 ET SEQ.

### (Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10)

74.  Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

75.  Plaintiff believes and thereon alleges that his race/national origin/ancestry was a factor in Defendants' wrongful denials of promotion, as stated, above, and incorporated herein. More specifically: FRANK was not promoted at least four times because of his race; During FRANK's employment at TESLA, every African-American salesperson at the UTC San Diego TESLA location was fired; To FRANK's knowledge he was the *only* African-American manager at TESLA during the time he was employed, ***throughout the entire company***.

76.     At all times herein relevant, there was an employer/employee, agency, or other qualified relationship between Plaintiff and Defendants.  *California Government Code* § 12940 et seq.

77.     Plaintiff's denials of promotion were wrongful because he was denied promotions because of his race/national origin/ancestry in violation of *California Government Code* § 12940 et. seq.

78.     Defendants' conduct above described is in violation of various statues and the decisional law of this state and country, including but not limited to the FEHA, *California Government Code* § 12940 et. seq.; *Title VII Civil Rights Act of 1964*; *Scott v. Pacific Gas and Elec. Co.* (1995) 11 Cal. 4th 454, 464; *Stephens v. Coldwell Banker Commercial Group, Inc.* (1988) 199 Cal. App. 3d 1394, 1399-1401; California Constitution Article I, Section 8.

79.     As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff has suffered extreme and severe anguish, humiliation, anger, tension, anxiety, depression, lowered self-esteem, sleeplessness and severe emotional distress.

80.     As a further direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer loss of income, loss of earning capacity, loss of job opportunity and other losses.

81.     Defendants' conduct described above was willful, despicable, knowing, and intentional; accordingly, Plaintiff seeks and award of punitive damages and exemplary damages in an amount according to proof.

82.     Plaintiff also seeks attorneys' fees in an amount according to proof.

**ELEVENTH CAUSE OF ACTION**

**FRAUD – NEGLIGENT MISREPRESENTATION**

(**Plaintiff FRANK against Defendant TESLA, Defendant SUZIE HATZIS and DOES 1 through 9**)

83.     Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, and further alleges:

84.     Plaintiff was harmed because Defendants negligently misrepresented facts.

85.     Defendants represented to Plaintiff that certain facts were true, including, but not limited to, that Plaintiff had permission to and could appear in a commercial for the Audi e-tron (to be shown during Super Bowl 2020), and specifically gave Plaintiff the days off from work to shoot the commercial for the Audi e-tron.

86.     Defendants' representation was *not* true. Defendants' statements were representations of fact because Defendants had special knowledge about the subject matter that Plaintiff did not have.

87.     Defendants made representations, not as a casual expression of belief, but in a way that declared the matter to be true as Plaintiff's employer.

88.     Defendants had a relationship of trust and confidence with Plaintiff as Plaintiff's employer, and as such, Defendants had reason to expect that Plaintiff would rely on their opinion.

89.     Even if Defendants believed that these representations were true, Defendants had no reasonable grounds for believing these representations were true when they made the representations since they did not clear Plaintiff's appearing in a commercial for the Audi e-tron with Elon Musk (who later directed that Plaintiff resign or be fired in part for appearing in the commercial.)

90.     Defendants intended that Plaintiff rely on these representations.

91.     Plaintiff reasonably relied on Defendants' representations.

92.     Plaintiff was harmed as a result of Defendants' false representations.  Plaintiff's

reliance on Defendants' representations was a substantial factor in causing his harm.

93.     As a direct and proximate result of said tortuous acts, omissions or conduct of Defendants, as herein alleged, Plaintiff has sustained and incurred injuries and damages (both general and special) and is certain in the future to sustain and incur losses (both incidental and consequential).

94.     The actions of Defendants were done with malice in that Defendants' conduct was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff.

95.     Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences.  In addition, Defendants' actions were oppressive in that Defendants' conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of Plaintiff.

96.     Defendants' actions were also fraudulent in that Defendants negligently misrepresented and concealed material facts known to the Defendants with an intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury.  Therefore, an award of punitive damages is sought.

**TWELFTH CAUSE OF ACTION**

**FRAUD – CONCEALMENT**

(**Plaintiff FRANK against Defendant TESLA, Defendant HATZIS, and DOES 1 through 9**)

97.     Plaintiff realleges and incorporates each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein, and further alleges:

98.     Plaintiff was harmed because Defendants concealed certain information.

99.     Plaintiff was in a fiduciary relationship with Defendants because they were his employer.

100.     Defendants intentionally failed to disclose certain facts to Plaintiff; disclosed some

18

FIRST AMENDED COMPLAINT

facts to Plaintiff but intentionally failed to disclose other facts, making the disclosure deceptive; and intentionally failed to disclose certain facts that were known only to them and that Plaintiff could not have discovered.

101.    Plaintiff did not know of the concealed facts.

102.    Defendants intended to deceive Plaintiff by concealing the facts.

103.    Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently.

104.    Plaintiff was harmed as a result of this failure to disclose material information by his employer.

105.    Defendants' concealment was a substantial factor in causing Plaintiff's harm.

106.    As a direct and proximate result of said tortuous acts, omissions or conduct of Defendant, as herein alleged, Plaintiff has sustained and incurred injuries and damages (both general and special), and is certain in the future to sustain and incur losses (both incidental and consequential).

107.    The actions of Defendants were done with malice in that Defendants' conduct was despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff.

108.    Defendants were aware of the probable dangerous consequences of their conduct, and willfully and deliberately failed to avoid those consequences.  In addition, Defendants' actions were oppressive in that Defendants' conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of Plaintiff.

