KIRAN S. LOPEZ (SBN 252467)
TESLA, INC.
901 Page Avenue
Fremont, California 94538
Telephone: (510) 239-1413
 kirlopez@tesla.com

Attorneys for Defendants
TESLA, INC. and SUZIE HATZIS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAYMON FRANK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a corporation; SUZIE HATZIS, an individual; and DOES 1 through 49, inclusive,<br><br>Defendants. | Case No. 2:22-cv-01590 MEMF (AGRx)<br><br>**DECLARATION OF BEN FLESCH IN SUPPORT OF DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:       May 12, 2022<br>Time:       10:00 a.m.<br>Location: United States Courthouse<br>                 350 West 1st Street<br>                 Courtroom 8B, 8th Floor<br>                 Los Angeles, CA 90012<br><br>**[Filed concurrently with Defendant Tesla, Inc.'s Notice of Motion and Motion to Compel Arbitration and Stay Proceedings; Defendant Tesla, Inc.'s Memorandum of Points and Authorities; Defendant Tesla, Inc.'s Request for Judicial Notice; Declaration of Kiran S. Lopez; and (Proposed) Order]**<br><br>*Complaint Filed: 1/14/2022*<br>*First Amended Complaint Filed: 2/15/2022*<br>*Trial Date: None.* |

- 1 -

## DECLARATION

I, Ben Flesch, hereby declare and state as follows:

1. I make this Declaration in support of Defendant Tesla, Inc.'s ("Tesla") Motion to Compel Arbitration and Stay Proceedings in connection with the above-captioned matter. I am over the age of 18 and make this Declaration based on my personal knowledge of the facts stated in this Declaration and, if called as a witness, would be competent to testify to those facts.

2. Tesla is an automotive company with a mission to transition the world to sustainable energy through designing, manufacturing, and selling electric cars and solar products throughout the United States and the world. Tesla builds all-electric vehicles at its factory in Fremont, California. From there, Tesla's products are shipped throughout the United States and to other countries. Tesla imports materials to its Fremont facility to be used in production from throughout the United States, as well as other countries.

3. I am currently employed by Tesla as a Senior Analyst, Recruiting. In the course and scope of my job duties, I am closely involved with and have an in-depth understanding of Tesla's employment policies and practices, as well as its hiring procedures. I also have access to Tesla's Human Resources information systems, including records of employees. Tesla maintains these documents electronically in the ordinary course of business. I am personally familiar with Tesla's policies regarding arbitration and the related processes and practices in place for employees.

4. As part of my job duties, I am familiar with Tesla's former applicant tracking and onboarding system by Taleo Corporation ("Taleo"). Up until approximately Fall of 2018, Tesla used Taleo as its applicant tracking system, but now uses a system called Avature. Taleo was used to track candidate offer letters and applications executed through that system, as well as candidate's acceptances of such offer letters.

5. As part of my job duties, I am familiar with how Tesla's applicant tracking systems and onboarding systems operate and am knowledgeable of the cloud-based

talent management software upon which Taleo is based and, generally, how the data in those systems were and are electronically stored.

6.  Through 2018, it was Tesla's policy that all offer letters Tesla sent through the Taleo system contain arbitration agreements. Attached as **Exhibit A** is a true and correct copy of Plaintiff Naymon Frank's ("Plaintiff") signed offer letter, in which Plaintiff agreed to submit any and all disputes arising from or relating to his employment with Tesla to binding arbitration. At the time that Plaintiff was hired, Tesla's standard practice was for employees to sign their offer letters by hand. Pursuant to this practice, Plaintiff signed his offer letter by hand on July 15, 2016.

7.  To my knowledge, Plaintiff did not contact anyone at Tesla to discuss, negotiate, or ask questions about his offer letter or the arbitration agreement contained therein.

8.  On July 25, 2016, ten days after Plaintiff signed Tesla's offer letter and arbitration agreement, he began working at Tesla as an Owner Advisor. At the time of Plaintiff's termination on January 30, 2020 his role was Customer Experience Manager in Sales & Delivery.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed on March 31, 2022 in Reno, Nevada.

_____
Ben Flesch

**DECLARATION OF BEN FLESCH  IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DSTAY PROCEEDINGS**

# EXHIBIT

# A



07/25/2016

Naymon Eli Frank
1330 Bristol Street. Apt. 80
Costa Mesa, CA 92626

Dear Naymon:

Tesla Motors, Inc. ("Tesla" or the "Company") is pleased to offer you the exempt, salaried
position of Owner Advisor on the terms set forth below. As a Owner Advisor, you will perform
the duties customarily associated with this position. You will report to Carrie Rock-Levine, Store
Manager. Your duties, responsibilities, job title, and work location may be changed at any time
by Tesla.

