KIRAN S. LOPEZ (SBN 252467)
TESLA, INC.
901 Page Avenue
Fremont, California 94538
Telephone: (510) 239-1413
kirlopez@tesla.com

Attorneys for Defendants
TESLA, INC. and SUZIE HATZIS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAYMON FRANK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a corporation; SUZIE HATZIS, an individual; and DOES 1 through 49, inclusive,<br><br>Defendants. | Case No. 2:22-cv-01590-MEMF(AGRx)<br><br>**DEFENDANT TESLA, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:        May 12, 2022<br>Time:        10:00 a.m.<br>Location: United States Courthouse<br>350 West 1st Street<br>Courtroom 8B, 8th Floor<br>Los Angeles, CA 90012<br><br>**[Filed concurrently with Defendant Tesla, Inc.'s Notice of Motion and Motion to Compel Arbitration and Stay Proceedings; Defendant Tesla, Inc.'s Memorandum of Points and Authorities; Declarations of Ben Flesch and Kiran S. Lopez; and (Proposed) Order]**<br><br>*Complaint Filed: 1/14/2022*<br>*First Amended Complaint Filed: 2/15/2022*<br>*Trial Date: None.* |

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that on May 12, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8B – 4$^{8h}$ Floor of the United States District Court for the central District of California, located at 350 West 1st Street, Los Angeles, California 90012, before the Honorable Maame Ewusi-Mensah Frimpong, Defendant Tesla, Inc. ("Tesla") will and hereby does request that the Court, pursuant to Federal Rule of Evidence 201, *et seq.*, take judicial notice of the following in support of Tesla's Motion to Compel Arbitration and Stay Proceedings:

   1.    Order Granting Tesla's Motion to Compel Arbitration and Stay Litigation in *Hidalgo v. Tesla Motors, Inc.*, dated June 29, 2016 in the United States District Court for the Northern District of California, Case No. 5:15-cv-05185-BLF. A true and correct copy of this Order is attached hereto as **Exhibit A.**

   2.    Order Granting Tesla's Petition to Compel Arbitration (Motion) in *Lambert v. Tesla, Inc*., dated July 19, 2017, in the Superior Court of the State of California, County of Alameda, Case No. RG17854516. A true and correct copy of this Order is attached hereto as **Exhibit B**.

   3.    Order Granting Tesla's Motion to Compel Arbitration and Denying Motion for Partial Summary Judgement in *Lambert v. Tesla, Inc.*, dated January 8, 2018 in the United States District Court for the Northern District of California, Case No. 17-cv-05369-VC (2018 WL 317793). A true and correct copy of this Order is attached hereto as **Exhibit C**.

   4.    Order Affirming Granting of Tesla's Motion to Compel Arbitration in *Lambert v. Tesla, Inc.* (9th Cir. 2019) 923 F.3d 1246 (affirming Order Granting Tesla's Motion to Compel Arbitration and Denying Motion for Partial Summary Judgement in *Lambert v. Tesla, Inc.*, dated January 8, 2018 in the United States District Court for the Northern District of California, Case No. 17-cv-05369-VC (2018 WL 317793)). A true and correct copy of this Order is attached hereto as **Exhibit D**.

5.      Order Granting Tesla's Petition to Compel Arbitration (Motion) in *Rodriguez v. Tesla, Inc*., dated June 21, 2019 in the Superior Court of the State of California, County of Alameda, Case No. RG18904409. A true and correct copy of this Order is attached hereto as **Exhibit E**.

6.      Order Granting Tesla's Motion to Compel Arbitration in *Murrain v. Tesla, Inc*., dated July 21, 2019 in the Superior Court of the State of California, County of Santa Clara, Case No. 18CV334861. A true and correct copy of this Order is attached hereto as **Exhibit F**.

7.      Order Granting Tesla's Motion to Compel Arbitration in *Gevarges v. Tesla, Inc.*, dated February 18, 2021 in the Superior Court of the State of California, County of Alameda, Case No. RG20070850. A true and correct copy of this Order is attached hereto as **Exhibit G.**

8.      Order Granting Tesla's Petition to Compel Arbitration (Motion) in *Davis v. Tesla, Inc*., dated July 29, 2021 in the Superior Court of the State of California, County of Alameda, Case No. RG20071150. A true and correct copy of this Order is attached hereto as **Exhibit H**.

9.      Order Granting Tesla's Motion to Compel Arbitration in *Buggs v. Tesla, Inc*., dated January 24, 2022 in the Superior Court of the State of California, County of Alameda, Case No. RG20054661. A true and correct copy of this Order is attached hereto as **Exhibit I**.

Federal Rule of Evidence 201(b) provides the following: "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may properly take judicial notice of undisputed matters of public record, including records and reports of administrative bodies. *See Mack v. South Bay Beer Distribrs., Inc.* (9th Cir. 1986) 798 F.2d 1279, 1282  (abrogated on other grounds); *accord Santos v. County of Los Angeles Dep't of Children and Family*

*Servs.* (C.D. Cal. 2004) 299 F. Supp. 2d 1070 (District court could take judicial notice of records in state court). As these cases demonstrate, courts regularly grant requests for judicial notice of state and federal court records. Such documents are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Federal Rule of Evidence 201(c) provides the following: "The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information."

**Exhibit A** is a record of the United States District Court for the Northern District of California;

**Exhibit B** is a record of the Superior Court of California for the County of Alameda;

**Exhibit C** is a record of the United States District Court for the Northern District of California;

**Exhibit D** is a record of the United States Court of Appeals for the Ninth Circuit;

**Exhibit E** is a record of the Superior Court of California for the County of Alameda;

**Exhibit F** is a record of the Superior Court of California for the County of Santa Clara;

**Exhibit G** is a record of the Superior Court of California for the County of Alameda; and

**Exhibit H** is a record of the Superior Court of California for the County of Alameda.

**Exhibit I** is a record of the Superior Court of California for the County of Alameda.

**Exhibits A, B, C, D, E, F, G, H, and I** are attached hereto, and this Request is presented to all parties with sufficient notice. Thus, Tesla respectfully requests that

1  the Court grant this Request for Judicial Notice and judicially notice the Exhibits

2  hereto and the facts referenced herein.

3

4  DATED: March 31, 2022                    Respectfully submitted,

5                                           TESLA, INC.

6                                           By: */s/ Kiran S. Lopez*
                                            Kiran S. Lopez
7                                           Attorney for Defendants
                                            TESLA, INC. and SUZIE HATZIS
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE**

# EXHIBIT

# A

1

2

3    **UNITED STATES DISTRICT COURT**

4    **NORTHERN DISTRICT OF CALIFORNIA**

5    **SAN JOSE DIVISION**

6

7    WALTER HIDALGO,                          Case No.  5:15-cv-05185-BLF

           Plaintiff,
8
                                              **ORDER GRANTING DEFENDANT'S**
9        v.                                   **MOTION TO COMPEL ARBITRATION**
                                              **AND STAY LITIGATION**
10   TESLA MOTORS, INC,
                                              [Re:  ECF 16]
           Defendant.
11

12          Defendant Tesla Motors, Inc. moves to compel arbitration of Plaintiff Walter Hidalgo's

13   claims and stay this litigation while arbitration is in process.  *See* Mot. at 7, ECF 16.  Because the

14   arbitration agreement between Tesla and Hidalgo is valid and encompasses the claims raised in

15   Hidalgo's lawsuit, Tesla's motion is GRANTED.

16   **I.      BACKGROUND**

17          In November 2012, Tesla extended Hidalgo an offer of employment.  *See* Copher Decl. Ex.

18   A, ECF 16-2.  Tesla employee John Pardo emailed Hidalgo his formal offer letter, which was a

19   four-page PDF document attached to Pardo's email.  *See* Petry Decl. ¶ 2, ECF 19-1.  Page two of

20   the offer letter states,

21          To ensure the rapid and economical resolution of disputes that may arise in
            connection with your employment with Tesla, you and Tesla agree that any and all
22          disputes, claims, or causes of action, in law or equity, arising from or relating to
            your employment, or the termination of your employment, will be resolved, to the
23          fullest extent permitted by law by binding arbitration per Attachment A, and that
            *you are waiving your right to a jury trial*.
24

25   Petry Decl. Ex. A at 5, ECF 19-2 (emphasis original).  Page three of the offer letter contains

26   signature and date lines for Hidalgo to indicate his acceptance of the letter.  *See id.* at 6.  Page four

27   of the PDF is titled "ARBITRATION AGREEMENT" and sets forth the terms of the arbitration

28   agreement.  *See id.* at 7.  In relevant part, the arbitration agreement states,

United States District Court
Northern District of California

[Y]ou and Tesla agree to an arbitration in which:

a. **you are waiving any and all rights to a jury trial** but all court remedies will be available in arbitration; and

b. all disputes between you and the Company shall be fully and finally resolved by binding arbitration that provides for adequate discovery; and

c. all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion; and

d. Tesla shall pay all arbitration fees in excess of those which would be required if the dispute was filed in a court of law.

Nothing in this Agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court . . . .

*Id.* (emphasis original).  After receiving the offer letter, Hidalgo signed and dated the letter on page three and emailed the first three pages of the offer letter back to Pardo, but not the fourth. *See* Hidalgo Decl. ¶ 4, Ex. A, ECF 18-2.

The parties agree that Hidalgo received at least the first three pages of the offer letter in Pardo's email, but disagree as to whether he received the fourth page.  *See* Opp. at 2, ECF 18; Reply at 2, ECF 19.  In his declaration supporting his opposition to Tesla's motion, Hidalgo originally stated that he "never received the last page (page four) of the employment agreement . . . entitled 'Attachment A – Arbitration Agreement.'"  Hidalgo Decl. ¶ 3.  He also stated that he "did not know at any time that any dispute [he] had with Tesla would be arbitrated," and that although he "now see[s] a small paragraph on page two of the employment offer, however, [he] did not see that when [he] signed the offer letter and neither [his] signature nor [his] initials are anywhere near that paragraph.  Most importantly, [he] never received the Attachment A that paragraph is referencing."  *Id.* ¶ 6.  In response, Tesla submitted a reply declaration from Jeff Petry, Senior Information Security Engineer at Tesla, which stated that Petry had retrieved Pardo's original email to Hidalgo and its attachment from an Enterprise Vault email archive.  *See* Petry Decl. ¶¶ 1-3.  The attachment contains all four pages of the offer letter, including the arbitration agreement on page four.  *See* Petry Decl. Ex. A.  Hidalgo then amended his declaration to state, "I do not recall receiving the last page (page four) of the employment agreement . . . entitled 'Attachment A – Arbitration Agreement.'"  Amended Hidalgo Decl. ¶ 4, ECF 20.  While Hidalgo

1   maintains that he did not see the arbitration clause on page two when he signed the offer letter, he

2   amended his declaration to state that he "do[es] not recall receiving the Attachment A that the

3   paragraph on page two is referencing." *Id.* ¶ 8.