109.    Defendants' actions were also fraudulent in that Defendants negligently misrepresented and concealed material facts known to the Defendants with an intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury.  Therefore, an award of punitive damages is sought.

**THIRTEENTH CAUSE OF ACTION**

**PROMISSORY FRAUD**

**(Plaintiff FRANK against Defendant TESLA, and DOES**

**1 through 10**)

110.    Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

111.    A promise was made to Plaintiff regarding a material fact (i.e. that Plaintiff would be paid for relocation expenses for moving from Orange County, California to San Diego, California.)

112.  At the time of making this promise, Defendants did not intent to pay Plaintiff for relocation expense.

113.  Defendants' promise to pay Plaintiff for relocation expenses was made with the intent to deceive and the intent to induce Plaintiff to relocate to San Diego and to pay for his own relocation expenses.

114.  Plaintiff relied on Defendants' promise and relocated to San Diego.

115.  Defendants did not pay for Plaintiff's relocation expenses as promised.

116.  Plaintiff seeks damages for the costs of uprooting from Orange County, California to San Diego, California, expenses incurred in relocation, and the loss of security and income associated with this employment. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 648-649 (1996).

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF LABOR CODE SECTION 201**

**(Plaintiff FRANK against Defendant TESLA, and DOES 1 through 10**)

117.    Plaintiff incorporates by this reference as though set forth in full the allegations of the preceding paragraphs of this Complaint.

118.    Defendants violated Labor Code Section 201 by failing to pay Plaintiff a Performance-based Bonus, as set forth in more detail, above.

119.  Labor Code Section 201(a) provides: If an Employer discharges an Employee, the wages earned and unpaid at the time of the discharge are due and payable immediately.

120.  Plaintiff is entitled to his unpaid Performance Bonus, interest thereon, and waiting time penalties. Performance-based bonuses are considered earned wages. Therefore, Defendant is liable for "waiting time penalties" in ***addition to*** unpaid Performance Bonus wages and interest thereon, for failing to timely pay out the Performance Bonus with Plaintiff's final paycheck. The waiting time penalty is Plaintiff's average daily wage, for 30 days.

## **PRAYER FOR RELIEF**

1.  For compensatory damages;

2.  For special damages;

3.  For consequential damages according to proof;

4.  For incidental damages according to proof;

5.  For prejudgment interest;

6.  For costs incurred, including reasonable attorneys' fees;

7.  For punitive damages as to Defendants; and

8.  For any other and further relief as the Court may deem proper.

Dated:  January 15, 2022            BOHM WILDISH & MATSEN, LLP

                         By:    _____
                              JAMES G. BOHM
                              JOANNE P. FREEMAN
                              Attorneys for Plaintiff
                              NAYMON FRANK

FIRST AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to California *Code of Civil Procedure* §631.

Dated:  January 15, 2022                    BOHM WILDISH & MATSEN, LLP

By:  _____
JAMES G. BOHM
JOANNE P. FREEMAN
Attorneys for Plaintiff
NAYMON FRANK

FIRST AMENDED COMPLAINT

EXHIBIT A



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 14, 2022

Sherry Graybehl Dantony
695 Town Center Drive, 700
Costa Mesa, California 92626

RE:     **Notice to Complainant's Attorney**
        DFEH Matter Number: 202201-15856114
        Right to Sue: FRANK / TESLA, INC.

Dear Sherry Graybehl Dantony:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                        GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                        KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 14, 2022

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202201-15856114
      Right to Sue: FRANK / TESLA, INC.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation.  The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact DFEH's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.


Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to DFEH is requested or required.

Sincerely,



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

January 14, 2022

NAYMON FRANK
695 Town Center Dr., Suite 700
Costa Mesa, CA 92626

RE:   **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 202201-15856114
       Right to Sue: FRANK / TESLA, INC.

Dear NAYMON FRANK:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective January 14, 2022 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact DFEH's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                   GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

1

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

2

3

4

**In the Matter of the Complaint of**

5

NAYMON FRANK                                                    DFEH No. 202201-15856114

6
                                          Complainant,

7

vs.

8

TESLA, INC.
10250 Santa Monica Blvd., Suite 1340
Los Angeles, CA 90067

9

10
                                          Respondents

11
_____

12

**1.** Respondent **TESLA, INC.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

13

14

15

**2**. Complainant **NAYMON FRANK**, resides in the City of **Costa Mesa,** State of **CA.**

16

17

**3**. Complainant alleges that on or about **February 1, 2020**, respondent took the following adverse actions:

18

**Complainant was harassed** because of complainant's race, color.

19

**Complainant was discriminated against** because of complainant's race, color and as a result of the discrimination was terminated, forced to quit, denied hire or promotion.

20

21

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was terminated, forced to quit.

22

23

**Additional Complaint Details:** NAYMON FRANK ("FRANK") began his employment with TESLA, INC. ("TESLA") on or about August 15, 2016, in sales, with the title of Owner Advisor in Newport Beach, California.  One of the incentives to accept the job was TESLA's promise of stock options. However, FRANK lost a significant amount of money in stock

24

25

26
                                          -1-
                        *Complaint – DFEH No. 202201-15856114*

27

Date Filed: January 14, 2022

28

Form 0T_157EAC345513 (Revised 12/21)                                    DFEH-ENF 80 RS

benefits (Restricted Stock Units, "RSUs") because he was wrongfully constructively terminated prior to full vesting (i.e. FRANK's employment was wrongfully constructively terminated before his stock options fully vested at four years of employment with TESLA.) TESLA appears to intentionally terminate employment before employees can receive vested stock benefits.