Your annualized salary will be $38,970.00 per year, subject to standard payroll deductions and
withholdings. As an exempt employee, you will not be entitled to overtime. You will be eligible
for vacation and sick leave according to Tesla's standard policy. Subject to the rules of the
applicable plan documents, you will also be eligible to receive other benefits Tesla may provide
to its employees (e.g., health and dental insurance coverage) beginning on your date of hire.
Tesla may consider you for bonuses, although the amount of such bonuses, if any, and the
criteria for determining the award of such bonuses, if any, shall be in the sole discretion of
Tesla. Of course, Tesla reserves the right to modify your compensation and benefits from time
to time, as it deems necessary.

Your annual targeted commission payment is $38,400.00, subject to standard deductions and
authorized withholdings, calculated based on your sales quota of each quarter aggregated over
the next 12 months. Your quota will be determined by the CEO, SVP of Sales, Marketing and
Service, or a designee assigned by the company. The terms of the then current Sales
Compensation Plan will apply to you in all instances. Commissions are paid monthly. Your on
target earnings (OTE) potential will be $83,620.00, before standard deductions and authorized
withholdings; however, depending on your performance, you can exceed your OTE potential.

You will be eligible to participate in the Tesla Sales Compensation Plan. Your sales goal(s) will
be determined by the CEO, VP of Sales, or a designee assigned by the company. The terms of
the then current Sales Compensation Plan will apply to you in all instances. Sales compensation
is paid monthly.

Tesla Motors, Inc. offers a competitive benefits package described below:

> **Equity Grant:** Should you decide to accept the position we will recommend to Tesla's
> Board of Directors, or committee thereof, that the company grant you an equity award of
> $25,000.00, of which ( 00.0 %) will be in the form of Stock Options and the rest in
> the form of Restricted Stock Units ("RSUs"), which you will only receive at the time of
> vesting, as described below. This value is determined based on our standard equity
> granting policies. The actual number of RSUs and Stock Options that you receive will
> depend on the value of our stock at or around the time your grant is approved, as

determined by Tesla's Compensation Committee. Please note that for purposes of this allocation, one (1) Stock Option is equivalent to three (3) Stock Option Shares ("SOSs"). This award shall be subject to the terms and conditions of Tesla's 2010 Equity Incentive Plan and your Award Agreement, including vesting requirements.

Specifically, the RSUs shall vest over a period of four years as follows: twenty-five percent (25%) of the award shall vest on the first anniversary and six and twenty-five hundredths percent (6.25%) shall vest quarterly thereafter for the following twelve quarters on the date vesting begins, (such date to be indicated in your Award Agreement), subject to your continuing eligibility through the applicable vesting dates. No RSUs shall vest other than on the first anniversary and twelve subsequent quarterly vest dates, and no right to any vesting shall be earned or accrued prior to such date.

In contrast, with respect to Stock Options, twenty-five percent (25%) of the SOSs, subject to the Stock Option, shall vest on the first anniversary and the remaining SOSs shall vest monthly over the next thirty-six (36) months in equal monthly amounts subject to your continuing eligibility through applicable vesting dates. No SOSs shall vest other than on the first anniversary and thirty-six subsequent monthly vest dates and no rights to any vesting shall be earned or accrued prior to such date.

Please be aware that Tesla makes no representation about the future value of the equity award granted herein, and you should be aware that the value of this award will fluctuate in the future. Finally, the receipt of this award is subject to your signing the appropriate Award Agreement through the E*Trade portal.

**401K Program:** You will be eligible to participate in Tesla's 401K program after your first pay check. Our 401K program is administered by Fidelity Investments.

**Vacation Program:** Regular full-time employees and part-time employees who work 20 hours per week are eligible for PTO immediately and accrue PTO at 1.25 days per month (for a total of 15 days per calendar year).

The Company is excited about your joining and looks forward to a beneficial and fruitful relationship. Nevertheless, you should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason, with or without notice. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

We ask that, if you have not already done so, you disclose to Tesla any and all agreements relating to your prior employment that may affect your eligibility to be employed by Tesla or limit the manner in which you may be employed. It is Tesla's understanding that any such agreements will not prevent you from performing the duties of your position and you represent that such is the case. We want to emphasize that we do not wish you to bring any confidential or proprietary materials of any former employer which would violate any obligations you may have to your former employer. You agree not to make any unauthorized disclosure to Tesla or use on behalf of Tesla any confidential information belonging to any of your former employers (except in accordance with agreements between Tesla and any such former employer). You also warrant that you do not possess any property containing a third party's confidential and proprietary information. Of course, during your employment with Tesla, you may make use of information generally known and used by persons with training and experience comparable to

your own, and information which is common knowledge in the industry or is otherwise legally available in the public domain. Moreover, you agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Tesla is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to Tesla.