4        Hidalgo's employment with Tesla ended in February 2015. *See* Copher Decl. ¶ 4. In

5   September 2015, he sued Tesla in the Superior Court of California for the County of Santa Clara,

6   alleging violations of several state and federal employment laws. *See* Copher Decl. Ex. A, ECF 1.

7   Tesla removed the case to this Court and moves to compel arbitration and stay litigation pending

8   the arbitration. *See* Notice of Removal, ECF 1; Mot. at 7.

9   **II.    LEGAL STANDARD**

10       The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration

11  agreement. *See* 9 U.S.C. §§ 1 *et seq.* Under the FAA, a party seeking to invoke an arbitration

12  agreement may petition the district court "for an order directing that such arbitration proceed in

13  the manner provided for in such agreement." 9 U.S.C. § 4; *see also Trompeter v. Ally Financial,*

14  *Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012).

15       When resolving a motion to compel arbitration, the Court engages in a limited two-part

16  inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines

17  whether the agreement encompasses the claims at issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler*

18  *Chrysler–Plymouth*, 473 U.S. 614, 627–28 (1985); *see also Trompeter*, 914 F. Supp. 2d at 1071.

19  The FAA dictates that arbitration agreements are "a matter of contract," and "shall be valid,

20  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

21  of any contract." 9. U.S.C. § 2.

22  **III.   DISCUSSION**

23       Tesla argues that the arbitration agreement is valid, is not unconscionable, and

24  encompasses Hidalgo's claims, and so it should be enforced. *See* Mot. at 3-6. Hidalgo challenges

25  the validity of the arbitration agreement, but not whether it encompasses his claims. *See* Opp. at

26  3-7. He argues that the arbitration agreement is both procedurally and substantively

27  unconscionable and thus is not binding. *See id.*

28       **A.   Unconscionability**

*United States District Court*
*Northern District of California*

3

Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). Unconscionability has both procedural and substantive elements and "is a valid reason for refusing to enforce an arbitration agreement." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Both procedural and substantive unconscionability must be present before a court may refuse to enforce a contract, but they need not be present to the same degree. *Armendariz*, 24 Cal. 4th at 114. A sliding scale applies such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### 1. Procedural Unconscionability

Procedural unconscionability requires both oppression and surprise. *Armendariz*, 24 Cal. 4th at 114. Hidalgo argues that both requirements are satisfied because he was unable to negotiate the terms of his employment contract; the arbitration clause was "hidden in the fourth paragraph on page two" of his offer letter and did not contain any space near it for Hidalgo to sign or initial to indicate that he had read that clause; and the actual arbitration agreement was on a separate piece of paper, which he did not receive and which does not have his signature or initials on it. *See* Opp. at 5-6. These arguments are partially successful: while the oppression element is satisfied, the surprise element is not.

Procedural unconscionability focuses on the "manner in which the contract was negotiated and the circumstances of the party at the time," *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (Ct. App. 1999), and is composed of two factors: oppression and surprise "due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114. Oppression derives from a lack of "real negotiation and an absence of meaningful choice," and surprise arises from the terms of the bargain being "hidden in a prolix printed form," *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008), or drafted in "fine-print terms," *Sanchez*, 61 Cal. 4th at 911.

The oppression element of procedural unconscionability is satisfied here. The threshold question in procedural unconscionability is "whether the arbitration agreement is adhesive."

4

*Armendariz*, 24 Cal. 4th at 113.  A contract of adhesion is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms."  *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Ct. App. 2001).  "Under current California law, it is unclear whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that must be present."  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006).  But "both standards . . . are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'"  *Id.* (quoting *Flores*, 93 Cal. App. 4th at 853).  Hidalgo argues that he was "unable to engage in real negotiation" when entering into the contract with Tesla.  Opp. at 5.  Tesla does not contest this argument, and so the oppression requirement is satisfied.

The requirement of surprise, however, is not.  Despite Hidalgo's statement that he recalls neither reading the arbitration clause in page two of his offer letter nor receiving the arbitration agreement on page four, the original attachment Pardo e-mailed to him includes both the arbitration clause and the full arbitration agreement.  *See* Amended Hidalgo Decl. ¶¶ 4, 8; Petry Decl. Ex. A.  This indicates that he received the full offer letter, whether or not he remembers reading it.  Furthermore, the arbitration agreement is neither "hidden in a prolix printed form," *Bruni*, 160 Cal. App. 4th at 1288, nor drafted in "fine-print terms," *Sanchez*, 61 Cal. 4th at 911.  The entire offer letter is a short, four-page document, and the arbitration clause is printed on the second page and the full terms of the arbitration agreement are printed on the fourth page.  *See* Petry Decl. Ex. A at 5, 7.  Both the arbitration clause and the arbitration agreement are printed in 12-point type, and the arbitration agreement is clearly labeled as an "ARBITRATION AGREEMENT" in boldface, all-caps type.  *See id.*  It is irrelevant that Hidalgo did not sign or initial the arbitration clause or the arbitration agreement; Hidalgo identifies no cases supporting such a requirement.  Moreover, Hidalgo signed the contract in the space provided on page three and returned it to Tesla by the required deadline, indicating that he "[chose] to accept [Tesla's] offer under the terms described above," which included the arbitration clause.  *See* Hidalgo Decl.

1    Ex. A at 4, 7, ECF 18-2.  Finally, even if Hidalgo did not read the arbitration clause or the

2    arbitration agreement, that does not make it procedurally unconscionable.  "When a person with

3    the capacity of reading and understanding an instrument signs it, he may not, in the absence of

4    fraud, coercion or excusable neglect, avoid its terms on the ground he failed to read it before

5    signing it." *Bolanos v. Khalatian*, 231 Cal. App. 3d 1586, 1590 (Ct. App. 1991).

    **2.  Substantive Unconscionability**

7        Hidalgo argues that the substantive unconscionability requirement is satisfied because the

8    arbitration clause produces overly harsh and one-sided results.  *See* Opp. at 6-7.  It does so by

9    preventing him from litigating his damages before a court or jury.  *See id.* at 6.  It also references

10   the rules that will govern the arbitration, but does not set forth the rules themselves.  *See id.* at 6-7.

11   These arguments are unsuccessful.

12       Substantive unconscionability focuses on the "terms of the agreement and whether those

13   terms are so one-sided as to shock the conscience."  *Kinney*, 70 Cal. App. 4th at 1330.  An

14   arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided

15   results."  *Armendariz*, 24 Cal. 4th at 114.  The arbitration agreement here is neither.  First, it is

16   bilateral and applies equally to Hidalgo and Tesla.  *See* Petry Decl. Ex. A at 7 (binding both

17   Hidalgo and Tesla to resolving employment disputes through arbitration, and setting forth the

18   terms of the arbitration).  Second, it satisfies the requirements set forth for a lawful arbitration

19   agreement in *Armendariz*, 24 Cal. 4th at 102 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d

20   1465, 1482 (D.C. Cir. 1997)): it provides for "all court remedies," "adequate discovery," a

21   "neutral arbitrator," and a "written opinion," and requires Tesla to pay "all arbitration fees"

22   beyond those that would be required if the dispute were filed in a court.  Petry Decl. Ex. A at 7.

23   Hidalgo provides no case law supporting his position that the arbitration clause is substantively

24   unconscionable simply because it prevents him from litigating his damages before a court or jury.

25   *See* Opp. at 6.

26       Tesla's reference to the rules of the Judicial Arbitration and Mediation Services/Endispute,

27   Inc. ("JAMS") does not make the arbitration agreement substantively unconscionable, either.

28   Hidalgo relies on *Trivedi v. Curexo Tech. Corp.*, which notes that "[n]umerous cases have held

United States District Court
Northern District of California

6

that the failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability." 189 Cal. App. 4th 387, 393 (Ct. App. 2010) (citing cases). But in *Trivedi* and each of the decisions it cites, the plaintiff's unconscionability claim "depended in some manner on the arbitration rules in question. . . . These cases thus stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement." *Baltazar v. Forever 21*, Inc., 62 Cal. 4th 1237, 1246 (2016). In *Baltazar*, the California Supreme Court held that an argument based on Forever 21's incorporation by reference of the mediation rules might have force if Baltazar's unconscionability challenge "concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement." *Id.* But because her challenge to the agreement concerned "only matters that were clearly delineated in the agreement she signed," Forever 21's failure to attach the AAA rules "[did] not affect [the Court's] consideration of Baltazar's claims of substantive unconscionability." *Id.* Hidalgo's challenge similarly has nothing to do with the JAMS rules and concerns only matters that were clearly delineated in the offer letter he signed. Tesla's failure to attach the JAMS rules therefore does not make the arbitration agreement substantively unconscionable. *See id.*

### 3. Conclusion

In order for the Court to void the arbitration agreement as unconscionable, both procedural and substantive unconscionability must be satisfied. While the arbitration agreement here is mildly procedurally unconscionable, it is not substantively unconscionable, and it therefore is valid and enforceable. The arbitration agreement plainly encompasses the claims at issue—Hidalgo raises only claims relating to his employment, which the agreement covers. *See* Copher Decl. Ex. A, ECF 1; Petry Decl. Ex. A at 6.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Tesla's motion to compel arbitration and stay litigation is GRANTED. Within seven days of the resolution of the arbitration, the parties shall file a joint status report advising the Court of the resolution of the

United States District Court
Northern District of California

7

matter and any further action required by the Court.