While working as an Owner Advisor in Newport Beach, California, FRANK also was a Regional Trainer, training employees at the Buena Park, Brea, and Costa Mesa locations, among other locations.

On or about November 1, 2018, FRANK relocated to the UTC (University Town Center) TESLA location in San Diego; FRANK's title changed to that of Assistant Store Manager. Although TESLA told FRANK that his relocation costs would be paid, FRANK was never reimbursed and ended up paying the costs of relocating to San Diego himself. FRANK became a salaried employee when he became an Assistant Store Manager (prior to that time, FRANK was an hourly employee.)
FRANK accepted the new position of Assistant Store Manager (although the pay – without the bonuses FRANK received as an Owner Advisor - was lower than the position of Owner Advisor), because he had been informed by TESLA that the way to move up in the TESLA corporation was to get into management.  FRANK had the expectation that he would be eligible for promotions in management once he accepted the Assistant Store Manager position.

However, despite the fact that during FRANK's employment with TESLA at the Newport Beach and San Diego locations, the TESLA Newport Beach location was ranked first in sales, and the TESLA San Diego location was ranked second in sales, FRANK was never promoted above the title of Assistant Store Manager. FRANK estimates that he was passed over for a promotion at least four times while at TESLA. For example, FRANK trained employee Chris Bisson, and then Bisson was promoted to Store Manager at the San Diego UTC location (while FRANK remained Assistant Store Manager at the same location.)

On December 13, 2019, FRANK received word that he had been selected for an Audi commercial for the Audi e-tron (to be shown during Super Bowl 2020.) Although FRANK had never been told of and had never received from TESLA any policy prohibiting him from working as an actor while employed at TESLA (or specifically appearing in a car commercial), out of over-abundance of caution, FRANK asked his boss Kristina Holt (Store Manager) whether it would be okay if he appeared in the Audi e-tron commercial, which would air during the 2020 Super Bowl. More specifically, FRANK told Holt on December 14, 2019, that he had been selected to appear in the Audi commercial, and Holt told FRANK that she had cleared FRANK's appearing in the Audi e-tron commercial with Suzie Hatzis (Regional Manager) the same day. Holt specifically gave FRANK the days off that FRANK needed to shoot the Audi e-tron commercial (i.e. December 21 and December 22, 2019.) No one said anything to FRANK about a potential conflict of interest in appearing in a commercial for a competitor.

The Audi e-tron commercial aired during the Super Bowl on January 31, 2020.  On February 1, 2020, which was FRANK's first day on the job as Assistant Store Manager in Santa Monica, Isabella Merrick called FRANK and told him that she (Merrick) was offering FRANK the opportunity to resign (which would allow for the possibility of being re-hired); if FRANK didn't resign by the end of the call with Merrick, Merrick told FRANK he would be fired. Not having any other option than to be fired (with no chance of being re-hired), FRANK

-2-

*Complaint – DFEH No. 202201-15856114*

Date Filed: January 14, 2022

1    resigned (i.e. he was constructively terminated.)  The pre-textual reason for asking FRANK
2    to resign or be terminated was that FRANK's appearing in an Audi e-tron commercial was a
     conflict of interest.  Merrick, at the time, knew that FRANK had requested and was given
     permission by TESLA management to appear in the Audi e-tron commercial.
3            FRANK experienced a hostile work environment during his employment with TESLA,
     sufficiently severe or pervasive to alter the conditions of his employment and to create an
4    abusive working environment including but not limited to:
5    •       Being harassed because of his race—African-American.
     •       Not being promoted at least four times because of his race.
6    •       During FRANK's employment at TESLA, every African-American salesperson at the
     UTC San Diego TESLA location was fired.
7    •       To FRANK's knowledge he was the only African-American manager at TESLA during
     the time he was employed, throughout the entire company.
8    •       FRANK was told by manager Suzie Hatzis during a performance review that he
     looked "intimidating."  When FRANK asked Hatzis to provide clarification, Hatzis told FRANK
9    (an African-American man) that he "can be a scary-looking guy." FRANK said that this was
     not a fair statement, and asked Holt to remove these comments from his performance
10   review.  FRANK also called and made a written complaint to Human Resources.
     •       Although FRANK followed all TESA policies, FRANK was told by manager Suzie
11   Hatzis that he "doesn't follow our rules", and "doesn't play ball."
     •       Suzy Hatzis also tried to write-up FRANK for taking a test-drive car from the Vegas
12   Hub to the call center, while FRANK was working at the Las Vegas TESLA location, when
     his use of the car was authorized.
13   FRANK's constructive termination was wrongful because he was forced to quit in part
     because of racial discrimination and harassment.
14   FRANK was retaliated against because he did an Audi e-tron commercial after getting
     permission to do so from TESLA.  FRANK was also retaliated against for being African-
15   American.
16
17
18
19
20
21
22
23
24
25
26                                          -3-
                                    *Complaint – DFEH No. 202201-15856114*
27
     Date Filed: January 14, 2022
28

     Form 0T_157EAC345513 (Revised 12/21)                                    DFEH-ENF 80 RS

VERIFICATION

I, **Sherry Graybehl D'Antony**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On January 14, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Costa Mesa, CA**

-4-

*Complaint – DFEH No. 202201-15856114*

Date Filed: January 14, 2022

Form 0T_157EAC345513 (Revised 12/21)                                      DFEH-ENF 80 RS