As a Tesla employee, you will be expected to abide by all Tesla policies and procedures, and, as a condition of your employment, you will sign and comply with Tesla's standard confidentiality agreement which prohibits unauthorized use or disclosure of Tesla confidential information or the confidential information of Tesla's clients.

In addition, to ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by *final, binding and confidential arbitration* in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes; provided that:

    a. Any claim, dispute, or cause of action must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding; and

    b. The arbitrator shall have the authority to compel adequate discovery for the resolution of the dispute and to award such relief as would otherwise be permitted by law; and

    c. The arbitrator shall not have the authority to consolidate the claims of other employees and shall not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding; and

    d. The arbitrator shall issue a written arbitration decision including the arbitrator's essential findings and conclusions and a statement of the award; and

    e. Both you and Tesla shall be entitled to all rights and remedies that you or Tesla would be entitled to pursue in a court of law; and

    f. Tesla shall pay all fees in excess of those which would be required if the dispute was decided in a court of law.

Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration. Notwithstanding the foregoing, you and Tesla each have the right to resolve any issue or dispute arising under the Proprietary Information and Inventions Agreement by Court action instead of arbitration.

Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

You acknowledge and agree that: (i) in the course of your employment by the Company, it will be necessary for you to create, use, or have access to (A) technical, business, or customer information, materials, or data relating to the Company's present or planned business that has not been released to the public with the Company's authorization, including, but not limited to, confidential information, materials, or proprietary data belonging to the Company or relating to the Company's affairs (collectively, "Confidential Information") and (B) information and materials that concern the Company's business that come into the Company's possession by reason of employment with the Company (collectively, "Business Related Information"); (ii) all Confidential Information and Business Related Information are the property of the Company; (iii) the use, misappropriation, or disclosure of any Confidential Information or Business Related Information would constitute a breach of trust and could cause serious and irreparable injury to the Company; and (iv) it is essential to the protection of the Company's goodwill and maintenance of the Company's competitive position that all Confidential Information and Business Related Information be kept confidential and that you do not disclose any Confidential Information or Business Related Information to others or use Confidential Information or Business Related Information to your own advantage or the advantage of others.

In recognition of the acknowledgment above, you agree that until the Confidential Information and/or Business Related Information becomes publicly available (other than through a breach by you), you shall: (i) hold and safeguard all Confidential Information and Business Related Information in trust for the Company; (ii) not appropriate or disclose or make available to anyone for use outside of the Company's organization at any time any Confidential Information and Business Related Information, whether or not developed by you; (iii) keep in strictest confidence any Confidential Information or Business Related Information; (iv) not disclose or divulge, or allow to be disclosed or divulged by any person within your control, to any person, firm, or corporation, or use directly or indirectly, for your own benefit or the benefit of others, any Confidential Information or Business Related Information; and (v) upon the termination of your employment, return all Confidential Information and Business Records and not make or retain any copies or exacts thereof.

If you accept our offer, your first day of employment will be 07/25/2016. This letter agreement constitutes the complete, final and exclusive embodiment of the entire agreement between you and Tesla with respect to the terms and conditions of your employment, and it supersedes any other agreements or promises made to you by anyone, whether oral or written. This Agreement cannot be changed, amended, or modified except in a written agreement signed by an officer of Tesla. This letter agreement shall be construed and interpreted in accordance with the laws of the State of California.

As required by immigration law, this offer of employment is <u>conditioned upon</u> satisfactory proof of your right to work in the United States.

This offer of employment is contingent upon the successful completion of your reference and background checks.

If you choose to accept our offer under the terms described above, please indicate your acceptance, by signing below and returning it to me prior to 07/16/2016 <u>after which date this offer will expire.</u>

We look forward to your favorable reply and to a productive and enjoyable work relationship.

Very truly yours,
Tesla Motors, Inc.

Elon Musk
*Chairman of the Board and CEO*

Accepted by: _____  Date: _____

Start Date:     07/25/2016

1

## PROOF OF SERVICE

2

I, William Nervis, declare:

3

4

I am a citizen of the United States and employed in Alameda County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 901 Page Ave., Fremont, CA 94538.  On April 1, 2022, I filed a copy of the within document(s):

5

6

**DECLARATION OF BEN FLESCH IN SUPPORT OF DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

7

8

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

9

☒   by filing the document(s) listed above for electronic filing via ECF/PACER to the United States Federal Court, Central District of California.

10

11

☐   by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Delivery Service</u> agent for delivery.

12

13

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐   by transmitting via my electronic service address (<u>wnervis@tesla.com</u>) the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

14

15

16

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17

18

19

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21

Executed on April 1, 2022, at San Francisco, California.

22

23

_____
William Nervis

24

25

26

27

28

- 1 -