   **IT IS SO ORDERED.**


Dated: June 29, 2016

BETH LABSON FREEMAN
United States District Judge

# EXHIBIT

# B

California Civil Rights Law Group
Attn: Organ, Lawrence A.
332 San Anselmo Avenue
Suite 201
San Anselmo, CA   94960____

---

## Superior Court of California, County of Alameda
## George E. McDonald Hall of Justice

| | | |
|---|---|---|
| Lambert | | No. <u>RG17854515</u> |
| | Plaintiff/Petitioner(s) | |
| | | Order |
| | VS. | |
| | | Petition to Compel Arbitration (Motion) |
| | | Granted |
| Tesla, Inc | | |
| | Defendant/Respondent(s) | |
| | (Abbreviated Title) | |

The Petition to Compel Arbitration (Motion) was set for hearing on 07/19/2017 at 02:30 PM in Department 301 before the Honorable Sandra K. Bean.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  Court Reporter: Jan Walton, CSR#5638, www.aikenwelch.com

The Motion of Defendant Tesla, Inc. to Compel Plaintiff DeWitt Lambert to Submit to Binding Contractual Arbitration, pursuant to CCP § 1281.2, is GRANTED.

Plaintiff DeWitt Lambert, a 44-year-old African American man, worked at the Tesla assembly plant in Fremont as a Production Associate from June 2015 to November 2016.  Plaintiff signed the Tesla offer letter electronically on June 24, 2015.  The offer letter included a clause on page three requiring Plaintiff and Defendant to submit any and all disputes arising out of Plaintiff's employment to binding arbitration at JAMS under the then current JAMS rules and procedures applying to employment disputes.  On March 27, 2017, Plaintiff filed his Complaint with this Court alleging that he was subjected to serious harassment and retaliation while employed by Tesla, Inc. on account of his race and disability.  The Court does not summarize Plaintiff's allegations in this order because they are set forth in some detail in the Complaint.  Plaintiff specifically identified the individuals who allegedly harassed him and also those who refused to take appropriate corrective action when he made formal complaints.  On May 22, 2017, after unsuccessfully attempting to persuade Plaintiff's counsel to submit to arbitration voluntarily, Defendant filed this Motion to Compel Arbitration pursuant to CCP § 1281.2.

Based on its consideration of the Complaint and the evidence presented by Plaintiff and Defendant, the Court concludes that Defendant's motion does not present the Court with a close question as to the application of the arbitration clause to Plaintiff's employment claims.  The Court takes judicial notice of a recent decision of the United States District Court for the Northern District of California in Hidalgo v. Tesla Motors, Inc. (N.D. Cal. 2016) (Freeman, J.) 2016 WL 3541198.  Although the arbitration clause used by Tesla in November 2012, when the plaintiff in Hidalgo signed his employment agreement, varies slightly from the one in Plaintiff's agreement in June 2015, the differences are not substantial.  The holding of Judge Freeman in Hidalgo is persuasive authority in the context of Plaintiff's efforts to invalidate the Tesla arbitration agreement.  Plaintiff has not offered any argument to support a finding

---

Order

that Tesla attempted to bury the arbitration clause in the offer letter that he signed on June 24, 2015. See Sanchez v. Valencia Holding Co., LLC (2015) 61 Cal.4th 899, 914 (no obligation to put the arbitration clause in bold letters or make a specific effort to draw the reader's attention to the clause); and Farrar v. Direct Commerce, Inc. (2017) 9 Cal.App.5th 1257, 1268 (same).

Plaintiff's contention that the Court should not permit Tesla to enforce the unconscionably one-sided arbitration agreement because Plaintiff deserves to present his case to a jury of his peers cannot be accepted based on the facts in this case. Plaintiff's assertion that public policy no longer favors arbitration is also without merit. The Court acknowledges that the California Supreme Court established strict requirements for arbitration agreements that focus on both the substance of the purported agreement and the circumstances leading to its execution. See Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 96-97. The continuing validity of Armendariz, however, is questionable at best in view of more recent decisions of the United States Supreme Court. In AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333, 350-351 (court reverses decision of the district court and the 9th circuit finding arbitration clause unconscionable because it requires the consumer to arbitrate his claim individually). In Concepcion, the Supreme Court held that although arbitration agreements subject to Section Two of the Federal Arbitration Act are subject to state unconscionability laws, any state laws that single out arbitration agreements for special scrutiny are invalid. Id. at 339-340. The Court concludes that Armendariz is such a law because the California Supreme Court in that case developed a test that imposes a heightened standard of unconscionability that applies only to arbitration agreements. The United States Supreme Court very recently emphasized the rule that it set forth in Concepcion. See Kindred Nursing Centers Ltd. Partnership v. Clark (2017) - U.S. -- , --- , 137 S.Ct. 1421, 1428-1429 (Kentucky law that requires the specific statement in a power of attorney that the grantee of the power has the right to enter into arbitration agreements is invalid under Concepcion because it singles out arbitration agreements).

Plaintiff's contention that the Federal Arbitration Act does not apply to contracts of employment of workers engaged in foreign or interstate commerce is not accepted. See Circuit City Stores, Inc. v. Adams (2001) 532 U.S. 105, 117-119 (exclusion applies only to workers directly engaged in interstate commerce and not workers engaged in activities subject to the federal commerce clause power).

Plaintiff's contention that the application of the arbitration clause to his claims must be decided by a jury is also without merit. The Legislature has clearly delegated the authority to determine whether an arbitration agreement is enforceable to the Court. See CCP § 1281.2.

Plaintiff's contention that the subject arbitration clause does not apply to his Sixth Cause of Action for Violation of the Ralph Act or to his Seventh Cause of Action for Violation of the Bane Act, which is not supported by any authority, is without merit. The arbitration clause applies to all disputes or claims, in law or equity, arising from or relating to Plaintiff's employment at Tesla.

Plaintiff's contention that the subject arbitration clause does not apply to his Tenth Cause of Action for Assault or his Eleventh Cause of Action for Battery is without merit. See Bigler v. Harker School (2013) 213 Cal.App.4th 727, 738-741; and Molecular Analytical Systems v. Ciphergen Biosystems, Inc. (2010) 186 Cal.App.4th 696-712-713.

Plaintiff's contention that the Court cannot compel him to submit his request for injunctive relief to arbitration is not accepted. The subject arbitration clause specifically applies to claims in equity. Plaintiff has not established that he seeks some form of injunctive relief through his private action that is likely to benefit the general public. Finally, Plaintiff's attempt to compare his private claim under the Federal Employment and Housing Act ("FEHA") to the Private Attorney General claim at issue in Iskanian v. CLS Transportation Los Angeles, LLC (2014) 59 Cal.4th 348, fails on its face. Plaintiff has not alleged that anyone with the Department of Fair Employment and Housing deputized him to proceed with this action against Tesla, Inc. Plaintiff merely alleged that he filed a complaint of discrimination with the DFEH and received a right-to-sue letter.

Plaintiff and Defendant are HEREBY ORDERED to submit their dispute to arbitration with JAMS in the firm's San Francisco or San Jose office in accordance with the terms of the arbitration agreement. The agreement provides that the parties are to submit their claim to arbitration in the city and state where Plaintiff was employed. The Court notes that JAMS does not have an office in Fremont.

The action is HEREBY STAYED pending the completion of arbitration. See CCP § 1281.4.

---

The Court will prepare the order and mail copies to the parties.  Counsel for Defendant Tesla, Inc. shall promptly file and serve the Notice of Entry of Order.

Dated:  07/19/2017

_____
Judge Sandra K. Bean

_____
Order

# EXHIBIT

# C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEWITT LAMBERT,<br><br>        Plaintiff,<br><br>        v.<br><br>TESLA, INC.,<br><br>        Defendant. | Case No.  17-cv-05369-VC<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 14, 16 |

Tesla's motion to compel arbitration is granted and DeWitt Lambert's motion for partial summary judgment is denied.[1]

Lambert signed a binding arbitration agreement when he began working for Tesla.  In this motion, he argues that his section 1981 claim cannot be subjected to mandatory arbitration because it involves his right not to be subjected to racial discrimination, which, he claims, Congress intended to be adjudicated only in court.  However, Ninth Circuit case law counsels otherwise.  In *EEOC v. Luce, Forward, Hamilton & Scripps*, the Ninth Circuit decided that Title VII claims can be subjected to compulsory arbitration because section 118 of the Civil Rights Act of 1991 encourages arbitration and alternative dispute resolution for Title VII claims.  *See* 345 F.3d 742, 746-53 (9th Cir. 2003) (quoting Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081 (1991) ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the [1991] Acts or provisions of Federal law amended by this title."))  Other circuits have arrived at

---

[1] Tesla's request for judicial notice (Dkt. No. 14) is granted, since each document is a state-court filing and part of the public record.  *See* Fed. R. Evid. 201.

the same conclusion.  *See* 345 F.3d at 748-49.

The Ninth Circuit's reasoning is binding here: if Title VII claims can be subjected to arbitration based on section 118 and the logic of *Luce, Forward*, so can section 1981 claims. The application of section 118 is not confined to Title VII.  In fact, looking just to the text – as *Luce, Forward* did – section 118 of the Civil Rights Act of 1991 is codified in the notes to section 1981 of Title 42 of the U.S. Code.  Additionally, Title VII and section 1981 claims are considered analogous and often brought together in the same suits.  Of course, the two statutes are not identical – for instance, an individual must file a charge with the Equal Employment Opportunity Commission before bringing a Title VII claim, but not before bringing a section 1981 claim.  *See* 42 U.S.C. § 2000e-5.  But these differences do not justify departing from the reasoning of *Luce, Forward*.

Therefore, the motion to compel arbitration is granted and the case is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: January 8, 2018

VINCE CHHABRIA
United States District Judge

# EXHIBIT

# D

Case 2:22-cv-01590-MEMF-AGR   Document 8   Filed 04/01/22   Page 23 of 51   Page ID #:316

Lambert v. Tesla, Inc., 923 F.3d 1246 (2019)

2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274...

Document By **WESTLAW**

923 F.3d 1246
United States Court of Appeals, Ninth Circuit.

Dewitt LAMBERT, Plaintiff-Appellant,

v.

TESLA, INC., dba Tesla Motors,
Inc., Defendant-Appellee.

No. 18-15203
|
Argued and Submitted April 16,
2019 San Francisco, California
|
Filed May 17, 2019

**Synopsis**

**Background:** African-American former employee filed § 1981 suit against former employer, alleging that he was abused and harassed in the workplace because of his race. The United States District Court for the Northern District of California, No. 3:17-cv-05369-VC, Vince Chhabria, J., 2018 WL 317793, granted employer's motion to compel arbitration. Employee appealed.