# EXHIBIT

# 3

| **From:** | Kiran Lopez |
|---|---|
| **To:** | Jim Bohm; "Joanne Freeman" |
| **Cc:** | William Nervis |
| **Subject:** | Request for Arbitration (Naymon Frank v. Tesla) |
| **Date:** | Friday, March 18, 2022 8:13:00 AM |
| **Attachments:** | image001.png |
| | Naymon Frank Signed Offer Letter - Arb Agreement.pdf |

Hi Jim and Joanne,

I hope all is well. As you know, Mr. Frank entered into an arbitration agreement with Tesla at his time of hire (attached here). Please let me know if you will consent to arbitration, and I will be happy to prepare a stipulation to that effect. If you will not consent, Tesla will proceed with a motion to compel arbitration. I look forward to hearing back, thank you.

Best,
Kiran

**Kiran S. Lopez |  Senior Litigation Counsel, Employment**
Fremont, CA
kirlopez@tesla.com



The content of this message is the proprietary and confidential property of Tesla, Inc. and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited. Thank you.
Please consider the environment before printing this email.



07/25/2016

Naymon Eli Frank
1330 Bristol Street. Apt. 80
Costa Mesa, CA 92626

Dear Naymon:

Tesla Motors, Inc. ("Tesla" or the "Company") is pleased to offer you the exempt, salaried
position of Owner Advisor on the terms set forth below. As a Owner Advisor, you will perform
the duties customarily associated with this position. You will report to Carrie Rock-Levine, Store
Manager. Your duties, responsibilities, job title, and work location may be changed at any time
by Tesla.

Your annualized salary will be $38,970.00 per year, subject to standard payroll deductions and
withholdings. As an exempt employee, you will not be entitled to overtime. You will be eligible
for vacation and sick leave according to Tesla's standard policy. Subject to the rules of the
applicable plan documents, you will also be eligible to receive other benefits Tesla may provide
to its employees (e.g., health and dental insurance coverage) beginning on your date of hire.
Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the
criteria for determining the award of such bonuses, if any, shall be in the sole discretion of
Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time
to time, as it deems necessary.

Your annual targeted commission payment is $38,400.00, subject to standard deductions and
authorized withholdings, calculated based on your sales quota of each quarter aggregated over
the next 12 months. Your quota will be determined by the CEO, SVP of Sales, Marketing and
Service, or a designee assigned by the company. The terms of the then current Sales
Compensation Plan will apply to you in all instances. Commissions are paid monthly. Your on
target earnings (OTE) potential will be $83,620.00, before standard deductions and authorized
withholdings; however, depending on your performance, you can exceed your OTE potential.

You will be eligible to participate in the Tesla Sales Compensation Plan. Your sales goal(s) will
be determined by the CEO, VP of Sales, or a designee assigned by the company. The terms of
the then current Sales Compensation Plan will apply to you in all instances. Sales compensation
is paid monthly.

Tesla Motors, Inc. offers a competitive benefits package described below:

> **Equity Grant:** Should you decide to accept the position we will recommend to Tesla's
> Board of Directors, or committee thereof, that the company grant you an equity award of
> $25,000.00, of which (___00.0___%) will be in the form of Stock Options and the rest in
> the form of Restricted Stock Units ("RSUs"), which you will only receive at the time of
> vesting, as described below. This value is determined based on our standard equity
> granting policies. The actual number of RSUs and Stock Options that you receive will
> depend on the value of our stock at or around the time your grant is approved, as

determined by Tesla's Compensation Committee. Please note that for purposes of this allocation, one (1) Stock Option is equivalent to three (3) Stock Option Shares ("SOSs"). This award shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.

Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary and six and twenty-five hundredths percent (6.25%) shall vest quarterly thereafter for the following twelve quarters on the date vesting begins, (such date to be indicated in your Award Agreement), subject to your continuing eligibility through the applicable vesting dates. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.

In contrast, with respect to Stock Options, twenty-five percent (25%) of the SOSs, subject to the Stock Option, shall vest on the first anniversary and the remaining SOSs shall vest monthly over the next thirty-six (36) months in equal monthly amounts subject to your continuing eligibility through applicable vesting dates. No SOSs shall vest other than on the first anniversary and thirty-six subsequent monthly vest dates and no rights to any vesting shall be earned or accrued prior to such date.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

**401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

**Vacation Program:** Regular full-time employees and part-time employees who work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to

your own, and information which is common knowledge in the industry or is otherwise legally
available in the public domain. Moreover, you agree that, during the term of your employment
with the Company, you will not engage in any other employment, occupation, consulting or other
business activity directly related to the business in which Tesla is now involved or becomes
involved during the term of your employment, nor will you engage in any other activities that
conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and ,
as a condition of your employment, you will sign and comply with Tesla's standard confidentiality
agreement which prohibits unauthorized use or disclosure of Tesla confidential information or
the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in
connection with your employment with Tesla, you and Tesla agree that any and all disputes,
claims, or causes of action, in law or equity, arising from or relating to your employment, or the
termination of your employment, will be resolved, to the fullest extent permitted by law by **final,
binding and confidential arbitration** in your city and state of employment conducted by the
Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under
the then current rules of JAMS for employment disputes; provided that:

   a. Any claim, dispute, or cause of action must be brought in a party's individual capacity,
   and not as a plaintiff or class member in any purported class or representative
   proceeding; and

   b. The arbitrator shall have the authority to compel adequate discovery for the resolution of
   the dispute and to award such relief as would otherwise be permitted by law; and