**[Holding:]** The Court of Appeals, M. Smith, Circuit Judge, in a matter of first impression, held that discrimination claims under § 1981 may be subjected to compulsory arbitration.

Affirmed.

Thomas, Chief Judge, filed concurring opinion.

West Headnotes (9)

**[1]** **Alternative Dispute Resolution** ⚖ Scope and standards of review

The Court of Appeals reviews de novo the district court's order compelling arbitration. 9 U.S.C.A. § 16.

1 Cases that cite this headnote

**[2]** **Civil Rights** ⚖ Contracts, trade, and commercial activity

Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship. 42 U.S.C.A. § 1981.

**[3]** **Alternative Dispute Resolution** ⚖ Evidence

In deciding whether a statutory claim is subject to arbitration, the burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of the judicial forum based on the text of the statute, its legislative history, or an inherent conflict between arbitration and the statute's underlying purposes.

**[4]** **Alternative Dispute Resolution** ⚖ Disputes and Matters Arbitrable Under Agreement

Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.

**[5]** **Civil Rights** ⚖ Purpose and construction in general
**Civil Rights** ⚖ Purpose and construction in general

Congress enacted the Civil Rights Act of 1991, which amended Title VII and § 1981, in order to restore civil rights limited by then-recent Supreme Court decisions and to strengthen existing protections and remedies available under federal civil rights laws to provide more effective deterrence and adequate compensation for victims of discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981.

1 Cases that cite this headnote

**[6]** **Alternative Dispute Resolution** ⚖ Employment disputes

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:22-cv-01590-MEMF-AGR   Document 8   Filed 04/01/22   Page 24 of 51   Page ID #:317

Lambert v. Tesla, Inc., 923 F.3d 1246 (2019)

2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274...

Discrimination claims under § 1981 may be subjected to compulsory arbitration; the statutory text of § 1981 does not evince a preclusion of arbitrability. 42 U.S.C.A. § 1981.

2 Cases that cite this headnote

**[7]    Alternative Dispute Resolution** 👉 Statutory rights and obligations

The nonarbitrability of a claim under a statute can be ascertained from the text of the statute, its legislative history, or an inherent conflict between arbitration and the statute's underlying purposes.

**[8]    Statutes** 👉 Plain, literal, or clear meaning; ambiguity

When the language of a statute is clear and unambiguous, a court interpreting the statute is precluded from considering legislative history.

**[9]    Alternative Dispute Resolution** 👉 Unconscionability

Procedural safeguards exist to protect plaintiffs from unconscionable arbitration.

**Attorneys and Law Firms**

**\*1247** Noah B. Baron (argued) and Lawrence A. Organ, California Civil Rights Law Group, San Anselmo, California, for Plaintiff-Appellant.

Danielle L. Ochs (argued) and Roshni Chaudhari, Ogletree Deakins Nash Smoak & Stewart P.C., San Francisco, California, for Defendant-Appellee.

Appeal from the United States District Court for the Northern District of California, Vince Chhabria, District Judge, Presiding, D.C. No. 3:17-cv-05369-VC

Before: SIDNEY R. THOMAS, Chief Judge, MILAN D. SMITH, JR., Circuit Judge, and KATHRYN H. VRATIL,[*] District Judge.

Concurrence by Chief Judge Thomas

**OPINION**

M. SMITH, Circuit Judge:

**\*1248** Plaintiff-Appellant DeWitt Lambert filed suit against Defendant-Appellee Tesla, Inc. (Tesla), alleging violations of 42 U.S.C. § 1981. Tesla moved to compel arbitration, and the district court granted the motion. Lambert appealed, arguing that § 1981 claims cannot be subjected to compulsory arbitration. Following the reasoning of our en banc decision in *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc), we hold that § 1981 claims are arbitrable.

**FACTUAL AND PROCEDURAL BACKGROUND**

In his complaint, Lambert alleged that he began working as a production associate in Tesla's Fremont, California factory in 2015. His employment contract included an arbitration provision that "purport[ed] to require the parties to arbitrate disputes arising between them."

During his employment, Lambert, an African American, claimed that "the other employees consistently harassed him" due to his race. This abuse took various forms, from petty and puerile harassment (employees would stick Lambert's tools to a table with adhesive tape and take photos with his phone without permission) to vicious and vituperative comments. Lambert's appeals to Tesla's human resources department were unavailing, and he further alleged that the company "discriminated against and retaliated against" him and "refus[ed] to promote [him] because of his race."

Lambert filed suit against Tesla in the district court, alleging violations of 42 U.S.C. § 1981. He also sought a declaration that his § 1981 claim was nonarbitrable. Tesla moved the district court to either dismiss Lambert's action or compel arbitration. The court concluded that our precedent permitted the arbitrability of § 1981 claims, and granted Tesla's motion to compel arbitration. *Lambert v. Tesla, Inc.*, No. 17-cv-05369-VC, 2018 WL 317793, at \*1 (N.D. Cal. Jan. 8, 2018). This timely appeal followed.

Lambert v. Tesla, Inc., 923 F.3d 1246 (2019)

2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274...

## STANDARD OF REVIEW AND JURISDICTION

**[1]** "We review de novo the district court's order compelling arbitration." *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001). We have jurisdiction pursuant to 9 U.S.C. § 16 and 28 U.S.C. § 1291.

## ANALYSIS

"We have become an arbitration nation." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1169 (9th Cir. 2019). The question before us is whether claims under § 1981 should be added to the ever-expanding list of statutory causes of action already subject to arbitration.

**[2]** Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006). The statute provides that "[a]ll persons ... shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ..." 42 U.S.C. § 1981(a). It further defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

Lambert contends that "[t]he district court erred in failing to give full effect to the text of Section 118 of the Civil Rights Act of 1991, which limits arbitration to claims where it is 'appropriate' and 'authorized **\*1249** by law,' " and that under the Supreme Court's three-part test set forth in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), § 1981 claims cannot be arbitrated.

We first outline the relevant law before considering the arbitrability of § 1981 claims.

## I. Relevant Law

### A. *Gilmer*

**[3]** **[4]** In *Gilmer*, the Supreme Court considered whether claims brought under the Age Discrimination in Employment Act (ADEA) can be subjected to compulsory arbitration pursuant to the Federal Arbitration Act (FAA). *See id.* at 23, 111 S.Ct. 1647. The Court held that they could, but

noted that "all statutory claims may not be appropriate for arbitration." *Id.* at 26, 111 S.Ct. 1647. In such cases "the burden is on [the plaintiff] to show that Congress intended to preclude a waiver of the judicial forum" based on "the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Id.* (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). "Throughout such an inquiry," the Court stressed, "it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' " *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

### B. Section 118

**[5]** Six months after the Court issued *Gilmer*, Congress enacted the Civil Rights Act of 1991 (1991 Act), Pub. L. No. 102-166, 105 Stat. 1071, in order to "restore civil rights limited by then-recent Supreme Court decisions and to 'strengthen existing protections and remedies available under federal civil rights laws to provide more effective deterrence and adequate compensation for victims of discrimination.' " *Luce, Forward*, 345 F.3d at 747 (quoting H.R. Rep. No. 102-40, pt. 2, at 1 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 694, 694). Section 118 of the 1991 Act stated, "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." § 118, 105 Stat. at 1081. Section 118 amended both Title VII and § 1981. *See* 105 Stat. at 1071–72, 1081.

### C. *Luce, Forward*

Although we have not yet addressed the arbitrability of § 1981 claims, our en banc opinion in *Luce, Forward* is highly instructive. There, we considered the arbitrability of Title VII claims. *Luce, Forward*, 345 F.3d at 744.

As part of our analysis, we determined that our previous decision on the arbitrability of Title VII claims, *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998), was "wrongly decided." *Luce, Forward*, 345 F.3d at 745. The *Duffield* court—considering, as part of *Gilmer*'s three-part test, the relevant statutory purpose—had determined that the 1991 Act was at odds with compulsory arbitration agreements, remarking,

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Lambert v. Tesla, Inc., 923 F.3d 1246 (2019)

2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274...

It [ ] would be "at least a mild paradox" to conclude that in the very Act of which the "primary purpose" was "to strengthen existing protections and remedies available [to employees under Title VII]," Congress "encouraged" the use of a process whereby employers condition employment on their prospective employees' surrendering their rights to a judicial forum for the resolution of all future claims of race or sex discrimination **\*1250** and force those employees to submit all such claims to compulsory arbitration.

*Duffield*, 144 F.3d at 1192–93 (second alteration in original) (citations omitted) (first quoting *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 363 (7th Cir. 1997); and then quoting H.R. Rep. No. 102-40, pt. 2, at 1, *as reprinted in* 1991 U.S.C.C.A.N. at 694). *Luce, Forward* rejected this reasoning, concluding that *Duffield*'s presumption "that allowing compulsory arbitration weakens the 1991 Act is inconsistent with the Supreme Court's endorsement of arbitration." *Luce, Forward*, 345 F.3d at 750 (citing *Gilmer*, 500 U.S. at 30, 111 S.Ct. 1647).

As for the statutory text—another of the *Gilmer* considerations—we disagreed with *Duffield*'s assertion that the text of § 118 "is, at a minimum, ambiguous," *Duffield*, 144 F.3d at 1193, writing,

> [A]lthough the Court decided *Gilmer* close in time to the passage of the 1991 Act, we must "assume that Congress is aware of existing law when it passes legislation." *Gilmer* was decided in May 1991 and the 1991 Act was not enacted until November of that year. During this intervening six months, Congress surely became aware that *Gilmer* ... provided the Supreme Court's prevailing assessment of employment arbitration agreements. Moreover, the legal landscape encompassed by the phrase, "to the extent authorized by law," must also include the FAA.

*Luce, Forward*, 345 F.3d at 751–52 (citation omitted) (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990)). [1] We "therefore conclude[d] that the text of § 118 does not present any ambiguity suggesting that it may be intended to preclude compulsory arbitration." *Id.* at 752.

Finally, we rejected *Duffield*'s reliance on the legislative history of the 1991 Act (the third *Gilmer* consideration), concluding that "this history should not be relied on to establish that Congress intended to preclude waiver of a

judicial forum in derogation of a clear and unambiguous statute." *Id.* at 753.