   c. The arbitrator shall not have the authority to consolidate the claims of other employees
   and shall not have the authority to fashion a proceeding as a class or collective action or
   to award relief to a group or class of employees in one arbitration proceeding; and

   d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential
   findings and conclusions and a statement of the award; and

   e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would
   be entitled to pursue in a court of law; and

   f. Tesla shall pay all fees in excess of those which would be required if the dispute was
   decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive
relief in court to prevent irreparable harm pending the conclusion of any such arbitration.
Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or
dispute arising under the Proprietary Information and Inventions Agreement by Court action
instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict,
administrative claims you may bring before any government agency where, as a matter of law,
the parties may not restrict your ability to file such claims (including discrimination and/or
retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor
practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that
arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be 07/25/2016. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is conditioned upon satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to 07/16/2016 after which date this offer will expire.

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,
Tesla Motors, Inc.

Elon Musk
*Chairman of the Board and CEO*

Accepted by: _____   Date: _____

Start Date:   07/25/2016

# EXHIBIT

# 4

| From: | Kiran Lopez |
|---|---|
| To: | James Bohm; jfreeman@bohmwildish.com |
| Cc: | William Nervis |
| Subject: | RE: Request for Arbitration (Naymon Frank v. Tesla) |
| Date: | Tuesday, March 22, 2022 8:43:00 AM |
| Attachments: | image001.png |

Hi Jim,

Thank you for your email. While I understand you are not inclined to stipulate to arbitration, I did want to point out that the arbitration agreement empowers the arbitrator to allow for adequate discovery. Furthermore, an arbitration agreement is not automatically deemed unconscionable and unenforceable just because it is a condition of employment. *Lane v. Francis Capital Mgmt., LLC* (2014) 224 Cal.App.4th 676, 689 (reversing trial court's improper denial of petition to compel arbitration and observing that "assuming the agreement was one of adhesion, courts have consistently held that that fact alone is insufficient to invalidate an arbitration agreement").

If this moves the needle on your end and you would like to further discuss, please let me know. If not, we will move forward with the motion to compel. Thank you.

Best,
Kiran

**Kiran S. Lopez |  Senior Litigation Counsel, Employment**
Fremont, CA
kirlopez@tesla.com



The content of this message is the proprietary and confidential property of Tesla, Inc. and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited. Thank you.
Please consider the environment before printing this email.

**From:** James Bohm <jbohm@aol.com>
**Sent:** Monday, March 21, 2022 8:03 PM
**To:** Kiran Lopez <kirlopez@tesla.com>; jfreeman@bohmwildish.com
**Cc:** William Nervis <wnervis@tesla.com>
**Subject:** Re: Request for Arbitration (Naymon Frank v. Tesla)

Kiran:  We will not stipulate to arbitration.  The arbitration clause is presented on a take it or leave it basis and we believe Tesla uses the arbitration clause coupled with confidentiality agreements to restrict employees rights to litigate.  This was demonstrated in the Hedland case where Tesla was successful in limiting the depositions to just two per side which effectively means that if we take the parties' depositions we cannot take a third party witness in a "he said, she said" case.  We believe that is both procedurally and substantively unconscionable and consequently unenforceable.  Jim

-----Original Message-----
From: Kiran Lopez <kirlopez@tesla.com>
To: Jim Bohm <jbohm@aol.com>; Joanne Freeman <jfreeman@bohmwildish.com>
Cc: William Nervis <wnervis@tesla.com>
Sent: Fri, Mar 18, 2022 8:12 am
Subject: Request for Arbitration (Naymon Frank v. Tesla)

Hi Jim and Joanne,

I hope all is well. As you know, Mr. Frank entered into an arbitration agreement with Tesla at his time of hire (attached here). Please let me know if you will consent to arbitration, and I will be happy to prepare a stipulation to that effect. If you will not consent, Tesla will proceed with a motion to compel arbitration. I look forward to hearing back, thank you.

Best,
Kiran

**Kiran S. Lopez | Senior Litigation Counsel, Employment**
Fremont, CA
kirlopez@tesla.com



The content of this message is the proprietary and confidential property of Tesla, Inc. and should be treated as such. If you are not the intended recipient and have received this message in error, please delete this message from your computer system and notify me immediately by reply e-mail. Any unauthorized use or distribution of the content of this message is prohibited. Thank you.
Please consider the environment before printing this email.



07/25/2016

Naymon Eli Frank
1330 Bristol Street. Apt. 80
Costa Mesa, CA 92626

Dear Naymon:

Tesla Motors, Inc. ("Tesla" or the "Company") is pleased to offer you the exempt, salaried position of Owner Advisor on the terms set forth below. As a Owner Advisor, you will perform the duties customarily associated with this position. You will report to Carrie Rock-Levine, Store Manager. Your duties, responsibilities, job title, and work location may be changed at any time by Tesla.

Your annualized salary will be $38,970.00 per year, subject to standard payroll deductions and withholdings. As an exempt employee, you will not be entitled to overtime. You will be eligible for vacation and sick leave according to Tesla's standard policy. Subject to the rules of the applicable plan documents, you will also be eligible to receive other benefits Tesla may provide to its employees (e.g., health and dental insurance coverage) beginning on your date of hire. Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the criteria for determining the award of such bonuses, if any, shall be in the sole discretion of Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time to time, as it deems necessary.