Consequently, as had "[a]ll of the other circuits," we concluded that Title VII does not bar compulsory arbitration agreements. *Id.* at 748.

## II. Arbitrability of § 1981 Claims

**[6]**  In its brief order compelling arbitration, the district court relied on *Luce, Forward* and concluded that our "reasoning is binding here: if Title VII claims can be subjected to arbitration based on section 118 and the logic of *Luce, Forward*, so can section 1981 claims." *Lambert*, 2018 WL 317793, at \*1. We agree. Applying *Gilmer* through the lens of *Luce, Forward* leads to the conclusion that § 1981 claims, like Title VII claims, are arbitrable.

**[7]**  **[8]**  *Gilmer* held that the nonarbitrability of a statute can be ascertained from "the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." 500 U.S. at 26, 111 S.Ct. 1647 (quoting *McMahon*, 482 U.S. at 227, 107 S.Ct. 2332). Here, the 1991 Act amended § 1981 to include § 118, which encourages arbitration efforts "[w]here appropriate and to the extent authorized by law." § 118, 105 Stat. at 1081 (codified at Notes to 42 U.S.C. § 1981). When considering *this same arbitration provision* in the context of Title VII, we concluded in **\*1251** *Luce, Forward* that "[n]othing in the text directly demonstrates a congressional intent to preclude compulsory arbitration agreements." 345 F.3d at 751. The language is clear, and "[b]ecause the text of § 118 is unambiguous, we are precluded from considering legislative history." *Id.* at 753; *see also Ratzlaf v. United States*, 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear."); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 205–06 (2d Cir. 1999) (concluding that Title VII's legislative history need not be considered because the text of the arbitration provision is "clear").

Even if we were to proceed with the *Gilmer* inquiry and consider the relevant statutory purpose,[2] *Luce, Forward* would be persuasive. In *Luce, Forward*, we saw no conflict between Title VII and arbitration, explaining that "the view that compulsory arbitration weakens Title VII conflicts with the Supreme Court's stated position that arbitration affects only the choice of forum, not substantive rights." *Luce, Forward*, 345 F.3d at 750; *see also Gilmer*, 500 U.S. at 26,

Case 2:22-cv-01590-MEMF-AGR   Document 8   Filed 04/01/22   Page 27 of 51   Page ID #:320

Lambert v. Tesla, Inc., 923 F.3d 1246 (2019)

2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274...

111 S.Ct. 1647 ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985))). Title VII and § 1981 both "express the federal policy against discriminatory employment practices," and "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 470–71, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (Marshall, J., concurring in part and dissenting in part) (quoting *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). Accordingly, just as *Luce, Forward* found no conflict between Title VII and arbitration, so we find no conflict between § 1981 and arbitration.

In short, we are bound to apply the reasoning of *Luce, Forward* to the case before us. In *Gilmer*, the Supreme Court determined that the ADEA—which, incidentally, features language *identical* to § 118, *see* 42 U.S.C. § 12212—"can be subjected to compulsory arbitration." *Luce, Forward,* 345 F.3d at 751 (citing *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647). The 1991 Act, § 118 included, was enacted shortly thereafter, with Congress "aware that *Gilmer*" and the FAA informed the relevant legal landscape. *Id.* at 751–52. Because the unambiguous language of § 118 applies to § 1981, and the statutory purpose of § 1981 does not evince a preclusion of arbitrability, *Gilmer* and *Luce, Forward* compel our conclusion: § 1981 claims can be subjected to compulsory arbitration. [3]

**\*1252** **[9]** Lambert's primary argument is that a proper application of *Gilmer* to § 1981 requires analysis not of § 118 and the 1991 Act, but rather the statute that created § 1981—the Civil Rights Act of 1866. Although he marshals an impressive array of primary and secondary sources in support of his investigation, the exercise itself is fundamentally flawed. Ignoring § 118 in favor of analysis of the pre-amendment § 1981 would be flatly inconsistent with *Luce, Forward,* which considered Title VII as part of the contemporary legal landscape. *See* 345 F.3d at 751–52 (noting that "the legal landscape encompassed by the phrase, 'to the extent authorized by law,' must" include both *Gilmer* and the FAA). As Tesla observes, "Lambert's suit arises under Section 1981, as amended, not earlier versions and not entirely different legislation like the 1866 [Civil Rights Act]." [4] Given this fact, as well as our reasoning in *Luce,*

*Forward,* Lambert's analytical perambulations are ultimately unpersuasive. [5]

## CONCLUSION

*Luce, Forward* compels the same application of § 118 to § 1981 as to Title VII. We therefore conclude that the district court correctly determined that § 1981 claims can be subjected to compulsory arbitration.

## AFFIRMED.

THOMAS, Chief Circuit Judge, concurring:
I agree that this court's decision in *EEOC v. Luce, Forward, Hamilton & Scripps,* 345 F.3d 742 (9th Cir. 2003) (en banc), compels us to hold that § 1981 claims are arbitrable. I therefore concur in the majority opinion. I write separately because I believe that *Luce, Forward* was wrongly decided.

Because the majority in *Luce, Forward* determined that the statutory text of § 118 is unambiguous, it did not consider the legislative history of the Civil Rights Act of 1991. *See id.* at 753. Section 118, however, merely states that arbitration should be "encouraged" to the extent it is "appropriate" and "authorized by law." § 118, 105 Stat. at 1081. As the dissenters in *Luce, Forward* noted, these terms are "at a minimum, ambiguous." *Id.* at 756 **\*1253** (Pregerson, J., dissenting) (quoting *Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182, 1193 (9th Cir. 1998) (overruled by *Luce, Forward,* 345 F.3d at 745)); *see also, id.* at 764 (Reinhardt, J., dissenting) (noting that the terms in § 118 are "unquestionably ambiguous"). The dissenters determined, and I agree, that pursuant to *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 23, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the *Luce, Forward* majority should have recognized this ambiguity and moved on to consider § 118's legislative history. *See Luce, Forward,* 345 F.3d at 756 (Pregerson, J., dissenting); *id.* at 764–66 (Reinhardt, J., dissenting).

Section 118's legislative history explicitly states that, in order to prevent employment discrimination, Congress intended "to supplement, rather than supplant, the rights and remedies provided by Title VII." *Id.* at 766 (Reinhardt, J., dissenting) (quoting H.R. Rep. No. 102-40 pt. I, at 104 (1991)); *id.* at 760 (Pregerson, J., dissenting) (quoting the same). As did the *Luce, Forward* dissenters, I recognize that Congress "plainly thought that the [1991] Act did not allow employers to force

Lambert v. Tesla, Inc., 923 F.3d 1246 (2019)

2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274...

their workers to sign compulsory arbitration clauses forfeiting their right to trial by jury in Title VII cases." *Id.* at 766 (Reinhardt, J., dissenting).

Viewed in this light, compelling arbitration in Section 1981 actions more acutely defies Congress's intent than does compelling arbitration in Title VII actions. As the majority in *Luce, Forward* noted, the EEOC may pursue Title VII claims in a judicial forum on behalf of individuals, even if the individual agreed to mandatory arbitration. *Id.* at 750. Thus, those bringing claims under Title VII retain some ability to choose the judicial forum in which their claims will be heard. The same is not true for Section 1981 claims, which must be brought by private litigants. [1] As a result of our holding,

an individual who signs an arbitration clause will be stripped of any ability to pursue a racial discrimination claim under Section 1981 in a court of law.

Our decision today signifies a further departure from the increased choice of fora Congress intended to bring about in the 1991 Act. However, bound by *Luce, Forward*, we are left with no option to hold otherwise. Therefore, I concur.

**All Citations**

923 F.3d 1246, 2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274, 19 Cal. Daily Op. Serv. 4494, 2019 Daily Journal D.A.R. 4189

## Footnotes

*    The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

1    We further noted that, "as other courts have pointed out, it would be ironic to interpret statutory language encouraging the use of arbitration and containing no prohibitory language as evincing Congress' intent to preclude arbitration of Title VII claims." *Luce, Forward*, 345 F.3d at 752.

2    We note that the *Gilmer* Court continued with an analysis of statutory purpose even though "Gilmer concede[d] that nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." 500 U.S. at 26–27, 111 S.Ct. 1647.

3    Tesla observes that, "[w]hile there is a dearth of legal precedents on this issue, the few courts addressing the arbitrability of Section 1981 claims under *Gilmer* have agreed that such claims are subject to compulsory arbitration." *See, e.g., Winfrey v. Bridgestone/Firestone, Inc.*, No. 99-1405, 1999 WL 1295310, at *2 (8th Cir. Dec. 23, 1999) (citing *Gilmer* to "reject [the] argument that [ ] Title VII and § 1981 claims cannot be subjected to ... mandatory arbitration provisions"); *Cirino v. L. Gordon Holdings, Inc.*, No. 13-CV-4800, 2014 WL 2880291, at *3 (E.D. Pa. June 25, 2014) ("The text of [§ 118] 'evinces a clear Congressional intent to encourage arbitration of' federal discrimination claims, including those under § 1981." (quoting *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 182 (3d Cir. 1998))); *Shaw v. DLJ Pershing*, 78 F. Supp. 2d 781, 782 (N.D. Ill. 1999) ("Considering this interpretation of § 118 ... this court can find no reason that the Seventh Circuit's reasoning in *Koveleskie* [*v. SBC Capital Mkts., Inc.*, 167 F.3d 361 (7th Cir. 1999)] as to Title VII claims would not apply with equal force to claims brought pursuant to 42 U.S.C. § 1981, which is another Act amended by the 1991 [Act]."). The district court in *Shaw* also provided a practical rationale for this approach: "As § 1981 claims are often brought in conjunction with Title VII claims, this result [ ] safeguards against multiple proceedings and possibly disparate outcomes." 78 F. Supp. 2d at 782.

4    Tesla also reasonably points out that, if Lambert were correct that § 1981 claims can never be arbitrated, then § 118 would be meaningless, because it would serve to encourage arbitration for claims where it is never permitted.