Your annual targeted commission payment is $38,400.00, subject to standard deductions and authorized withholdings, calculated based on your sales quota of each quarter aggregated over the next 12 months. Your quota will be determined by the CEO, SVP of Sales, Marketing and Service, or a designee assigned by the company. The terms of the then current Sales Compensation Plan will apply to you in all instances. Commissions are paid monthly. Your on target earnings (OTE) potential will be $83,620.00, before standard deductions and authorized withholdings; however, depending on your performance, you can exceed your OTE potential.

You will be eligible to participate in the Tesla Sales Compensation Plan. Your sales goal(s) will be determined by the CEO, VP of Sales, or a designee assigned by the company. The terms of the then current Sales Compensation Plan will apply to you in all instances. Sales compensation is paid monthly.

Tesla Motors, Inc. offers a competitive benefits package described below:

**Equity Grant:** Should you decide to accept the position we will recommend to Tesla's Board of Directors, or committee thereof, that the company grant you an equity award of $25,000.00, of which (___00.0___%) will be in the form of Stock Options and the rest in the form of Restricted Stock Units ("RSUs"), which you will only receive at the time of vesting, as described below. This value is determined based on our standard equity granting policies. The actual number of RSUs and Stock Options that you receive will depend on the value of our stock at or around the time your grant is approved, as

determined by Tesla's Compensation Committee.  Please note that for purposes of this allocation, one (1) Stock Option is equivalent to three (3) Stock Option Shares ("SOSs"). This award shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.

Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary and six and twenty-five hundredths percent (6.25%) shall vest quarterly thereafter for the following twelve quarters on the date vesting begins, (such date to be indicated in your Award Agreement), subject to your continuing eligibility through the applicable vesting dates. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.

In contrast, with respect to Stock Options, twenty-five percent (25%) of the SOSs, subject to the Stock Option, shall vest on the first anniversary and the remaining SOSs shall vest monthly over the next thirty-six (36) months in equal monthly amounts subject to your continuing eligibility through applicable vesting dates.  No SOSs shall vest other than on the first anniversary and thirty-six subsequent monthly vest dates and no rights to any vesting shall be earned or accrued prior to such date.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future.  Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

**401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

**Vacation Program:** Regular full-time employees and part-time employees who work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship.  Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment.  As a result, you are free to resign at any time, for any reason or for no reason, with or without notice.  Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed.  It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case.  We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer.  You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer).  You also warrant that you do not possess any property containing a third party's confidential and proprietary information.  Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to

your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and , as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by *final, binding and confidential arbitration* in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

   a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

   b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

   c. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

   d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

   e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

   f. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be 07/25/2016.  This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is <u>conditioned upon</u> satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to 07/16/2016 <u>after which date this offer will expire.</u>

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,
Tesla Motors, Inc.

Elon Musk
*Chairman of the Board and CEO*

Accepted by: _____   Date: _____

Start Date:    07/25/2016

# EXHIBIT

# 5

# JAMS Employment Arbitration Rules & Procedures

Effective June 1, 2021

Local Solutions. Global Reach.®



# JAMS Employment Arbitration Rules & Procedures

**Founded in 1979, JAMS is the largest private provider of alternative dispute resolution (ADR) services worldwide.** Our neutrals resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

**JAMS mediators and arbitrators are full-time neutrals** who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct. Whether they are conducting in-person, remote or hybrid hearings, JAMS neutrals are adept at managing the resolution process.

**Effective June 1, 2021, these updated Rules reflect the latest developments in arbitration.** They make explicit the arbitrator's full authority to conduct hearings in person, virtually or in a combined form, and with participants in more than one geographic location. They also update electronic filing processes to coordinate with **JAMS Access**, our secure, online case management platform.



### Summary of Revisions to the Employment Rules

Scan this code with your smartphone for a complete list of all changes.

## Additional Employment Arbitration Resources



### JAMS Employment Arbitration Minimum Standards

Scan for our policy on the use of arbitration for resolving employment-related disputes.



### Sample Employment Contract Clauses

Scan for guidance on drafting an employment dispute resolution program and contract clause language.



### JAMS Employment Practice Group

Scan to learn more about our experienced employment neutrals.



### Virtual & Hybrid ADR

Scan to learn about our concierge-level client services, including **Virtual ADR Moderators** and **premium technology**.

# Table of Contents

**RULE 1**   Scope of Rules. . . . . . . . . . . . . . . . . . . . . . . . . .4

**RULE 2**   Party Self-Determination. . . . . . . . . . . . . . .4

**RULE 3**   Amendment of Rules. . . . . . . . . . . . . . . . . . . .4

**RULE 4**   Conflict with Law . . . . . . . . . . . . . . . . . . . . . . .4

**RULE 5**   Commencing an Arbitration . . . . . . . . . . . .4

**RULE 6**   Preliminary and
Administrative Matters. . . . . . . . . . . . . . . . . .5

**RULE 7**   Number and Neutrality of
Arbitrators; Appointment
and Authority of Chairperson. . . . . . . . . . .6

**RULE 8**   Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**RULE 9**   Notice of Claims . . . . . . . . . . . . . . . . . . . . . . . .7