5    Additionally, Lambert cites to our decision in *Ashbey v. Archstone Prop. Mgmt., Inc.* for the proposition that § 118 is not "an unfettered endorsement of alternative dispute resolutions." 785 F.3d 1320, 1323 (9th Cir. 2015). But that opinion proceeded to explain that the "where appropriate" limiter in § 118 "signals a plaintiff cannot waive his right to a judicial forum for Title VII claims unless he does so 'knowingly.' " *Id.* (quoting *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994)). In other words, *Ashbey* stands for the uncontroversial

Lambert v. Tesla, Inc., 923 F.3d 1246 (2019)

2019 Fair Empl.Prac.Cas. (BNA) 179,774, 103 Empl. Prac. Dec. P 46,274...

proposition that procedural safeguards exist to protect plaintiffs from unconscionable arbitration—a far cry from Lambert's assertion that § 118's "where appropriate" language requires a prolonged, substantive examination of a statute's pre-amendment history and purpose.

1   What is more, an individual has good reason to bring an action for racial discrimination under Section 1981 as opposed to Title VII since the statute of limitations for bringing a Section 1981 claim is longer than for a Title VII claims. *Compare Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–84, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (concluding that Section 1981 claims are subject to a four-year statute of limitations) *with* 42 U.S.C. § 2000e-5(e)(1) (Title VII claims must be brought within 180 days after the alleged unlawful act). In addition, a plaintiff may be able to recover more damages under Section 1981. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 182 n.4, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), superseded on other grounds by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) (noting that a plaintiff is limited to backpay in a Title VII action, but may recovery plenary compensatory, as well as punitive damages, in a Section 1981 action).

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

© 2022 Thomson Reuters. No claim to original U.S. Government Works.   7

# EXHIBIT

# E

Matern Law Group
Attn: Bennett, Corey B
One Market Street
#3676
San Francisco, CA   94105____

SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
Attn: Swafford-Harris, Reanne
Four Embarcadero Center
17th Floor
San Francisco, CA   94111-4109

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Rodriguez

Plaintiff/Petitioner(s)

vs.

Tesla, Inc

Defendant/Respondent(s)
(Abbreviated Title)

No. RG18904409

Order

Petition to Compel Arbitration (Motion)
Granted

The Petition to Compel Arbitration (Motion) was set for hearing on 06/21/2019 at 10:00 AM in
Department 21 before the Honorable Winifred Y. Smith. The Tentative Ruling was published and has
not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  The Motion of defendant Tesla to compel Jorge Rodriguez
to arbitrate his claims is GRANTED.  The request of Tesla to stay this action pending completion of
arbitration is GRANTED.

### FACTS

In October 2017, Plaintiff applied to work at Tesla through Indeed.com. (Rodriguez, Dec, para 3.)  On
12/15/17, Tesla send an offer letter to Rodriquez. (Ward Dec., Exh C.)  The offer letter stated that
disputes would be resolved by arbitration under the JAMS rules for employment disputes and also set
out six separate itemized provisions.

Tesla asserts that Rodriguez electronically signed the offer letter and agreed to arbitration. (Ward Dec
and Supp Dec.)  Rodriguez states that he recalls accepting a position at Tesla by clicking through a link,
but that he does not recall the offer letter. (Rodriguez, Dec, para 6-7.)

### ORDER ON ARBITRATION

The Motion of defendant Tesla to compel Jorge Rodriguez to arbitrate his claims is GRANTED.

The court finds that Rodriguez signed the Tesla offer letter.  Although the signature is digital, Tesla has
presented evidence demonstrating an electronic signature. (Civil Code 1633.7; Espejo v. Southern
California Permanente Medical Group (2016) 246 Cal.App.4th 1047, 1061.)

Plaintiff argues that the Agreement is procedurally unconscionable because it was a contract of
adhesion and because it did not include the JAMS rules for arbitration.

The courts of appeal have concluded that take it or leave it employer arbitration agreements are
procedurally unconscionable. (See, e.g., Baxter v. Genworth North America Corp. (2017) 16
Cal.App.5th 713, 723-724 [arbitration agreement held procedurally unconscionable where employer

Case 2:22-cv-01590-MEMF-AGR   Document 8   Filed 04/01/22   Page 32 of 51   Page ID #:325

presented arbitration agreement on a take-it-or-leave-it basis and agreement was required as a condition of continued employment]; Fitz v. NCR Corp. (2004) 118 Cal.App.4th 702, 722 [same].)

The courts of appeal have found that an agreement may incorporate arbitration rules by reference. (Baltazar v. Forever 21, Inc. (2016) 62 Cal.4th 1237, 1246; Nguyen v. Applied Medical Resources Corp. (2016) 4 Cal.App.5th 232, 248-249.)

The court finds minimal procedural unconscionability. "'[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.' " (Baltazar v. Forever 21, Inc. (2016) 62 Cal.4th 1237, 1244.)

Plaintiffs argues that the Agreement is not substantively unconscionable. The Agreement waives representative actions, but that not unconscionable. To the extent it might be unconscionable, it is severed. The Agreement states that Tesla will pay all fees in excess of those that would be required in court. This is what the law requires and it is not unduly vague. The Agreement implicitly waives appellate review, but that is part of waiving the judicial process as a whole. The court remains involved in the petition to compel arbitration and in any motion to reduce an arbitration award to a judgment.

Tesla argues that the Agreement that requires Rodriguez to arbitrate his individual claims also requires Rodriguez as a PAGA plaintiff representing the LDWA to arbitrate the LWDA's claims that provide victim specific relief as a remedy. The court rejects this argument. As stated in the order of 6/10/19, PAGA claims are on behalf of the LWDA and do not transform into individual claims because the penalties that the LWDA can recover provide relief to individual employees.

ORDER ON STAY OF CASE.

The request of Tesla to stay this action pending completion of arbitration is GRANTED. (CCP 1281.4.) The court retains jurisdiction to address matters related to the arbitration. (CCP 1292.6.)

Dated:  06/21/2019

*Winifred Y. Smith*

Judge Winifred Y. Smith

Order

# EXHIBIT

# F

Decision on Submitted Matter

**F I L E D**

JUL 2 9 2019

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____ DEPUTY
M. Rosales

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

FERNANDO MURRAIN,

　　　　　Plaintiff,

v.

TESLA, INC. doing business in California
as TESLA MOTORS, INC. et al.,

　　　　　Defendants.

Case No. 18CV334861

**ORDER CONCERNING
DEFENDANT'S MOTION TO
COMPEL ARBITRATION AND
FOR STAY**

　　　　Petitioner Tesla, Inc. seeks to compel arbitration of its dispute with Respondent Fernando Murrain and to stay this action. Respondent opposes this petition. The Court heard oral argument on July 25, 2019, and took the matter under submission. The Court now issues its final order.

　　　　The Court must issue an order compelling arbitration if: (1) a valid agreement to arbitrate exists: and (2) that agreement encompasses the dispute at issue. (See *Giuliano v. Inland Empire Pers., Inc.* (2007) 149 Cal. App. 4th 1276, 1283-85 (*Giuliano*).) Here, the Arbitration Agreement signed by Respondent is valid. And the dispute at issue falls comfortably within the broad Arbitration Agreement.

1

1    Respondent must prove by a preponderance of the evidence any alleged defense

2  to the arbitration agreement's enforcement. (See *Giuliano*, *supra*, 149 Cal. App. 4th at p.

3  1284.) Respondent's first defense is that the agreement, by its terms, applies to

4  "CALIFORNIA EMPLOYEES ONLY," White Decl., Ex. A., and that Respondent is not

5  a California employee. But at the time he signed it, Respondent *was* a California

6  employee. His later move to Utah, which is where he was when he filed this lawsuit,

7  doesn't invalidate his signed arbitration agreement. The Court agrees with Tesla that

8  "Plaintiff provides no authority for the argument that an employment agreement (let

9  alone an arbitration agreement) that was undisputedly valid and enforceable at the time it

10  was signed becomes unenforceable simply by virtue of the employee transferring to work

11  out of state." (Reply Brief, at p. 4.)

12    Nor is there language in the agreement that terminates, invalidates, or modifies it

13  if Petitioner were to move out of California. The Court notes that the "California

14  Employees Only" language is at the top of the agreement, not in its substantive sections.

15  It appears to the Court that this language likely was primarily meant for the human

16  resources department, so that employees about to be hired—some located in California

17  and some located elsewhere—would receive the correct forms and agreements.

18    Finally, Plaintiff's own subjective belief (see Murrain Decl., ¶ 18) is not

19  particularly relevant as to the meaning of the arbitration agreement. The Court therefore

20  rejects this defense.

21    Respondent's second defense is that the arbitration agreement is procedurally and

22  substantively unconscionable under *Armendariz v. Found. Health Psychcare Servs.*

23  (2000) 24 Cal.4th 83 (*Armendariz*). The two types of unconscionability need not be

24  present in the same degree, and "the more substantively oppressive the contract term, the

25  less evidence of procedural unconscionability is required to come to the conclusion that

26  the term is unenforceable, and vice versa." (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)

27  The party opposing arbitration has the burden of proving unconscionability. (*Tiri v.*

28  *Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 244.)

1    In our case, the arbitration agreement permits Plaintiff to seek all remedies in

2    arbitration that he could seek in court of law, and does not apply to injunctive relief or

3    claims that may be brought before an administrative agency.  It is written in plain

4    language and not buried in layers of fine print.  Plaintiff had three days to consider the

5    agreement.  And the arbitration agreement expressly states "in all cases where required

6    by law, the Company will pay the Arbitrator's and arbitration fees."  For all of these

7    reasons, the Court believes that this arbitration agreement is not one-sided and passes

8    muster under *Armendariz*.

9    Finally, Respondent argues that California law governs all of his claims.  "When

10   parties contract to resolve their disputes by private arbitration, their agreement ordinarily

11   contemplates that the *arbitrator* will have the power to decide any question of contract

12   interpretation, historical fact or *general law* necessary, in the arbitrator's understanding

13   of the case, to reach a decision.  [Citations.]"  (*Gueyffier v. Ann Summers, Ltd.* (2008) 43

14   Cal.4th 1179, 1184 (italics added).)  It may well be that California law applies to all of

15   Respondent's disputes, or that California law applies to some disputes and Utah law

16   applies to others.  But that is a question that the arbitrator must decide, not the Court.

17   For all of these reasons, the Courts GRANTS the petition to compel arbitration

18   and STAYS this case.  The Court sets a case review conference for December 19, 2019 at

19   10:00 am in Department 8.