**RULE 10**   Changes of Claims. . . . . . . . . . . . . . . . . . . . . .7

**RULE 11**   Interpretation of Rules
and Jurisdictional Challenges. . . . . . . . . . .7

**RULE 12**   Representation . . . . . . . . . . . . . . . . . . . . . . . . .7

**RULE 13**   Withdrawal from Arbitration . . . . . . . . . . . .8

**RULE 14**   *Ex Parte* Communications. . . . . . . . . . . . . . .8

**RULE 15**   Arbitrator Selection, Disclosures
and Replacement. . . . . . . . . . . . . . . . . . . . . . .8

**RULE 16**   Preliminary Conference . . . . . . . . . . . . . . . .9

**RULE 17**   Exchange of Information . . . . . . . . . . . . . . .9

**RULE 18**   Summary Disposition
of a Claim or Issue . . . . . . . . . . . . . . . . . . . .10

**RULE 19**   Scheduling and Location of Hearing . . . .10

**RULE 20**   Pre-Hearing Submissions . . . . . . . . . . . . . .10

**RULE 21**   Securing Witnesses and Documents
for the Arbitration Hearing . . . . . . . . . . . . .11

**RULE 22**   The Arbitration Hearing . . . . . . . . . . . . . . . .11

**RULE 23**   Waiver of Hearing. . . . . . . . . . . . . . . . . . . . . .12

**RULE 24**   Awards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**RULE 25**   Enforcement of the Award. . . . . . . . . . . . . .13

**RULE 26**   Confidentiality and Privacy. . . . . . . . . . . . .13

**RULE 27**   Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**RULE 28**   Settlement and Consent Award. . . . . . . . .14

**RULE 29**   Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**RULE 30**   Disqualification of the
Arbitrator as a Witness or
Party and Exclusion of Liability . . . . . . . . .14

**RULE 31**   Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**RULE 32**   Bracketed (or High-Low)
Arbitration Option. . . . . . . . . . . . . . . . . . . . . .15

**RULE 33**   Final Offer (or Baseball)
Arbitration Option. . . . . . . . . . . . . . . . . . . . . .15

**RULE 34**   Optional Arbitration
Appeal Procedure. . . . . . . . . . . . . . . . . . . . . .15

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949.224.1810.*

## RULE 1
## Scope of Rules

(a)   The JAMS Employment Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed.

(b)   The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)   The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees.

(d)   JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e)   The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f)   "Electronic filing" (e-filing) means the electronic transmission of documents to JAMS for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents to a party, attorney or representative under these Rules.

## RULE 2
## Party Self-Determination

(a)   The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum

Standards of Procedural Fairness and Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b)   When an Arbitration Agreement provides that the Arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS Rules, the Parties may agree to modify that Agreement to provide that the Arbitration will be administered by JAMS and/or conducted in accordance with JAMS Rules.

## RULE 3
## Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## RULE 4
## Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## RULE 5
## Commencing an Arbitration

(a)   The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i)   A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii)   A pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii)   A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

(iv)   The Respondent's failure to timely object to JAMS administration, where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules; or

(v)   A copy of a court order compelling Arbitration at JAMS.

(b)   The issuance of the Commencement Letter confirms that requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties together with evidence that the Demand for Arbitration has been served on all Parties.

(c)   If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 19, the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)   The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirement, such as the statute of limitations; any contractual limitations period; or any claims notice requirement. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rules 3, 13(a), 17(a) and 31(a)).

## RULE 6
## Preliminary and Administrative Matters

(a)   JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)   If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(c)   If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d)   JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e)   Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i)   If a Party files more than one Arbitration with JAMS, JAMS may consolidate two or more of the Arbitrations into a single Arbitration.

(ii)   Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii)   Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f) Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## RULE 7
## Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson

(a) The Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b) In cases involving more than one Arbitrator, the Parties shall agree on, or, in the absence of agreement, JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed, in advance of the Arbitration Hearing, to produce documents.

(c) Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party, unless the Parties have agreed that they shall be non-neutral.

## RULE 8
## Service

(a) JAMS or the Arbitrator may at any time require electronic filing and service of documents in an Arbitration, including through the JAMS Electronic Filing System. If JAMS or the Arbitrator requires electronic filing and service, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of documents and notifications.

Any document filed via the JAMS Electronic Filing System shall be considered as filed when the transmission to the JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date.

(b) Every document filed with the JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to the JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney.

(c) Delivery of e-service documents through the JAMS Electronic Filing System shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through the JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service or JAMS completes the transmission of the electronic document(s) to the JAMS Electronic Filing System for e-filing and/or e-service.

(d) If an electronic filing and/or service via the JAMS Electronic Filing System does not occur due to technical error in the transmission of the document, the Arbitrator or JAMS may, for good cause shown, permit the document to be filed and/or served nunc pro tunc to the date it was first attempted to be transmitted electronically. In such cases a Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e) For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document.

(f) In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period. If the last day for the performance of any act that is required by these rules to be performed within a specific time

falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday.

## RULE 9
## Notice of Claims

(a)   Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b)   Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c)   Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have. JAMS may grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the Arbitrator.

(d)   Within fourteen (14) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e)   Any claim or counterclaim to which no response has been served will be deemed denied.

(f)   Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## RULE 10
## Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third Party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## RULE 11
## Interpretation of Rules and Jurisdictional Challenges

(a)   Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b)   Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c)   Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d)   The Arbitrator may, upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## RULE 12
## Representation

(a)   The Parties, whether natural persons or legal entities such as corporations, LLCs or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone number and

email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b)  Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone number and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

(c)  The Arbitrator may withhold approval of any intended change or addition to a Party's legal representative(s) where such change or addition could compromise the ability of the Arbitrator to continue to serve, the composition of the Panel in the case of a tripartite Arbitration or the finality of any Award (on the grounds of possible conflict or other like impediment). In deciding whether to grant or withhold such approval, the Arbitrator shall have regard to the circumstances, including the general principle that a Party may be represented by a legal representative chosen by that Party, the stage that the Arbitration has reached, the potential prejudice resulting from the possible disqualification of the Arbitrator, the efficiency resulting from maintaining the composition of the Panel (as constituted throughout the Arbitration), the views of the other Party or Parties to the Arbitration and any likely wasted costs or loss of time resulting from such change or addition.