20   **IT IS SO ORDERED.**

21

22   Dated: _7/29/19_

23                                        The Honorable Sunil R. Kulkarni
                                          Judge of the Superior Court
24

25

26

27

28

3



# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### DOWNTOWN COURTHOUSE
191 NORTH FIRST STREET
SAN JOSÉ, CALIFORNIA 95113
**CIVIL DIVISION**

**Matthew C Lewis**
**235 PINE STREET SUITE 1175**
**SAN FRANCISCO CA  94104**

RE:       **Fernando Murrain vs Tesla, Inc.**
Case Number:    **18CV334861**

### PROOF OF SERVICE

**Order Concerning Defendant's Motion to Compel Arbitration and for Stay** was delivered to the parties listed below the above entitled case as set forth in the sworn declaration below.

---

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line (408) 882-2690 or the Voice/TDD California Relay Service (800) 735-2922.

**DECLARATION OF SERVICE BY MAIL:**  I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each person whose name is shown below, and by depositing the envelope with postage fully prepaid, in the United States Mail at San Jose, CA on July 29, 2019.  CLERK OF THE COURT, by Mark Rosales, Deputy.

**cc:**   Elizabeth Mary Peck  1010 Fair Ave Ste H  Santa Cruz CA  95060

# EXHIBIT

# G



Law Office of Michael Freiman
Attn:  Freiman, Michael
100 Wilshire Blvd.
Suite 700
Santa Monica, CA   90401

Littler Mendelson PC
Attn:  Wasserman, Helene
2049 Century Park East, 5th Floor
Los Angeles, CA   90067

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Gevarges<br><br>                 Plaintiff/Petitioner(s)<br><br>     VS.<br><br><br>Tesla, Inc.<br>             Defendant/Respondent(s)<br>      (Abbreviated Title) | No. <u>RG20070850</u><br><br>Order<br><br>Motion to Compel (Motion)<br>Granted |

The Motion to Compel (Motion) was set for hearing on 02/18/2021 at 02:30 PM in Department 22 before the Honorable Jeffrey Brand.  The Tentative Ruling was published and has not been contested.

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows:  Defendant Tesla, Inc. moves for an order compelling Plaintiff David Gevarges to submit his claims in this action to binding arbitration and staying this action until the arbitration is completed.  Gevarges opposes.

When asked to enforce an agreement to arbitrate, the Court must ordinarily answer only two "gateway" questions: (1) whether the parties had agreed to arbitrate disputes, per the usual rules of contract law, and (2) whether the parties' current dispute lies within the scope of the agreement to arbitrate.  (Omar v. Ralphs Grocery Co. (2004) 118 Cal.App.4th 955, 960; see 9 U.S.C. § 4 ["If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."].)

Defendant Tesla offers evidence that Gevarges electronically signed an arbitration agreement as part of his pre-hire paperwork.  (Decl. of J.G. Reed ¶ 8-9 & Exs. A, B.)  The agreement covers "any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [Gevarges'] employment, or the termination of [his] employment."  (Id. Ex. B at p.2.)  Gevarges does not deny his signature or argue that his causes of action asserted herein fall outside the scope of the agreement.

Gevarges argues, however, that the agreement is unenforceable as unconscionable.  Any agreement, including an arbitration agreement, is unenforceable if it is unconscionable or contrary to public policy. (Baxter v. Genworth North America Corporation (2017) 16 Cal.App.5th 713, 721.)  "Unconscionability refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  (Ibid., internal punctuation and citations omitted.)  "As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (Ibid., internal punctuation and citations omitted.)  "Both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract, although they need not be present in the same degree." (Baxter, supra, 16 Cal.App.5th at 721.) "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." (Ibid.) "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required

to come to the conclusion that the term is unenforceable, and vice versa." (Ibid.)

Gevarges argues that the agreement is procedurally unconscionable because his employment contract was a contract of adhesion for which he had no meaningful opportunity to negotiate its terms. Gevarges provides and cites no evidence to support that finding. Moreover, the mere fact that a contract was offered on a take-it-or-leave-it basis is only a weak showing of procedural unconscionability that provides a defense to enforcement only in the case of extreme substantive unconscionability. No such showing of extreme substantive unconscionability can be shown here. The contract is bilateral, provides that both parties are entitled to all remedies available at law, and provides that Tesla will pay all costs of arbitration in excess of those that Gevarges would pay if the litigation were brought in a court of law. Gevarges argues that the agreement robs him of his rights to trial by jury and improperly fails to allow him to issue subpoenas to third parties. These are not the kind of grave substantive defects that would support a strong showing of substantive unconscionability even if Gevarges had established that the employment contract was one of adhesion.

The motion is therefore GRANTED. Plaintiff Gevarges is ORDERED to submit his claims to arbitration before JAMS within 10 court days of entry of this order. Further proceedings in this action are STAYED pending the final award of the arbitrator.

Dated: 02/18/2021

_Jeffrey S Brand_
facsimile
Judge Jeffrey Brand

# EXHIBIT

# H

DIVERSITY LAW GROUP, P.C. APC
Attn:  Lee, Larry W.
515 S. Figueroa St.
Suite 1250
Los Angeles, CA    90071

Sheppard, Mullin, Richter & Hampton LLP
Attn:  Cowie, Paul
Four Embarcadero Center
17th Floor
San Francisco, CA    94111-4109

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

---

| Davis | | No. <u>RG20071150</u> |
|---|---|---|
| | Plaintiff/Petitioner(s) | Order |
| | VS. | |
| | | Petition to Compel Arbitration (Motion) Granted |
| Tesla, Inc. | | |
| | Defendant/Respondent(s) | |
| | (Abbreviated Title) | |

The Petition to Compel Arbitration (Motion) filed for Tesla, Inc., a Delaware corporation was set for hearing on 07/28/2021 at 03:00 PM in Department 19 before the Honorable Stephen Kaus.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

Defendant Tesla Inc.'s ("Defendant") Motion to Compel Arbitration, Stay Action and Strike Class Allegations (the "Motion to Compel Arbitration") is GRANTED.  The Court ORDERS that pursuant to the parties' arbitration agreement dated 6/2/2018, plaintiff Anthony Davis ("Plaintiff") must arbitrate his individual wage and hour claims against Defendant, his class action wage and hour claims are dismissed with prejudice, and his representative PAGA claims are stayed pending resolution of his individual wage and hour claims.

This order follows a hearing on July 29, 2021.

RELEVANT LAW

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) grounds exist for the revocation of the agreement."  (Code Civ. Proc. § 1281.2.)

"The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citations] The trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination." (Ruiz v. Moss Bros. Auto Group, Inc. (2014) 232 Cal.App.4th 836, 842.)
"California has a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration." (Howard v. Goldbloom (2018) 30 Cal.App.5th 659, 663.)  However, "[u]nder California law, it is presumed the judge will decide arbitrability, unless there

---

is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability." (Dennison v. Rosland Capital LLC (2020) 47 Cal.App.5th 204, 209.)

ANALYSIS OF MOTION

As part of the Moving papers, Defendant submits a written agreement to arbitrate contained in a job offer letter from Defendant to Plaintiff dated 6/2/2018, which Plaintiff electronically signed later on 6/2/2018 (the "Arbitration Agreement").  (See Moving Sim Dec. Exh. 5.)

In Opposition to the Motion to Compel Arbitration, Plaintiff does not dispute that he executed the Arbitration Agreement or contend that the terms of the Arbitration Agreement are unconscionable. Instead, Plaintiff argues that Defendant has waived the right to enforce the Arbitration Agreement because Defendant has waited too long to bring this Motion and because Defendant has elected to litigate and settle the previously filed consolidated action, Flores v. Tesla, Inc., Alameda Superior Court Case No. RG 18-907072 (the "Flores Action").  The Flores Action, like the present action, alleges both Labor Code violation class action claims and PAGA representative claims.

The Court finds that Defendant has not waited too long to bring this Motion.  Although Defendant has not brought this Motion as early in the litigation as it could have, no motions have been filed by the parties or decided by this Court.  Neither party submits any evidence regarding what discovery, if any, has been conducted to date.

With respect to Plaintiff's second argument, Plaintiff presents no evidence that plaintiff Julio Romero ("Romero") in the consolidated Flores Action was subject to an arbitration agreement regarding which Defendant elected not to seek enforcement.  Even if there were such evidence in the record, none of the cases cited to by Plaintiff (see Opp. MPA at p. 5) holds that a defendant employer, who is a party to an arbitration agreement with a plaintiff employee, may not enforce the arbitration agreement if it has not enforced similar arbitration agreements in response to prior lawsuits brought by other employees. Instead, the cases Plaintiff cites regard the procedural and substantive unconscionability of the specific arbitration agreement before each of the appellate courts in each of those cases.  The Court does not find Plaintiff's implicit argument for an extension of the law persuasive.  Based on the opposition arguments made by Plaintiff herein, the Arbitration Agreement is enforceable.

Wherefore, the Court GRANTS Defendant's Motion to Compel Arbitration as set forth above.

At the hearing on this motion, Plaintiff's counsel requested that he be authorized to dismiss all individual claims and proceed with a PAGA claim. The court is not precluding this, but counsel are to meet and confer on this issue. If there is agreement, counsel may file a stipulation through the court's ex parte work queue. If not, Plaintiff's counsel may file a motion or the matter may be raised at the Case Management Conference set for September 21, 2021, 3 p.m., Department 19.

Dated:  07/29/2021

_____
Judge Stephen Kaus

# EXHIBIT

# I

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

| | |
|---|---|
| Donald Buggs | No.     RG20054661 |
| Plaintiff/Petitioner(s) | |
| vs. | Date:   01/24/2022 |
| Telsa, Inc. et al | Time:   9:36 AM |
| Defendant/Respondent(s) | Dept:   514 |
| | Judge:  Delbert Gee |

ORDER re: Ruling on Submitted Matter

The Court, having taken the matter under submission on 01/19/2022, now rules as follows:

The Motion to Compel Arbitration filed by Telsa, Inc. on 11/30/2021 is Granted.

The renewed motion by Defendant Tesla, Inc., to Compel Plaintiff Donald Buggs ("Plaintiff") to Submit to Binding Arbitration and to Stay the Action Pending the Conclusion of Arbitration, pursuant to C.C.P. §§ 1281.2 and 1281.4, is GRANTED. This action is stayed pending completion of arbitration proceedings before JAMS.