## RULE 13
## Withdrawal from Arbitration

(a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b)  A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## RULE 14
## *Ex Parte* Communications

(a)  No Party may have any ex parte communication with a neutral Arbitrator, except as provided in section (b) of this

Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b)  A Party may have ex parte communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c)  The Parties may agree to permit more extensive ex parte communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral Arbitrator may also be permitted by applicable law and rules of ethics.

## RULE 15
## Arbitrator Selection, Disclosures and Replacement

(a)  Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b)  If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and at least ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c)  Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d)  If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many

members of the tripartite panel as are necessary to complete the panel.

(e)   If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f)   Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities or individuals are adverse for purposes of Arbitrator selection, considering such factors as whether they are represented by the same attorney and whether they are presenting joint or separate positions at the Arbitration.

(g)   If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule, unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h)   Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstances likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties and their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(i)   At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) calendar days of service of the challenge. JAMS shall make the final

determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j)   Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the party that did not appoint that Arbitrator.

## RULE 16
## Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a)   The exchange of information in accordance with Rule 17 or otherwise;

(b)   The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c)   The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d)   The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e)   The attendance of witnesses as contemplated by Rule 21;

(f)   The scheduling of any dispositive motion pursuant to Rule 18;

(g)   The premarking of exhibits, the preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h)   The form of the Award; and

(i)   Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## RULE 17
## Exchange of Information

(a)   The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information

("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b)   Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

(c)   As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d)   The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

(e)   The Parties may take discovery of third parties with the approval of the Arbitrator.

## RULE 18
## Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion. The Request may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case.

## RULE 19
## Scheduling and Location of Hearing

(a)   The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b)   If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c)   The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena duces tecum to a third-party witness.

## RULE 20
## Pre-Hearing Submissions

(a)   Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; and (3) a list of all exhibits

intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b)   The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## RULE 21
## Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena duces tecum shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## RULE 22
## The Arbitration Hearing

(a)   The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual party with information about a significant issue.

(b)   The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)   The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d)   Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e)   The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony, even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f)   The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g)   The Arbitrator has full authority to determine that the Hearing, or any portion thereof, be conducted in person or virtually by conference call, videoconference or using other communications technology with participants in one or more geographical places, or in a combined form. If some or all of the witnesses or other participants are located remotely, the Arbitrator may make such orders and set such procedures as the Arbitrator deems necessary or advisable.

(h)   When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator,

to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later.

(i)   At any time before the Award is rendered, the Arbitrator may, sua sponte or on application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j)   The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)   Any Party may arrange for a stenographic record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. No other means of recording the proceedings shall be permitted absent agreement of the Parties or by direction of the Arbitrator.

(i)   The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)   If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii)   If the Parties agree to the Optional Arbitration Appeal Procedure (see Rule 34), they shall, if possible, ensure that a stenographic or other record is made of the Hearing.

(iv)   The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## RULE 23
## Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## RULE 24
## Awards

(a)   The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing, as defined in Rule 22(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b)   Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c)   In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d)   In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e)   Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f)   The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an

allocation is expressly prohibited by the Parties' Agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g)   The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h)   The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based. The Parties may agree to any other form of Award, unless the Arbitration is based on an Arbitration Agreement that is required as a condition of employment.

(i)   After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j)   Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and file with JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31 or on account of the effect of an offer to allow judgment), or the Arbitrator may sua sponte propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file and serve any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k)   The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure pursuant to Rule 34 or

a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service if no request for a correction is made, or as of the effective date of service of a corrected Award.

## RULE 25
## Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, et seq., or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## RULE 26
## Confidentiality and Privacy

(a)   JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b)   The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c)   Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## RULE 27
## Waiver

(a)   If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b)   If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## RULE 28
## Settlement and Consent Award

(a)   The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree, pursuant to Rule 28(b).

(b)   The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c)   If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## RULE 29
## Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## RULE 30
## Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)   The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)   The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c)   The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## RULE 31
## Fees

(a)   Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b)   JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c)   If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an Employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d)   Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities or individuals are adverse for purpose of fees, considering such factors as whether the entities or individuals are represented by the same attorney and whether the entities or individuals are presenting joint or separate positions at the Arbitration.

## RULE 32
## Bracketed (or High-Low) Arbitration Option

(a)   At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b)   JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c)   The Arbitrator shall render the Award in accordance with Rule 24.

(d)   In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## RULE 33
## Final Offer (or Baseball) Arbitration Option

(a)   Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b)   If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c)   If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d)   Other than as provided herein, the provisions of Rule 24 shall be applicable.

## RULE 34
## Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

jamsadr.com • 800.352.5267

## PROOF OF SERVICE

I, William Nervis, declare:

I am a citizen of the United States and employed in Alameda County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 901 Page Ave., Fremont, CA 94538.  On April 1, 2022, I filed a copy of the within document(s):

**DECLARATION OF KIRAN S. LOEPZ IN SUPPORT OF DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by filing the document(s) listed above for electronic filing via ECF/PACER to the United States Federal Court, Central District of California.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Delivery Service</u> agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by transmitting via my electronic service address (<u>wnervis@tesla.com</u>) the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 1, 2022, at San Francisco, California.

_____
William Nervis

- 1 -

PROOF OF SERVICE