When a party to an arbitration agreement brings a petition to compel arbitration, and establishes the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court is required to order the petitioner and the respondent to arbitrate the controversy unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement. (Code Civ. Proc., sec. 1981.2.)

Tesla contends that Plaintiff agreed electronically to accept its offer of employment, which includes an arbitration provision. Civil Code section 1633.9 provides the method for authenticating an electronic signature. It states: "(a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code, § 1633.9(a).)

Tesla has provided evidence that Plaintiff electronically accepted Tesla's offer of employment by logging onto his account using his unique password, clicking on the offer letter link, and clicking a button that indicated his acceptance. (Decl. of Dimaya, para. 7, and 8.) The offer letter includes a provision that requires Plaintiff and Tesla to arbitrate all disputes arising out of or in connection with employment. The scope of the arbitration provision encompasses Plaintiff's claims in this action. Tesla provides evidence that three days after electronically signing the offer letter, Plaintiff began working for Tesla. (Dimaya decl., para. 8.)

In opposition, Plaintiff declares that Tesla never presented him with the purported offer of

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

employment/arbitration agreement attached to the Declaration of Willette Dimaya as Exh. A, either before or during employment, and the claimed electronic signature on the document is not my electronic signature.

Under Espejo v. Southern California Permanente Medical Group (2016) 246 Cal.App.4th 1047, 1056-1060, the party moving to compel arbitration is only required to submit a copy of the arbitration agreement purportedly bearing the plaintiff's signature to meet its initial burden, and has no burden to authenticate the signature until challenged by plaintiff. Once the authenticity of the signature is challenged by the plaintiff, the moving party must submit evidence sufficient to establish the authenticity of the signature. (Id. at pp. 1060.) Thus, the court must consider evidence provided by Tesla in reply to further authenticate Plaintiff's signature.

In reply, Tesla offers the decl. of Leigh Ellis, who states her position is Product Management, Recruiting. Ellis says she oversaw Tesla's former applicant tracking system called Taleo. Ellis explains that once an applicant has applied through Taleo, the system collects information on the applicant, bundles the applicant into a requisition group for the employment recruiter, and then moves candidates through the workflow. Ellis states that she utilized Taleo by implementing guardrails to ensure data integrity and alignment with Tesla's goals and objectives in the applicant recruitment process, she is familiar with and have personal knowledge regarding Talco and its security features, and Talco contains secure firewalls to maintain software security and to ensure its safe use by prospective applicants. Ellis asserts that once the applicant has applied for a position through Talco, the email address that was used to create the account cannot be changed midstream. Any communications generated thereafter, are directed to the email address used to create the account, and only the Tesla recruiting and HR teams and select managers had access to application information in Talco.

Tesla provides the declaration of Judith Gloria Reed, who asserts that she is the Recruiting Operations Project Manager for Tesla, Inc. She explains that she is familiar with Talco. She provides evidence from Plaintiff's Taleo business profile showing that after Plaintiff received the September 10, 2018 offer letter on September 13, 2018, he signed it on September 14, 2018, as evidenced by the "Offer/Contract Signed" shown in the Taleo business profile, and then received an email from Human Resources with a link to Workday to complete the I-9 verification process electronically. She declares that as part of the onboarding process, all employment policies, offer letters/arbitration agreements, and other onboarding materials must be signed electronically before an application attends orientation.

Tesla offers the supplemental declaration of Willette Dimaya, a Senior Preemployment Specialist in Tesla's Recruiting Operations department, who states that in addition to the September 10, 2018 offer letter and arbitration agreement, Plaintiff received an email on September 13, 2018 to his personal email address, with a link to the offer letter and the arbitration agreement. She attaches a copy of the email as Exh. B.

Tesla cites Plaintiff's deposition testimony, showing that his personal email account is "Donald.buggs8282@gmail.com, which is consistent with the email in Plaintiff's Taleo account, and that only Plaintiff has access to that account.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

Tesla has presented evidence satisfying its burden to authenticate Plaintiff's signature. The evidence shows that the offer of employment was sent to Plaintiff's personal email account, only Plaintiff had access to that account, and no one but Plaintiff could have electronically agreed to the employment agreement and arbitration provision.

When a party to an arbitration agreement brings a petition to compel arbitration, and establishes the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court is required to order the petitioner and the respondent to arbitrate the controversy unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement. (Code Civ. Proc., sec. 1981.2.)

Under California contract law, courts will refuse to enforce an arbitration agreement that is both procedurally and substantively unconscionable. Procedural unconscionability requires an inequality in bargaining power accompanied by lack of disclosure of material provisions. Substantive unconscionability is an allocation of the burdens and benefits which is so one-sided as to shock the conscience. (Robison v. City of Manteca (2000) 78 Cal.App.4th 452, 458-459.) If there is a strong showing of procedural unconscionability, a lesser showing of substantive unconscionability is necessary to establish unconscionability, and conversely, a lesser showing of procedural unconscionability is necessary when there is a strong showing of substantive unconscionability. (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 98, 114.)

Plaintiff has not made a showing that the arbitration provision in this case is substantively unconscionable and he does not claim that Tesla has waived the arbitration provision. Thus, there is no basis for the court to refuse enforcement.

Plaintiff's request for a continuance to conduct additional discovery with regard to a nondisclosure agreement between Plaintiff and Tesla is DENIED. Tesla's original motion to compel arbitration was filed on January 15, 2021. On March 4, 2021, the court ordered the parties to conduct additional discovery of the issue of Plaintiff's electronic execution of the arbitration agreement, and continued the motion to July 2, 2021 to allow the parties to conduct additional discovery relevant to the motion. Because the parties were unable to complete discovery relevant to the motion by July 2, 2021, the court denied the motion to compel without prejudice so as to allow the parties to complete discovery relevant to the motion before defendant filed an amended motion to compel arbitration. In addition, on March 19, 2021, Plaintiff filed a motion for Reconsideration of the court's March 4, 2021 order, on the grounds that Plaintiff should be permitted to conduct discovery to explore whether Plaintiff filed a non-disclosure agreement that was not subject to arbitration, in order to add support to his claim that the arbitration agreement was unconscionable. On July 2, 2021, the Court denied Tesla's motion to compel without prejudice so as to allow the parties to complete discovery relevant to the motion before Tesla filed a renewed motion to compel arbitration. The court also dropped Plaintiff's motion for reconsideration as moot. Thus, Plaintiff had more than sufficient time to conduct discovery with regard to his unconscionability defense based on a nondisclosure agreement before this motion was heard, and simply failed to do so. The court concludes that the request for a further continuance is dilatory.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Objections to decl. of Dimaya
Para. 4: SUSTAINED as to statements made "[t]o the best of my knowledge…" Otherwise
OVERRULED.
Para. 6: OVERRULED.
Para. 8: OVERRULED.
Exh. A: OVERRULED

Objections to decl. of J.P. Schreiber
Para. 3: OVERRULED.
Para. 4: OVERRULED.
Para. 5, and Exh. 3: OVERRULED.
Para. 6: OVERRULED.
Exh. 2: OVERRULED.

Objections to decl. of Reed in reply
Plaintiff's objections to the decl. of Reed filed with Tesla's reply papers are OVERRULED.

Objections to decl. of Dimaya in reply
Plaintiff's objections to the decl. of Dimaya filed with Tesla's reply papers are OVERRULED.

Objections to decl. of Mains in reply
Plaintiff's objections to the decl. of Mains filed with Tesla's reply papers are OVERRULED.

Objections to new evidence in Reply
Plaintiff's objections to Tesla's new evidence in its Reply papers are OVERRULED. The
procedure followed by Tesla was proper. (Espejo, supra, 246 Cal.App.4th at p. 1060. As noted
above, Plaintiff was aware of the issue with regard to authentication in January 2021, and had
more than sufficient time to conduct discovery and offer evidence on this issue in his opposition.

Objections to Deposition Transcripts
Plaintiff's objection that deposition transcripts offered by Tesla are perjured because they do not
reflect changes made by Plaintiff and Plaintiff has not been provided with certified copies of the
deposition transcripts are OVERRULED. The discrepancies noted by Plaintiff do not constitute
perjury, and Plaintiff fails to explain why his testimony that he did not sign and has never seen
the declaration that was submitted in opposition to Tesla's first motion is affected by the changes
he made to his responses. In any event, the court's ruling is not dependent upon Plaintiff's
deposition testimony.

Judicial Notice
Tesla's request for judicial notice of court orders in other cases granting motions by Tesla to
compel arbitration is DENIED. Lack of relevance.


Dated: 01/24/2022

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Hayward Hall of Justice

Delbert Gee / Judge

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>01/24/2022<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _S. Gould_ Deputy<br>S. Gould |
| PLAINTIFF/PETITIONER:<br>Donald Buggs | |
| DEFENDANT/RESPONDENT:<br>Telsa, Inc. et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>RG20054661 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Hayward, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Laura E. Heyne
Olgetree, Deakins, Nash, Smoak & Stewart P.C.
One Embarcadero Center
Suite 900
San Francisco, CA 94111-

Maureen E. McFadden
Law Offices of Maureen E. McFadden
1320 Willow Pass Road
Suite 600
Concord, CA 94520-

Roshni Chaudhari
Olgetree, Deakins, Nash, Smoak & Stewart P.C.
One Embarcadero Center
Suite 900
San Francisco, CA 94111-

Chad Finke, Executive Officer / Clerk of the Court

Dated: 01/24/2022                    By:

Chad Finke, Executive Officer/Clerk of the Court

S. Gould, Deputy Clerk

**CERTIFICATE OF MAILING**

1

## PROOF OF SERVICE

2

     I, William Nervis, declare:

3

4

     I am a citizen of the United States and employed in Alameda County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 901 Page Ave., Fremont, CA 94538.  On April 1, 2022, I filed a copy of the within document(s):

5

6

## DEFENDANT TESLA, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

7

8

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

9

☒ by filing the document(s) listed above for electronic filing via ECF/PACER to the United States Federal Court, Central District of California.

10

11

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a <u>Delivery Service</u> agent for delivery.

12

13

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by transmitting via my electronic service address (<u>wnervis@tesla.com</u>) the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

14

15

16

     I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17

18

19

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21

     Executed on April 1, 2022, at San Francisco, California.

22

23

              William Nervis

24

25

26

27

28

- 1 -